SCOTT R. RABER (CA State Bar No. 194924)
**RIMON P.C.**
One Embarcadero Center
Suite 400
San Francisco, California 94111

Phone:        (415) 683-5472
Facsimile:    (800) 930-7271
Email:        scott.raber@rimonlaw.com

ALEXANDRA WALD (*admitted pro hac vice*)
FRANCISCO A. VILLEGAS (CA State Bar No. 206997)
DAMIR CEFO (*admitted pro hac vice*)
**COHEN & GRESSER LLP**
800 Third Avenue
New York, New York  10022
Phone:        (212) 957-7600
Facsimile:    (212) 957-4514
Email:        awald@cohengresser.com
              fvillegas@cohengresser.com
              dcefo@cohengresser.com

*Attorneys for Plaintiff*
*Emblaze Ltd.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EMBLAZE LTD., | ) Case No. 3:12-cv-5422-JST |
| Plaintiff, | ) |
| | ) |
| – against – | ) **EMBLAZE LTD.'S** |
| | ) **MEMORANDUM OF LAW IN** |
| MICROSOFT CORPORATION, | ) **OPPOSITION TO MICROSOFT** |
| | ) **CORP.'S MOTION TO** |
| Defendant. | ) **DISQUALIFY COHEN &** |
| | ) **GRESSER LLP AS COUNSEL** |
| | ) **FOR EMBLAZE LTD.** |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND ........................................................................................ 2

      A.    Emblaze Concludes that Microsoft Is Infringing Its Patent. ........................... 2

      B.    Emblaze Retains The CPLP Law Firm, Which Has No Conflict. ...................... 3

      C.    Emblaze Retains C&G To Represent It Against Microsoft. ............................... 4

III.  LEGAL STANDARD ................................................................................................... 7

IV.   ARGUMENT ............................................................................................................... 9

      A.    Microsoft Has Not And Cannot Satisfy The Standard For Disqualifying
            C&G. ................................................................................................................... 9

            1.    C&G has never received confidential Microsoft information. ............... 9

            2.    C&G did not and could not aid and abet any breach of Cozen's
                  duty of loyalty. ..................................................................................... 12

            3.    Microsoft's failure to establish any dereliction by C&G is fatal to
                  the motion to disqualify C&G. ............................................................. 15

      B.    Microsoft's Efforts to Discredit the *Apple* Claim Construction Are
            Speculative, Erroneous And Irrelevant. ........................................................... 16

      C.    Microsoft's Novel Theory That Disqualification Is Necessary Because
            C&G "Built Upon" Cozen's Work Product Is Not The Law. ........................... 19

      D.    The Equities Require That Microsoft's Motion Be Denied. ............................. 22

            1.    Microsoft's motion is a transparent trial tactic. ................................... 22

            2.    The only threatened "harm" is to Emblaze and the prompt
                  adjudication of this matter. ................................................................... 24

V.    CONCLUSION .......................................................................................................... 25

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Actel Corp. v. Quicklogic Corp.,*
   C 94-20050 JW, 1996 WL 297045 (N.D. Cal. May 29, 1996) ...................................... 21, 22

5

*ASUS Computer Int'l v. Round Rock Research,*
6
   LLC, 12--02099-JST, 2013 WL 4081698 (N.D. Cal. Aug. 9, 2013) ................................... 19

7

*Behunin v. Dow Chemical Co.,*
   642 F. Supp. 870 (D. Colo. 1986) ..................................................................... 22
8

9

*Bradshaw v. Zoological Soc. of San Diego,*
   662 F.2d 1301 (9th Cir. 1981) ......................................................................... 21

10

*Canatella v. Krieg, Keller, Sloan, Reilley & Roman LLP,*
11
   C 11-05535 WHA, 2012 WL 847493 (N.D. Cal. March 13, 2012) ...................................... 7

12

*Continental Ins. Co. v. Superior Court,*
   32 Cal. App. 4th 94 (Cal App. 2d Dist. 1995) ....................................................... 8
13

14

*Elantec Semiconductor Inc. v. Cooper,*
   No. C 98-03871, 1999 WL 33921316 (N.D. Cal. March 10, 1999) ..................................... 14

15

*Emblaze Ltd. v. Apple Inc.,*
16
   5:11-CV-01079-PSG, 2014 WL 1652226 (N.D. Cal. Apr. 24, 2014) ................................... 24

17

*Enzo Biochem, Inc. v. Applera Corp.,*
   468 F. Supp. 2d 359 (D. Conn. 2007) ............................................................. 8, 16
18

19

*Essex Chem. Corp. v. Hartford Acc. & Indem. Co.,*
   993 F. Supp. 241 (D.N.J. 1998) .............................................................. 11, 12, 24

20

*First Wisconsin Mortgage Trust v. First Wisconsin Corp.,*
21
   584 F.2d 201 (7th Cir. 1978) ......................................................................... 21

22

*FlatWorld Interactives LLC v. Apple Inc.,*
   12-CV-01956-WHO, 2013 WL 4039799 (N.D. Cal. Aug. 7, 2013) ....................... 7, 8, 9, 11
23

24

*Frazier v. Superior Court,*
   97 Cal. App. 4th 23 (2002) .......................................................................... 11

25

*Fund of Funds, Ltd. v. Arthur Andersen & Co.,*
26
   567 F.2d 225 (2d Cir. 1977) .................................................................... passim

27

*Gregori v. Bank of Am.,*
   207 Cal. App. 3d 291 (Cal. Ct. App. 1989) ................................................. 15, 24, 25
28

*In re Airport Car Rental Antitrust Litig.*,
  470 F. Supp. 495 (N.D. Cal. 1979) ....................................................................... 8

*In re California Canners and Growers*,
  74 B.R. 336 (N.D. Cal. 1987) ...................................................................... 8, 14

*j2 Global Comm., Inc. v. EasyLink Serv. Int'l Corp.*,
  No. CV 09-04189, 2012 WL 6618609 (C.D. Cal. Dec. 19, 2012)........................ 10

*Kirk v. The First American Title Ins. Co.*,
  183 Cal. App. 4th 776 (Cal. Ct. App. 2010) ...................................................... 10

*Lightning Ballast Control v. Phillips Electronics N. Am.*,
  2013 WL 3008281 (Fed. Cir. 2013)..................................................................... 20

*Love v. Permanente Med. Group*,
  12-CV-05679-WHO, 2013 WL 5273213 (N.D. Cal. Sept. 18, 2013) ..................... 12, 24, 25

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995)............................................................................ 19

*Oaks Mgmt. Corp. v. Superior Ct.*,
  145 Cal. App. 4th 453 (Cal. Ct. App. 2006) ...................................................... 15

*Openwave Sys. Inc. v. Myriad France S.A.S.*,
  C 10-02805 WHA, 2011 WL 1225978 (N.D. Cal. March 31, 2011).............................. 8, 24

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*,
  760 F.2d 1045 (9th Cir. 1985).......................................................................... 7, 15

*Oracle Am., Inc. v. Innovative Tech. Distrib., LLC*,
  11–CV01043–LHK, 2011 WL 2940313 (N.D. Cal. July 20, 2011) ........................... 7, 8, 22

*Panduit Corp. v. All States Plastic Mfg. Co.*,
  744 F.2d 1564 (Fed. Cir. 1984)........................................................................ 10

*People v. SpeeDee Oil Change Sys., Inc.*,
  20 Cal. 4th 1135 (1999)................................................................................. 9, 10

*Ramirez v. Trans Union, LLC*,
  No. 12–00632, 2013 WL 1164921 (N.D. Cal. March 20, 2013) ............................. 7

**Other Authorities**

*The Availability of the Work Product of A Disqualified Attorney:  What Standard?*,
  127 U. Pa. L. Rev. 1607, 1621 (1979) ............................................................... 21

# I.      INTRODUCTION

Microsoft has moved to disqualify Cohen & Gresser LLP ("C&G") from representing Emblaze.  It is undisputed, however, that:  (i) C&G has never represented Microsoft; (ii) C&G is not subject to any conflict; (iii) C&G was wholly unaware of any conflict; and (iv) C&G has never received any confidential Microsoft information (outside discovery in this action).  Microsoft nonetheless demands C&G's disqualification solely because of its exposure to a patent lawyer who, like C&G, also had no confidential Microsoft information, but joined a law firm (Cozen O'Connor P.C. or "Cozen") that apparently represents Microsoft in unrelated tax matters.

Although neither C&G nor its client Emblaze have done anything wrong, Microsoft seeks the drastic and disfavored remedy of disqualification, not to return the parties to the *status quo* (which has already been accomplished by Cozen's withdrawal), but to severely prejudice Emblaze.  The timing of Microsoft's motion just weeks before *Markman* reveals Microsoft's true purposes:  to cause Emblaze to find and employ new counsel (with all the attendant delay and associated costs) and to allow Microsoft to mount a collateral attack on the construction of Emblaze's patent by another court within this District in a case where Cozen represents Emblaze against Apple.  Indeed, Microsoft waited to file this motion for a full four months after the conflicted attorney at Cozen, who was himself unaware of any conflict, publicly filed a notice of appearance in this case.  And, despite its many protestations about purported "disloyalty" in the *Apple* case, Microsoft is not a party in that case, and has known that Cozen and DWT represented Emblaze in that case since at least June 2013, yet never objected until the eve of *Markman* in *this* case.

To support its transparent tactics, Microsoft advances a novel – and wholly unsupported – argument:  C&G must be disqualified, even though it has done nothing wrong, because C&G "built upon" Cozen's work (much of which was in fact done by a non-conflicted firm).  The evidence on which Microsoft bases its motion is that C&G has had the temerity to do such things as cite the publicly-filed *Apple* claim construction and seek to use the same expert in this case that Emblaze used in *Apple*.  Microsoft's position finds no basis in the law

or the rules of professional responsibility and legal ethics.  Courts in this Circuit and elsewhere have rejected the notion that disqualification of a non-conflicted lawyer is proper where, as here:  (i) C&G was wholly unaware of the Cozen conflict; (ii) C&G has done nothing improper or unethical; and (iii) the conflicted Cozen attorney did *not* possess (and thus could *not* have transmitted to C&G) any confidential Microsoft information.

No ethical concerns are implicated by C&G's continued representation of Emblaze. This Court should therefore reject Microsoft's bid to gain an improper windfall from a disqualification of C&G that would have no basis in fact or law.

## II.    FACTUAL BACKGROUND

### A.    Emblaze Concludes that Microsoft Is Infringing Its Patent.

Emblaze Ltd. ("Emblaze") is an Israeli company founded in 1994.  The technology at issue in this action – embodied in patent No. 6,389,473, (the "'473 Patent") – was developed by Emblaze and used in its products.  Declaration of Naftali Shani dated May 1, 2014 ("Shani Dec.") ¶ 2.  Specifically, the '473 Patent covers live broadcasting of a stream of data that is cut into slices (or segments) that are subsequently encoded in a corresponding sequence of files, which are in turn uploaded to a web server from which the content can be downloaded by end users for viewing without a devoted server that maintains and manages a connection with each end user.  *Id.* ¶ 3.  The uploading and downloading of "files" is thus a key feature of the patent qua patent regardless of the infringing technology.  Emblaze used this technology to live broadcast the Easter Egg Roll event from the White House in 1998 and to conduct live broadcasting for radio stations through its U.S. subsidiary Webradio.com in 1999.  *Id.* ¶ 4.

On August 5, 2008, Emblaze employee Hagit Gal sent Microsoft a letter offering a license concerning three patents, including Emblaze's '473 Patent.  Shani Dec. at ¶ 5. Microsoft did not respond.  *Id.*  In 2009, Microsoft publicly unveiled its live-streaming technology ("Smooth Streaming").  Based on its own understanding of the patent, Emblaze determined that Microsoft was practicing Emblaze's patented technology and infringing its patent rights.  *Id.* ¶ 6.  Emblaze thus decided to retain patent litigation counsel.  *Id.* ¶ 7.

**B.**     **Emblaze Retains The CPLP Law Firm, Which Has No Conflict.**

On October 27, 2009, Emblaze retained the firm of Cohen, Pontani, Lieberman & Pavane LLP ("CPLP") to assist with asserting Emblaze's patent rights in the United States.  *Id.* ¶ 10.  Martin Pavane, along with other CPLP attorneys (collectively, the "CPLP Attorneys"), represented Emblaze in connection with both Apple and Microsoft licensing efforts through June of 2011.  *Id.* ¶¶ 11, 21.  There is no dispute that Microsoft was not then and had never been a client of CPLP.

In 2009 and 2010, Emblaze sent separate letters to Microsoft and Apple to advise each that they were practicing the '473 Patent and to offer each a license to use the '473 Patent.  *Id.* ¶ 12.  After negotiations with Apple proved unsuccessful, CPLP filed suit against Apple on behalf of Emblaze on July 28, 2010.  *Id.* ¶ 14.

A letter sent by CPLP to Microsoft on February 4, 2010 advised that "it is our opinion that Microsoft's Smooth Streaming application reads on one or more claims of the ['473 Patent]."  *Id.* ¶ 13.  Emblaze attached a claim chart, referencing a Microsoft technical document, which made clear Emblaze's belief that Microsoft's Smooth Streaming application reads on one or more claims of the '473 Patent.  *Id.* In this same letter, Emblaze offered Microsoft a license to use the '473 patented technology.  *Id.*

On March 17, 2011, Naftali Shani (a founding member of Emblaze and a named inventor of the '473 Patent) met in person with Microsoft at CPLP's offices, along with Moshe Dgani, Emblaze's head of Research and Development.  Shani Dec. ¶¶ 16, 17.  Microsoft advised Emblaze that, while it agreed that Apple's products infringed on the '473 Patent, Microsoft's products did not [1]  *Id.* ¶ 18.  Emblaze and Microsoft discussed Microsoft's non-infringement argument to the effect that, because files in smooth streaming are put inside a larger file, the inner files are really just "fragments."  *Id.* ¶ 19.  During the discussions, Shani and Dgani explained again that, regardless of terminology, the Smooth Streaming files

---

[1] In its present motion, Microsoft has introduced extensive Rule 408 material.  Emblaze therefore provides basic details concerning the parties' negotiations in this memorandum of law to provide proper context for the Court.

(including what Microsoft calls "fragments") correspond to "files" in the '473 Patent.  *Id.* ¶ 20. The conversation included detailed technical explanations of Emblaze's infringement position, and rebuttals of Microsoft technical arguments.  *Id.*  Emblaze, represented by CPLP, continued to develop its case against Microsoft.  Negotiations between Microsoft and Emblaze terminated in June 2011.  *Id.* ¶ 21.

In July 2011, CPLP dissolved and the CPLP Attorneys joined Cozen.  *Id.* ¶ 22.  The CPLP Attorneys told Emblaze that Cozen could not take both the contemplated Microsoft action and the existing *Apple* case, so Emblaze had to find new counsel to bring suit against Microsoft.  *Id.*

According to Microsoft's submissions in this case, Cozen represented Microsoft in various matters, and it currently represents Microsoft on a Pennsylvania tax issue.  Declaration of Isabella Fu dated April 4, 2014 ("Fu Dec.") ¶ 1.  Notably, Microsoft's declarations do not state that any Cozen attorney has ever represented Microsoft in connection with intellectual property matters, much less *any* patent matters that could possibly be related to the '473 Patent or this action.

### C.     Emblaze Retains C&G To Represent It Against Microsoft.

In July 2012, Emblaze retained C&G to represent it in connection with its assertion of Emblaze's patent claims against Microsoft.  Declaration of Karen Bromberg dated May 1, 2014 ("Bromberg Dec.") ¶ 6.  C&G's retention was based on a recommendation to Emblaze by a third party unrelated to Cozen and the CPLP Attorneys.  Shani Dec. ¶ 24; Bromberg Dec. ¶ 5.  Microsoft has never been a C&G client.  Bromberg Dec. ¶ 2.

Emblaze provided C&G with materials regarding Emblaze's negotiations with Microsoft, including correspondence between Emblaze and CPLP as well as correspondence in which Microsoft and Emblaze's counsel discussed the terms "fragment" and "file."  Shani Dec. ¶ 25; Declaration of Damir Cefo dated May 1, 2014 ("Cefo Dec.") ¶ 3; Declaration of Erik S. Hanson dated May 1, 2014 ("Hanson Dec.") ¶ 3; Declaration of Francisco Villegas dated May 1, 2014 ("Villegas Dec.") ¶ 3.  C&G conducted its own pre-suit inquiry to

1    determine Microsoft's infringement; the team included patent lawyers with electrical and

2    computer engineering degrees.  Cefo Dec. ¶¶ 2, 4; Hanson Dec. ¶ 4.

3         C&G filed this action against Microsoft on October 19, 2012.  C&G needed local

4    counsel and – in September 2012, before this action was filed – C&G asked if Davis, Wright

5    & Tremaine LLP ("DWT"), which was local counsel for Emblaze in the *Apple* case, would

6    serve as local counsel in this matter.  Cefo Dec. ¶ 5.  DWT immediately replied that Microsoft

7    was a current client of the DWT firm and thus could not be adverse to Microsoft, so C&G

8    obtained other local counsel.  *Id.* That inquiry is the *sole* communication that ever occurred

9    between C&G and DWT with respect to any issue in this case.[2]  Declaration of Alexandra

10   Wald dated May 1, 2014 ("Wald Dec.") ¶ 16; Villegas Dec. ¶ 5; Cefo Dec. ¶ 5; Hanson Dec.

11   ¶ 5; Bromberg Dec. ¶ 3; Shani Dec. ¶ 36, Ex. A (Fineman email).

12        Microsoft apparently has paid close attention to the *Apple* case from the inception of

13   this litigation.  Shortly after this action was filed, in November 2012, counsel for Microsoft

14   contacted C&G and represented that Microsoft intended to move to transfer this case to the

15   Western District of Washington unless Emblaze agreed that it would not seek to relate this

16   case to the *Apple* case.  Bromberg Dec. ¶ 8.  C&G independently determined that this case did

17   not meet this District's standard for relating cases, because the two cases involve different

18   products and different defendants, and thus did not seek to relate the two cases.  Wald Dec.

19   ¶ 14; Bromberg Dec. ¶ 9.

20        By June 25, 2013, at the absolute latest, Microsoft knew that both Cozen and DWT

21   were counsel to Emblaze in the *Apple* case.  On that date, Microsoft's outside and in-house

22   counsel[3] made a joint claim construction filing in this case, together with Emblaze.  D.E. 46.

23

24   _____

25   [2] In Emblaze's litigation against Apple, DWT functioned solely as Emblaze's local counsel
     and was not involved in any substantive discussions with Cozen regarding that action.  Shani

26   Dec. ¶ 35.  Emblaze understands that, at Microsoft's insistence, DWT withdrew as local
     counsel to Emblaze in the *Apple* case on April 1, 2014.  Shani Dec. ¶ 31, Ex. A.

27   [3] Microsoft's in-house counsel Isabella Fu, whose declaration attests that DWT represents

28   Microsoft in 1400 matters, is counsel of record in this case and is registered to receive all
     filings.

Attached as an exhibit to that filing was an official copy of the transcript of the *Apple Markman* hearing, which had been provided to C&G by Microsoft counsel.  Wald Dec. ¶¶ 17, 18, Ex. G.  The cover page of that transcript plainly states "For the Plaintiff: Davis, Wright & Tremaine," and the first page states "For the Plaintiff: Cozen O'Connor."  *Id.* ¶ 19, Ex. B.

By that time, it had long been public record to anyone who viewed the docket that Cozen and DWT represented Emblaze in *Apple*.  C&G have reason to believe that Microsoft, in fact, was aware of the *Apple* docket because counsel for Microsoft had contacted C&G in November 2012 to discuss whether Emblaze would refrain from seeking to relate this case to the *Apple* case.[4]  Bromberg Dec. ¶ 8.  Morover, on April 17, 2013, counsel for Microsoft, as well as C&G, attended both the tutorial and the *Markman* hearing in the *Apple* case.  Wald Dec. ¶ 15; Shani Dec. ¶ 42.  At the hearing, Eric Wesenberg, Microsoft's counsel in this action, was introduced by Alexandra Wald, Emblaze's counsel in this case, to Pavane of Cozen.  Martin Fineman of DWT introduced himself to both Wald and Wesenberg.  Wald Dec. ¶ 15; Shani Dec. ¶¶ 42, 43.  Thus, as of that date, Microsoft knew of Emblaze's representation in the *Apple* lawsuit.  It also appears that Microsoft counsel were in communication with counsel for Apple; for example, Apple counsel complained in the *Apple* case that Cozen had not produced a document that CPLP had given Microsoft during their discussions.  Shani Dec. ¶ 45.  Microsoft's counsel also attended summary judgment arguments in the *Apple* case at which Apple's counsel provided Microsoft with a copy of documents in the possession of Apple counsel.  Shani Dec. ¶ 44.

C&G had no knowledge of a conflict on the part of Cozen until March 3. 2014.  Wald Dec. ¶ 3; Villegas Dec. ¶ 7; Cefo Dec. ¶ 7; Hanson Dec. ¶ 7; Bromberg Dec. ¶¶ 10, 11.  At all times Emblaze has been the driving force behind both litigations.  *See* Shani Dec. ¶¶ 8, 9.  From time to time, at Emblaze's direction, C&G, Emblaze's counsel in *Microsoft*, communicated with Cozen, Emblaze's counsel for *Apple*.  Wald Dec. ¶ 4; Cefo Dec. ¶ 6; Villegas Dec. ¶ 6; Hanson Dec. ¶ 6.  On December 3, 2013, Martin Pavane of Cozen filed an

---

[4] Counsel for Microsoft officially registered as an "interested party" to receive notices in the *Apple* case via ECF on February 5, 2014.  Wald Dec. ¶ 20.

appearance in this case at the direction of Emblaze so he could participate at the *Markman* hearing, making C&G and Cozen co-counsel in this action for approximately three months. Shani Dec. ¶ 38; Declaration of Martin Pavane dated May 1, 2014 ("Pavane Dec.") ¶ 9.

On March 3, 2014, counsel for Microsoft advised C&G that Cozen had a conflict. Wald Dec. ¶ 5.  That same day, C&G relayed Microsoft's statement to Mr. Pavane, who reacted with surprise and disbelief, but he said he would investigate.  Wald Dec. ¶ 6; Bromberg Dec. ¶ 12; Pavane Dec. ¶¶ 10, 11.  On March 7, 2014, Cozen withdrew as counsel of record in this case.  Wald Dec. ¶ 7; Pavane Dec. ¶ 12.  Since March 3, 2014, C&G has not communicated with Cozen, aside from confirming the existence of the conflict.  Bromberg Dec. ¶ 14; Wald Dec. ¶ 8; Cefo Dec. ¶ 8; Villegas Dec. ¶ 8; Hanson Dec. ¶ 8.  Subsequent to raising Cozen's conflict, Microsoft demanded that DWT also withdraw as local counsel to Emblaze in *Apple*, which it has done.  Shani Dec. ¶ 31.

No Cozen lawyer has ever provided any confidential Microsoft information to C&G. Bromberg Dec. ¶ 4; Wald Dec. ¶ 2; Cefo Dec. ¶ 9; Villegas Dec. ¶ 9; Hanson Dec. ¶ 9; Pavane Dec. ¶ 13.

## III.   LEGAL STANDARD

Motions to disqualify counsel "can be disruptive to the litigation process," so disqualification is a "drastic measure" that should be "imposed only when absolutely necessary." *Ramirez v. Trans Union, LLC*, No. 12–00632, 2013 WL 1164921, at * 2 (N.D. Cal. March 20, 2013).  Such motions are strongly disfavored "because of their susceptibility to tactical abuse, and 'should be subjected to particularly strict judicial scrutiny.'" *FlatWorld Interactives LLC v. Apple Inc.*, 12-CV-01956-WHO, 2013 WL 4039799, at *5 (N.D. Cal. Aug. 7, 2013) (*quoting Oracle Am., Inc. v. Innovative Tech. Distrib., LLC*, 11–CV01043–LHK, 2011 WL 2940313, at *4 (N.D. Cal. July 20, 2011)).[5]  Microsoft therefore bears the "heavy

---

[5] *See also* Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd., 760 F.2d 1045, 1049 (9th Cir. 1985) (same); *Canatella v. Krieg, Keller, Sloan, Reilley & Roman LLP*, C 11-05535 WHA, 2012 WL 847493, *1 (N.D. Cal. March 13, 2012).

1  burden" of proving facts justifying disqualification. *Openwave Sys. Inc. v. Myriad France*

2  *S.A.S.*, C 10-02805 WHA, 2011 WL 1225978, at *7 (N.D. Cal. March 31, 2011).

3      The specific "harm" that a motion to disqualify must address is "trial taint." *See*, *e.g.*,

4  *Oracle Am.*, 2011 WL 2940313, at *4 ("the business of the Court is to dispose of litigation and

5  not to oversee the ethics of those that practice before it unless the behavior taints the trial."

6  (quoting *Continental Ins. Co. v. Superior Court*, 32 Cal. App. 4th 94, 111 n.5 (Cal App. 2d

7  Dist. 1995)). Thus, to meet its "heavy burden," Microsoft must show that Cozen's breach of

8  its duty of loyalty "poses a significant risk of *trial taint*" with respect to C&G's advocacy on

9  behalf of Emblaze. *Enzo Biochem, Inc. v. Applera Corp.*, 468 F. Supp. 2d 359, 364 (D. Conn.

10  2007) (emphasis added, internal quotations omitted).

11      Contrary to Microsoft's insistence, "disqualification of one firm does *not* automatically

12  compel disqualification of the firm's co-counsel." *In re Airport Car Rental Antitrust Litig.*,

13  470 F. Supp. 495, 501 (N.D. Cal. 1979) (emphasis supplied); *see also Oracle Am. Inc.,* 2011

14  WL 2940313, at *5 (same). Automatic imputation of a conflict to non-conflicted counsel is

15  decidedly *not* the rule. Indeed, as recently as last year, Judge William H. Orrick in this District

16  noted that he was "unaware of any case in which a court disqualified an attorney or a law firm

17  when no attorney had actual knowledge or possession of confidential information about an

18  adverse party but one was conflicted only through imputation." *FlatWorld*, 2013 WL

19  4039799, at *5; *see also In re Airport Car Rental Antitrust Litig.*, 470 F. Supp. at 502 (refusing

20  to disqualify co-counsel in part because "no evidence whatsoever" indicated that the conflicted

21  firm conveyed confidential information).

22      Courts will also disqualify co-counsel who actively and knowingly aided and abetted

23  the breach of the duty of loyalty owed by the conflicted counsel. *See*, *e.g.*, *In re California*

24  *Canners and Growers*, 74 B.R. 336, 347 (N.D. Cal. 1987) (disqualifying co-counsel where co-

25  counsel was aware of conflict and actively participated in conflicted counsel's breach of

26  loyalty); *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 235 (2d Cir. 1977)

27  (noting that a "'co-counsel' relationship will not alone warrant disqualification," but

28

1    disqualifying co-counsel who knew of conflict and worked at the behest of conflicted attorney

2    who also possessed confidential information).

3        Thus, to prevail, Microsoft must present evidence – not speculation – that: (i) C&G

4    either had actual knowledge of or possessed confidential information about Microsoft; or

5    (ii) knowing of Cozen's conflict, C&G intentionally aided and abetted Cozen's breach of its

6    duty of loyalty.  Microsoft has failed to offer a shred of evidence of either.

7    **IV.    ARGUMENT**

8        As discussed below, Microsoft has not and cannot meet its heavy burden because it has

9    not – indeed cannot – provide any evidence that:  (i) C&G is in possession of any confidential

10   Microsoft information that could be used in this case; or (ii) C&G knowingly aided and

11   abetted Cozen in its breach of the duty of loyalty.  *See* Part IV A.  Neither do Microsoft's

12   attempts to discredit the claim constructions in the *Apple* case provide any basis for C&G's

13   disqualification.  *See* Part IV B.  Microsoft's novel theory – that C&G's alleged reliance on

14   Cozen's work product mandates disqualification – is simply not the law.  *See* Part IV C.

15   Further, Microsoft's motion is plainly predicated on its desire to gain a significant tactical

16   advantage, but the only threatened "harm" is to Emblaze and the swift resolution of this case.

17   *See* Part IV.D.

18       **A.    Microsoft Has Not And Cannot Satisfy The Standard For
              Disqualifying C&G.**
19

20           1.    C&G has never received confidential Microsoft
                   information.

21       The Supreme Court of California has made clear that "[t]he primary concern" in

22   deciding a motion to disqualify "is whether and to what extent the [conflicted] attorney

23   acquired confidential information."  *People v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th

24   1135, 1148 (1999); (disqualification based on imputation was appropriate where "record

25   show[ed] without contradiction" that the conflicted attorney "received material confidential

26   information concerning respondents' claims against" one of the defendants); *see also*

27   *FlatWorld*, 2013 WL 4039799, at *5 (noting that it was "unaware of any case in which a court

28   disqualified an attorney or a law firm when no attorney had actual knowledge or possession of

1  confidential information about an adverse party but one was conflicted only through

2  imputation"); *Fund of Funds*, 567 F.2d at 227 (a court must ask itself "whether [co-counsel],

3  through his relationship with [conflicted counsel], was in a position to receive relevant

4  confidences regarding [conflicted counsel's client]").  Microsoft concedes, as it must, that

5  there is *no evidence* that the CPLP Attorneys – whether at CPLP or at Cozen – ever possessed

6  *any* Microsoft secrets, much less Microsoft secrets regarding this patent action.  Indeed, the

7  only specific matter Microsoft identified in which Cozen apparently represents it "involv[es] a

8  Pennsylvania State Income Tax audit assessment." Fu Dec. ¶ 2.  Under these facts, no reason

9  exists to disqualify C&G.

10       Notably, including *SpeeDee Oil*, *FlatWorld,* and *Fund of Funds, supra*, virtually every

11  disqualification case on which Microsoft attempts to rely involves possession of confidential

12  information.[6]  *See j2 Global Comm., Inc. v. EasyLink Serv. Int'l Corp.*, No. CV 09-04189,

13  2012 WL 6618609, at *5 (C.D. Cal. Dec. 19, 2012) (counsel improperly appeared on both

14  sides of a single patent infringement action, so court presumed that the tainted attorney

15  possessed confidential information about plaintiff); *Kirk v. The First American Title Ins. Co.*,

16  183 Cal. App. 4th 776, 814 (Cal. Ct. App. 2010) (where an attorney was "actually involved" in

17  a prior representation and switches sides, possession of knowledge is presumed and

18  disqualification of that attorney is appropriate).

19       Where the motion to disqualify is directed not to the conflicted lawyer, but to a non-

20  conflicted firm, courts are even more strict in requiring proof of confidential information.

21  C&G, a separate firm, cannot be vicariously *presumed* to have knowledge that even the CPLP

22  Attorneys are only vicariously *presumed* to have by virtue of their employment at Cozen.

23  Courts do not engage in such "double imputation."  *See, e.g., Panduit Corp. v. All States*

24  *Plastic Mfg. Co.*, 744 F.2d 1564, 1578-79 (Fed. Cir. 1984) (where knowledge is not actual but

25  imputed based on the presumption that members of a firm share confidences, subsequent re-

26  imputation of that same knowledge to another attorney and a firm with which he becomes

27  _____

28  [6] The sole exceptions are discussed in Section IV.A.2 below and involve *knowing* participation in a breach, a situation indisputably not present here.

associated is inappropriate); *Frazier v. Superior Court*, 97 Cal. App. 4th 23, 36 (2002) (finding "no demonstrated reason to double impute the knowledge of confidential information from" a conflicted partner at the insurer's firm to another partner at that same firm, and then from that partner "to a separate law firm" serving as the insurer's independent counsel; *accord Essex Chem. Corp. v. Hartford Acc. & Indem. Co.*, 993 F. Supp. 241, 251 (D.N.J. 1998) (noting numerous courts have rejected a *per se* rule of double imputation).

As to DWT, Microsoft mysteriously intimates that facts may some day surface "disqualifying C&G on alternative grounds, including participation in DWT's breach of loyalty to Microsoft or a risk of shared confidences emanating from DWT."[7] Def. Br. at 15, n.3. Before Microsoft made its motion, however, C&G advised Microsoft that C&G has never had any substantive discussion with DWT about this case. Wald Dec. ¶ 12, Ex. A.[8] Microsoft has proffered no evidence to doubt this statement. Given the extensive relationship with DWT that Microsoft claims, Microsoft surely could have inquired of DWT and put in a declaration from that firm if any facts existed to contradict the overwhelming sworn evidence. It has not. In response to Microsoft's vague suppositions, C&G, C&G's client, Emblaze (which employed DWT in *Apple*), Cozen, and DWT are all in agreement: DWT did *not* breach its obligations to Microsoft at any time by sharing any Microsoft confidential information. Pavane Dec. ¶ 13.

Thus, based on the record evidence before the Court, there is no factual basis to disqualify C&G. *See FlatWorld*, 2013 WL 4039799, at *7 (refusing to disqualify co-counsel where "no evidence that conflicted lawyer ever received material confidential information

---

[7] To the extent Microsoft is effectively arguing for *triple presumed* imputation of shared confidences, from DWT to Cozen to C&G, no court has ever triple imputed. Moreover, as discussed below, even adding DWT to the mix, the facts in *Fund of Funds* on which Microsoft principally relies are so far afield from those here that it cannot serve as a legal basis to support Microsoft's motion. *See infra* at 12-15.

[8] In fact, C&G approached DWT in September 2012 only to inquire whether DWT could serve as local counsel in this action. Cefo Dec. ¶ 5. DWT immediately replied that Microsoft was a current client of the DWT firm and thus could not serve as local counsel. *Id.* ¶ 31. Indeed, Emblaze understands that Microsoft demanded that DWT withdraw from the representation in *Apple*, which it did. *See* Shani Dec. ¶ 31.

about Apple let alone passed it on to co-counsel); *Love v. Permanente Med. Group*, 12-CV-05679-WHO, 2013 WL 5273213, at *6 (N.D. Cal. Sept. 18, 2013) (where there was no evidence that the non-conflicted co-counsel received any confidential information about a prior client of the conflicted counsel through the conflicted counsel, non-conflicted counsel "need not be vicariously disqualified").

2.   C&G did not and could not aid and abet any breach of Cozen's duty of loyalty.

Microsoft's brief and supporting documents make it clear that C&G has done nothing wrong. *See* Def. Br. at 11, 18-19. Indeed, Microsoft could not support such an accusation because C&G had no knowledge whatsoever about any representation of Microsoft by Cozen until March 3, 2014, when Microsoft's counsel informed C&G of the conflict. *Id.* at 7, 18-19. After becoming aware of the conflict, C&G promptly severed all communications with Cozen (aside from confirming the existence of the conflict). Wald Dec. ¶ 8; Bromberg Dec. ¶ 14; Cefo Dec. ¶ 8; Villegas Dec. ¶ 8; Hanson Dec. ¶ 8.

Nonetheless, relying primarily on the Second Circuit's 1977 decision in *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, Microsoft urges this Court to hold that non-conflicted counsel must be disqualified where there is a finding that a lawyer with whom the non-conflicted lawyer did *any* work at all has a concurrent conflict of interest, regardless of that lawyer's knowledge of the conflict or any intent to aid and abet it. Def. Br. at 2, 18-19.

But that is not the law – it is not even the holding of *Fund of Funds*. In that case, the Second Circuit reiterated the "generally stated rule that a *'co-counsel' relationship will not alone warrant disqualification.…*" 567 F.2d at 235 (emphasis supplied). Rather, only on the "*sui generis* facts" underlying that action did the court depart from the general rule and disqualify plaintiff's co-counsel. *Id.* at 235; *see also Essex Chem. Corp.*, 993 F. Supp. at 252 (noting *Fund of Funds* "cautioned that its decision rested on the extreme facts of that case").

The "extreme facts" in *Fund of Funds* involved plaintiffs' retention of Morgan Lewis to conduct an extensive investigation that culminated in the filing of a securities action against Morgan Lewis' long-time current client, Arthur Andersen ("Andersen"). *Fund of Funds*, 567 F.2d at 226-27. The complaint was filed by the Meister firm, which Morgan Lewis "hand-

1   picked" to bring suit against Andersen. *Id.* at 229. The complaint against Andersen was based

2   on documents discovered by Morgan Lewis attorneys during their investigation for plaintiffs

3   where "[a]t every turn, lawyers in Morgan Lewis were presented with documents which

4   touched on Andersen's potential liability in the natural resource scheme." *Id.* at 233. Rather

5   than withdraw from the representation when it became clear that its client would be

6   implicated, the Morgan Lewis attorneys instead "put aside anything that was 'really hot' as to

7   Andersen" and then turned those documents over to Meister. *Id.* at 229.

8          The court concluded that both Morgan Lewis and Meister had to be disqualified

9   because Meister: (i) was hired as co-counsel at the behest of the conflicted Morgan Lewis;

10  (ii) knew of Morgan Lewis's conflict months before it filed the complaint against Andersen;

11  (iii) received "hot documents" directly from Morgan Lewis concerning Anderson's liability;

12  (iv) worked jointly with Morgan Lewis on the Andersen complaint; and (v) "served throughout

13  as the Morgan firm's 'understudy,' and emerged from the wings in February, 1975, when the

14  action against Andersen was commenced." *Id.* at 227. Based on those "extreme facts," which

15  specifically included Meister's *actual knowledge* of Morgan Lewis' conflict, the court

16  concluded that it should deviate from the general rule and find that co-counsel aided and

17  abetted Morgan Lewis' breach of its duty of loyalty. *Id.* at 234. That aiding and abetting

18  warranted disqualification.

19         Although Microsoft tacitly concedes that C&G did not know of Cozen's conflict until

20  March 3, 2014, it nonetheless asks that this Court find that C&G's conduct equates to

21  Meister's in *Fund of Funds*. But C&G's conduct is apples to Meister's oranges.

22         Unlike Morgan Lewis in *Fund of Funds*, Cozen had *no* confidential information

23  harmful to Microsoft to pass to C&G. Unlike Meister, co-counsel in *Fund of Funds*, C&G had

24  no idea that Cozen was conflicted. Further, C&G ceased contact with Cozen and the CPLP

25  Attorneys immediately upon learning of the purported conflict, again unlike Meister in *Fund

26  of Funds*. In short, unlike Meister in *Fund of Funds*, C&G could *not* have knowingly

27  participated in any breach of Cozen's duty, and it did not do so.

28

1    The two California cases on which Microsoft relies are just as unavailing to its

2  argument as *Fund of Funds*.  The first, *Elantec Semiconductor Inc. v. Cooper*, No. C 98-

3  03871, 1999 WL 33921316 (N.D. Cal. March 10, 1999), was a patent case concerning a

4  conflict based on a successive representation.  Unlike the facts here, the Court first disqualified

5  the conflicted counsel because he had become adverse to a prior client whom he had

6  represented on the other side of a substantially related case.  *Id.*, at *7.  The court then decided

7  to disqualify co-counsel also, in part because the two lawyers had worked together in several

8  cases.[9]  *Id.*, at *9.  Citing *Fund of Funds*, the court found that permitting co-counsel to remain

9  in the case would "further aid and abet the… breach of duty of loyalty" owed to the former

10  client.  *Id.*, at *8.  The facts here are readily distinguishable.  Cozen, which has *never*

11  represented Microsoft in a patent case, did not switch sides.  Further, C&G and Cozen have

12  not worked on several cases together.

13    In *In re California Canners and Growers*, co-counsel was disqualified in a case in

14  which the main lawyer was conflicted based on a concurrent representation.  74 B.R. at 350.

15  These facts, too, are wildly dissimilar from what is before this Court.  Citing *Fund of Funds*,

16  the *California Canners* court made a specific finding that co-counsel "were well aware of the

17  conflicting nature" of the conflicted firm's representations and "the joint representation" of the

18  two firms in the current case "was substantial."  *Id.* at 348-49.  Further, co-counsel continued

19  to participate with the conflicted firm "long after" the conflict was asserted and the client had

20  moved to disqualify.  *Id.* at 349.  Finally, knowing of the conflict, co-counsel "could have

21  avoided participating in" the conflicted firm's ethical breach of its duty.  *Id.*  None of those

22  facts is present here.

23    In fact, *no* case holds that disqualification is the appropriate remedy for a law firm that

24  was an innocent and unknowing bystander to a breach of loyalty (such as C&G was here) –

25

26

_____

27  [9] Significantly, the "main reason" the court found disqualification necessary was the concern
   that the conflicted counsel had obtained confidential information that could be used against the
28  former client *in this case*, and co-counsel "may have acquired just this confidential
   knowledge."  *Id.* at *8.

unless the facts of the case suggest a reasonable chance that confidential information was transmitted by the conflicted lawyer. As discussed above, because Cozen did not possess confidential Microsoft information, and DWT did not communicate with C&G, that possibility is not present here.

3.    Microsoft's failure to establish any dereliction by C&G is fatal to the motion to disqualify C&G.

Microsoft's final salvo to overcome C&G's lack of receipt of confidential information and ignorance of any conflict is to argue that these facts are simply "irrelevant," because motions to disqualify are about "preserving the public trust," Def. Br. at 19, rather than avoiding trial taint. Once again, Microsoft is wrong on the law.

To support its ill-founded assertion, Microsoft relies principally on the Second Circuit invocation of Canon 9 in 1977 in *Fund of Funds*. Def. Br. at 11, 19. *See also* Def. Br. at 10, 17 (referencing Canon 9 and the "appearance of impropriety"). But both New York and California courts now reject Canon 9 as an independent basis for disqualification. Indeed, Ninth Circuit and California state courts have all made clear that an "appearance" of impropriety cannot suffice to disqualify co-counsel absent a tangible dereliction or substantive ethical breach.[10] *See, e.g., Oaks Mgmt. Corp. v. Superior Ct.*, 145 Cal. App. 4th 453, 471 (Cal. Ct. App. 2006) (stating that an appearance of impropriety "is not a sufficient ground for disqualification of an attorney" in California and noting the requirement of a "tangible dereliction"); *Optyl Eyewear Fashion Int'l Corp.*, 760 F.2d at 1049 (warning "we must be cautious not to overuse Canon 9 as the basis for attorney disqualification"). As shown above, Microsoft has failed to identify any actual tangible dereliction or substantive ethical breach on

---

[10] While Canon 9 of the ABA Model Code of Professional Responsibility provides that a lawyer should avoid even the appearance of professional responsibility, "California has not adopted Canon 9, either in the Rules of Professional Conduct of the State Bar of California or in the Business and Professions Code. Indeed, reference to the ABA Code was deleted from the California Rules of Professional Conduct" in 1975. *Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 305-6 (Cal. Ct. App. 1989) ("there is no California case in which an attorney has been disqualified *solely* on this basis. Invariably, Canon 9 has been relied upon to disqualify counsel only where the appearance of impropriety arises in connection with a tangible dereliction").

15

C&G's part or *any* risk of trial taint; contrary to Microsoft's claim, an "appearance" of impropriety – which does not exist here in any event – cannot serve to justify disqualification.

**B. Microsoft's Efforts to Discredit the *Apple* Claim Construction Are Speculative, Erroneous And Irrelevant.**

Microsoft concocts a novel theory whereby Cozen and DWT acted disloyally to Microsoft by proposing claim constructions in the *Apple* case that – in Microsoft's subjective opinion – were "seemingly unimportant to that dispute."[11] Def. Br. at 14-16. This Court should of course be leery of an accused infringer's attempt to reverse-engineer the thought process of counsel in *Markman* proceedings held in a different case. The plain truth is that Microsoft is not a party to the *Apple* case, has never participated firsthand in any communications either with the Court or Emblaze in that case (including about claim construction), and has no knowledge at all of why Emblaze proposed terms for construction through its counsel in *Apple*. Microsoft's *guesswork* about the *Apple* case is not a legitimate basis on which to disqualify a law firm that has done nothing wrong.

Further, Microsoft's theory of "disloyalty" rests on multiple errors of fact. According to Microsoft, "the meaning of the term file was not at issue" in the *Apple* case, the term "file descriptor" was not addressed by Apple, and, "given Apple's lack of opposition," Judge Grewal "included Emblaze's proposed language in the Court's construction" "without analysis." Def. Br. at 7, 15-16. Each of these statements is untrue.

---

[11] Microsoft itself asserts that "claim construction in the *Apple* case was completed before the parties even exchanged terms in this case." Def. Br. at 14. That is, Microsoft alleges that Cozen breached its duty of loyalty to Microsoft by construing a patent in the *Apple* case where Microsoft was not a party, at a time when Microsoft had not even proposed a contrary definition. *See Enzo Biochem*, 468 F. Supp.2d 359, 366-67 (D. Conn. 2007) (declining to disqualify counsel in patent case where "clients are adverse to each other only insofar as they take opposite positions on a common legal issue in different cases pending in separate trial courts" and noting "while the construction of Enzo's patents applicable to the infringement claims brought against two separate accused infringers . . . implicates pretrial *Markman* overlap, the trials of how those constructions apply to the respective accused products or conduct are wholly separate").

In the *Apple* case, just as in the current one, the parties respectively proposed terms, negotiated, filed a Joint Claim Construction and Prehearing Statement, briefed their claim construction positions, presented technology tutorials, and argued their claim construction positions at a *Markman* hearing.  In their initial Patent Local Rule 4.1 lists of claim terms proposed to be construed, Apple and Emblaze both proposed "encoding the slices."  Emblaze also proposed "sequence of files," and Apple also proposed "dividing the stream into a sequence of slices…encoding the slices in a corresponding sequence of files."  Wald Dec. Exs. C, D.  After meeting and conferring, Apple and Emblaze *jointly* proposed ten terms for construction, with eight identified as "most significant," one of which was "encoding the slices in a corresponding sequence of files."[12]  Wald Dec. Ex. E.

The parties' rival constructions in *Apple*, as well as Judge Grewal's construction,[13] make clear that "files" was a significant term.

| Emblaze Proposal | Apple Proposal | Court's Construction |
|---|---|---|
| Forming each slice as a file, wherein a file includes data from a corresponding slice and a file descriptor, and wherein the sequence of files corresponds to the sequence of slices. | Compressing each slice and saving each slice as a file after the dividing step. | Forming each slice as a file, wherein a file includes compressed data from the slice and a file descriptor, and wherein the sequence of files corresponds to the sequence of slices. |

Plainly, the meaning of a "sequence of files," and in particular what it meant to "encode [slices] as a corresponding sequence of files," was *squarely* before Judge Grewal in the *Apple* case.

Far from being "silent" and making "no opposition" as Microsoft asserts, Def. Br. at 15, Apple (which is hardly an unsophisticated patent litigant itself) directly addressed the

---

[12] The parties also briefed and argued the separate term "sequence of files, each file having a respective index," though they did not list that term as among the most important.  Again, Microsoft's assertion that "files" were insignificant in *Apple* is simply in error.

[13] Judge Grewal's Claim Construction Order in the *Apple* case was filed as Exhibit C to Emblaze's Opening Claim Construction Brief (D.E. 52) in this action.

pertinence of a "file descriptor" in its *Markman* brief.  Apple argued that encoding a slice as a

file means taking an individual slice and compressing it, and that Emblaze was "improperly

intermix[ing] 'encoding' *with the act of assigning a descriptor to a file* after the slice has been

compressed into it… 'encoding' [is not] the process by which *descriptors are assigned to files*

corresponding to the slices."  Wald Dec., Ex. F (Apple Responsive Claim Construction Brief)

at 15-16 (emphasis added).

Judge Grewal rejected Apple's argument, but hardly without "analysis."  During oral

argument, the court asked questions about this proposed term based on the specification.[14]

The construction that Judge Grewal arrived at *was not even Emblaze's construction.*  The

extensive procedural history above rebuts any notion that the claim construction in the *Apple*

case arose from unthinking judicial credulity, as Microsoft claims.

Microsoft's motive to denigrate the *Apple* claim construction as a product of lawyer

misdirection and judicial naiveté is obvious, because Microsoft has not been shy about telling

this Court that it hopes to avoid infringement by procuring a favorable construction of the term

"file."  Even putting aside the disrespect to the court and parties in *Apple* that is inherent in

Microsoft's argument, however, Microsoft's attempt to characterize the *Markman* ruling in

*Apple* as mere lawyer "strategy" ignores a truism of claim construction that Microsoft would

prefer to avoid.

Claim construction in every patent case is driven by the words in the patent.  This is

true regardless of the products that are accused, the named defendant, or the lawyers

---

[14] Judge Grewal adjusted the claim construction to reflect that it is the stream of data, not each individual slice as Apple had proposed, which is compressed.  Wald Dec., Ex. G (Apple Markman Tr.) at 105 (referencing the "file descriptor" and leaving it unchanged while adding the words "compressed data.").

involved.[15]  In the '473 Patent, those words refer to files, and the Court in *Apple* appropriately construed the words of the patent.[16]

Emblaze absolutely relies on Judge Grewal's claim construction, should this Court find that a construction is required, because – unlike Microsoft's many attempts to read in limitations not found in the claims – Judge Grewal's construction is consistent with the '473 Patent it is based upon.  It is the patent, not Cozen, on which Microsoft must put the blame for the claim construction that Microsoft so transparently has brought this disqualification motion to avoid.  *See Asus*, *supra* ("courts construe claims in the manner that 'most naturally aligns with the patent's description of the invention.'") (citations omitted).

**C.    Microsoft's Novel Theory That Disqualification Is Necessary Because C&G "Built Upon" Cozen's Work Product Is Not The Law.**

Unable to establish that any confidential information has been disclosed or that C&G has done anything wrong, Microsoft resorts to a creative claim that C&G should be disqualified because it has supposedly "built upon" Cozen's work by "propos[ing] for construction only those terms that were construed in the *Apple* case," and "propos[ing] identical constructions to those adopted by Judge Grewal."  Def. Br. at 6.  There is no legal, factual, or equitable basis for Microsoft's novel theories.[17]

---

[15] It is well-settled that "[t]he construction of terms found in patent claims is a question of law to be determined by the Court."  *ASUS Computer Int'l v. Round Rock Research*, LLC, 12--02099-JST, 2013 WL 4081698 (N.D. Cal. Aug. 9, 2013) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996)).  This was true in the *Apple* case, just as in any other, as the record in that case makes clear.

[16] Additionally, Microsoft never explains how construing a file as having a "file descriptor" in *Apple* was "directly adverse" to Microsoft or was "specifically designed to bolster Emblaze's developing case against Microsoft."  Def. Br. at 15.  Nor does Microsoft ever identify anything intrinsically wrong with Judge Grewal's construction.

[17] In fact, again, Microsoft is factually incorrect.  It is *Microsoft*, not C&G or Emblaze, which insists upon construing the stand-alone term "file."  Wald Dec. ¶ 26.  Indeed, Emblaze's position in this case is that the term "file" requires no construction.  *See* Joint Claim Construction and Prehearing Statement at p. 1 (D.E. 46); Emblaze Ltd.'s Opening Claim Construction Brief at p. 6 (D.E. 52).

1    Microsoft cannot seriously suggest that there is anything sinister or surprising about

2    counsel for a patent holder advancing the same construction of a patent that was made in a

3    different case.  Microsoft itself has done so.  Just last year, Microsoft submitted an *amicus*

4    brief to the Federal Circuit in which it urged that claim construction should remain a question

5    of law to avoid the "problem of the same patent being construed differently in different

6    actions."  *See* Brief of *Amicus Curiae* Microsoft Corporation, submitted in *Lightning Ballast*

7    *Control v. Phillips Electronics N. Am.*, 2013 WL 3008281, at *3 (Fed. Cir. 2013); *see also id.,*

8    at *3-4 (discussing the problem of "inconsistent claim constructions" where "the patent owner

9    may prevail in multiple different cases with multiple different claim constructions").  Any

10   lawyer for Emblaze would advocate consistent constructions of its patent, regardless of

11   whether he or she had ever heard of the Cozen law firm.  The same is true of the decision to

12   use an expert familiar with the '473 Patent.

13       Nor is Microsoft accurate when it claims that Emblaze's strategy was "Cozen's" work.

14   Microsoft's own exhibits confirm that Emblaze's "strategy" was developed by Emblaze and

15   articulated by CPLP, which never represented Microsoft and thus had no conflict.[18]  When

16   C&G began to represent Microsoft, of course it "built upon" CPLP's work product, as

17   Emblaze properly provided C&G with correspondence between Microsoft and CPLP as well

18   as at least some of the correspondence between of CPLP and Emblaze.  Cefo Dec. ¶ 3;

19   Villegas Dec. ¶ 3; Hanson Dec. ¶ 3.  Any law firm would have done so.

20       Microsoft insists that the fact of simultaneous adverse representation by Cozen requires

21   disqualification "to mitigate the harm" of Cozen's "work product."  Def. Br. at 19, 22.  The

22

23   [18] Microsoft repeatedly complains that Pavane was the "architect" of Emblaze's case, and that
24   the instant litigation results from his "investigation."  Def. Br. at 12, 16, 18.  That is untrue.  It
     is Emblaze's own patent that is being construed, and, accordingly, insofar as there is an
25   "architect" in claim construction in the litigations that Emblaze has brought to enforce its
     patent rights, that architect is Emblaze.  Shani Dec. ¶¶ 8, 9.  Further, the CPLP Attorneys,
26   including Pavane, were not Microsoft's counsel when they helped Emblaze confirm
     Microsoft's infringement.  Microsoft is a sophisticated user of legal services and cannot
27   credibly suggest that it believes that it was entitled to some kind of immunity from litigation
     "resulting from" CPLP's non-conflicted investigation.  It is beyond question that Emblaze was
28   free to sue Microsoft making full use of CPLP's work and strategies.

1    Ninth Circuit, however, has recognized that, where disqualification is required because of the

2    violation of the rule prohibiting simultaneous representation on unrelated matters (such as a

3    patent case and a tax dispute), disqualification "is properly viewed as serving a deterrent

4    policy" and is "not a remedy designed to protect the complaining party from prejudice."

5    *Bradshaw v. Zoological Soc. of San Diego*, 662 F.2d 1301, 1312, n.28 (9th Cir. 1981); *see also*

6    Def. Br. at 12 (noting that purpose of disqualification is "prophylactic"); Note, *The*

7    *Availability of the Work Product of A Disqualified Attorney:  What Standard?*, 127 U. Pa. L.

8    Rev. 1607, 1621 (1979) (explaining that when confidential information is involved, there is a

9    risk that may persis[t] in the work product, but, if the concern is that "the attorney's loyalty is

10   diverted" to a conflicting matter, "this danger does not exist because the work product does not

11   contain the conflict of loyalties.").[19]

12        Consistent with these principles, to deprive a client of the work product of a lawyer

13   who proves to have been conflicted, the moving party must do more than simply point to the

14   existence of the disqualifying conflict as Microsoft seeks to do.  *See*, *e.g.*, *Actel Corp. v.*

15   *Quicklogic Corp.*, C 94-20050 JW, 1996 WL 297045, at *12 (N.D. Cal. May 29, 1996)

16   (rejecting the notion that "if there is disqualification there is *per se* taint denying the use of

17   work product during the period of disqualification.") (citing and quoting *First Wisconsin*

18   *Mortgage Trust v. First Wisconsin Corp.*, 584 F.2d 201, 208-9 (7th Cir. 1978)).  Rather, the

19   moving party must show some "advantage, such as might result from transmission of

20   confidential information," arising from the dual representation.[20]  *Id.*

21

22   [19] For this reason, *in camera* review is not necessary in this case.  There is no need to inquire
     as to transmission of confidential information, because it is indisputable that there was none to
23   transmit, and Cozen's work product does not afford a basis to invade Emblaze's privileged
     communications as Microsoft hopes to do.
24

25   [20] The court in *Actel* declined to apply the principle that, upon disqualification, there is *per se*
     taint that would require barring the use of work product during the period of disqualification as
26   that rule would, *inter alia*, (i) destroy the work done by disqualified counsel irrespective of any
     fault on the part of the party for whom the work was done; (ii) do this regardless of whether
27   the work destroyed involved the use of any confidential information obtained from the
     complaining party; (iii) foreclose trial courts from any exercise of discretion in determining
28   what effect an order of disqualification should have upon the parties to litigation; (iv) seriously
     impede the administration of justice because it would for all practical purposes impose a

In *Actel*, the court explained that, unless the conflict has actually resulted in a specific disadvantage, depriving the client of the work product of the conflicted lawyer serves little purpose beyond providing the complaining party with "the satisfaction of imposing an unnecessary financial burden on its adversary." *Actel*, 1996 WL 297045, at *12.  Where "specific injury to the disqualifying party has not been shown… denying turnover of work product would not serve the purpose of withdrawal and would have a severely harmful effect upon broader interest of justice and society." *Behunin v. Dow Chemical Co.*, 642 F. Supp. 870, 872-73 (D. Colo. 1986) (permitting turnover of work product of withdrawn counsel where "the secrets and confidences known to [conflicted counsel]" were not relevant to the instant action).

No possible advantage to Emblaze could exist here from Cozen's conflict based on tax representation.  Again, Microsoft has not alleged that Cozen ever had confidential Microsoft information material to this case or that any lawyer at Cozen ever represented Microsoft in a matter related to this case.  The fact of Cozen's representation of Microsoft in tax matters did not give Mr. Pavane or his colleagues any special or unique insight or legal ability in this case.  Thus, the fact that C&G was exposed to Cozen "work product" does not justify depriving Emblaze of its counsel on the eve of *Markman*.

### D.     The Equities Require That Microsoft's Motion Be Denied.

1.     Microsoft's motion is a transparent trial tactic.

As noted above, disqualification motions are highly disfavored in part because they are often tactically motivated.  *Oracle*, 2011 WL 2940313, at *4 (motions to disqualify counsel are strongly disfavored in part "[b]ecause of their susceptibility to tactical abuse").  Several factors suggest that tactical abuse is at the heart of Microsoft's motion.

First, the timing is highly suspicious.  This motion was served on Emblaze on April 14, 2014, six weeks after Microsoft contacted C&G about Cozen's alleged conflict on March 3,

moratorium upon trial preparation for such period of time as it might take to rule upon a motion for disqualification; and (v) do a major injustice to the clients of disqualified counsel, causing them to pay a second time for the same work.  *Actel*, 1996 WL 297045, at *12.

2014.  Wald Dec. ¶ 5.  But Cozen appeared in this case a full three months earlier, on December 3, 2013.  Def. Br. at 7.  Moreover, though Microsoft makes much of Cozen and DWT's roles in *Apple*, it is highly likely that Microsoft knew of the alleged conflict well before given its sustained attention to the *Apple* case.  It was aware of Cozen's and DWT's involvement no later than June 2013, when Microsoft's in-house counsel in this case filed the *Apple* transcript prominently featuring DWT and Cozen as "counsel for plaintiff" on the cover and first pages.  Microsoft, however, waited to bring this motion so it is set to be heard just two weeks before *Markman* is scheduled in this case.  If Emblaze must hire new counsel, the *Markman* will of course have to be rescheduled for a much later date.  Nor is this inexplicable delay the only indicator of tactic.  Microsoft has also relied on this motion as the purported justification to refuse to allow Emblaze's expert to review Microsoft materials, and it has said it intends to object to the expert's tutorial scheduled for June 9, 2014.  Wald Dec. ¶¶ 28, 29.

The clearest proof of Microsoft's true motive in seeking this highly disfavored outcome is its own moving papers.  Microsoft's brief consists almost exclusively of an attack on the judicial construction of the term "file" in the *Apple* case rather than on any facts that would meet its heavy burden to disqualify C&G.

The motive is further revealed by the fact that, one week after Microsoft notified C&G of Cozen's conflict, in March 2014, Microsoft informed C&G that it had decided – ***five months*** after the close of claim construction briefing – to file a supplemental brief devoted solely to the meaning of the term "file" in this action.  This supplemental brief, which Microsoft filed on March 25, 2014, was based almost exclusively on inventor testimony (which is irrelevant to claim construction) that Microsoft had had in its possession for four months.  Wald Dec. ¶ 27.  Finally, Microsoft's inclusion of its own self-serving settlement correspondence as exhibits, without Emblaze's responses, is a transparent attempt to bolster its *Markman* briefs and color claim construction.

Nor is this the first time Microsoft has tried to use the ethical rules to improper effect to salvage its claim construction.  As the Court will recall, Microsoft used the Initial Case Management Statement in this case as a vehicle to showcase its "fragment/file" arguments in

connection with a threatened "motion to dismiss under Rule 11." The foregoing strongly suggests that Microsoft's motivating purpose is to use this motion to influence the Court into ignoring Judge Grewal's rulings in the *Apple* case, rather than on any true belief that the law or facts support C&G's disqualification.[21]

        2.    The only threatened "harm" is to Emblaze and the prompt adjudication of this matter.

In addition to the issues discussed above, in deciding a motion to disqualify counsel, courts must consider "overriding policy factors," which include a client's right to its chosen counsel, the attorney's interest in representing its client, the financial burden on a client to replace disqualified counsel, the need to maintain ethical standards of professional responsibility, and the preservation of the public trust in the scrupulous administration of justice and the integrity of the bar. *See, e.g., Openwave Sys. Inc.*, 2011 WL 1225978, at *7. These factors all weigh strongly in favor of permitting C&G to remain as Emblaze's counsel.

One of the most critical factors is the burden on the client because "disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client who must bear the monetary and other costs of finding a replacement. A client deprived of the attorney of his choice suffers a particularly heavy penalty where … his attorney is highly skilled in the relevant area of the law." *Gregori*, 207 Cal. App. 3d at 300; *see also Love*, 2013 WL 5273213, at *6 (courts must be cognizant of the substantial hardship and the monetary and other costs of finding a replacement on parties whose counsel is disqualified) (internal quotations omitted); *Essex*, 993 F. Supp. at 254 ("the court must balance the hardships to the client whose lawyer is sought to be disqualified against the potential harm to the adversary should the attorney be permitted to proceed").

---

[21] On April 25, 2014, Judge Grewal issued a ruling on Apple's motion for summary judgment in that case, further explaining the '473 Patent. The ruling denied the majority of Apple's motion. *See Emblaze Ltd. v. Apple Inc.*, 5:11-CV-01079-PSG, 2014 WL 1652226 (N.D. Cal. Apr. 24, 2014). Emblaze therefore expects that Microsoft will engage in even more diversionary efforts to try to prevent this court from considering a fellow Court's informed view of the '473 Patent.

The prejudice and hardships to Emblaze should C&G be disqualified cannot be overstated.  C&G has been working on this matter from its inception in July 2012.  Bromberg Dec. ¶ 6.  During that time, the parties have engaged in significant discovery and motion practice; they are now on the verge of *Markman*.  Shani Dec. ¶ 26-30; Wald Dec. ¶ 9.  C&G's disqualification would result in years of lost labor, cause significant delay, and lead to "the replication of expended efforts."  *Love*, 2013 WL 5273213, at *6 (denying motion to disqualify co-counsel where it would prejudice and impose a significant hardship on the client).  When balanced against the non-existent harms to Microsoft and the judicial system, the equities all weigh in favor of permitting Emblaze to retain the counsel of its choice.

## V.   CONCLUSION

"[D]isqualification is inappropriate … simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings."  *Gregori*, 207 Cal. App. 3d at 308-9.  Disqualification of a blameless firm that has no confidential information, knew nothing of another firm's conflict and did not participate or benefit in any way from that conflict is entirely inappropriate.  Microsoft's efforts to prejudice Emblaze because Microsoft disagrees with a claim construction in an unrelated case to which it is not a party should not be sanctioned by this Court.  Emblaze is entitled to nothing less than a fair and objective adjudication of its rights against Microsoft with its chosen counsel.  In short, Microsoft's motion is meritless and should be denied in its entirety.

Dated:  May 1, 2014

**COHEN & GRESSER LLP**

By: */s/ Alexandra Wald_____*
Alexandra Wald
Sandra C. McCallion
Oliver Haker

*Attorneys for Plaintiff Emblaze Ltd.*

1

### <u>ATTESTATION</u>

2

      I, Scott R. Raber, am counsel for Emblaze, Ltd.  I am the registered ECF user whose

3

username and password are being used to file this Opposition to Microsoft Corporation's

4

Motion to Disqualify Cohen & Gresser LLP As Counsel for Emblaze Ltd., and related

5

declarations.  In compliance with Civ. L.R. 5-1(i)(3), I hereby attest that I have obtained the

6

concurrence of the following individuals in connection with this filing:  Alexandra Wald,

7

Karen Bromberg, Erik Hanson, Damir Cefo, and Francisco Villegas.

8

9

Dated:  May 1, 2014                 RIMON, P.C.

10

11

12

                                   By:    */s/ Scott R. Raber*                    

                                          Scott R. Raber

13

                                          Attorneys for Plaintiff Emblaze Ltd.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28