1  Eric L. Wesenberg, (SBN 139696)
   EWesenberg@perkinscoie.com
2  Christopher L. Kelley (SBN 166608)
   ckelley@perkinscoie.com
3  Kenneth J. Halpern (SBN 187663)
   KHalpern@perkinscoie.com
4  PERKINS COIE LLP
   3150 Porter Drive
5  Palo Alto, CA 94304-1212
   Telephone: 650.838.4300
6  Facsimile: 650.838.4350

7  Antoine M. McNamara (SBN 261980)
   AMcNamara@perkinscoie.com
8  PERKINS COIE LLP
   1201 Third Avenue, Suite 4800
9  Seattle, WA 98101
   Telephone: 206.359.8000
10 Facsimile: 206.359.9000

11 Isabella E. Fu (SBN 154677)
   Associate General Counsel
12 Microsoft Corporation
   One Microsoft Way
13 Redmond, WA 98052
   Telephone: 425.882.8080
14 Facsimile: 425.936.7329

15 *Counsel for Defendant
   Microsoft Corporation*

16

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EMBLAZE LTD.,<br><br>            Plaintiff,<br><br>    v.<br><br>MICROSOFT CORPORATION,<br><br>            Defendant. | Case No. 3:12-cv-05422-JST<br><br>**MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY COHEN & GRESSER LLP AS COUNSEL FOR EMBLAZE LTD.**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:   May 29, 2014<br>Time:   2:00 p.m.<br>Place:  Courtroom 9, 19th Floor<br>Judge:  Hon. Jon S. Tigar |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. EMBLAZE HAS ADMITTED THE FACTUAL PREDICATES FOR THIS MOTION ............................................................................................................................ 3

III. EMBLAZE REFUSES TO DISCLOSE THE PRECISE EXTENT OF COZEN'S PARTICIPATION IN THIS CASE OR ITS COMMUNICATIONS WITH C&G ........... 4

IV. ARGUMENT ....................................................................................................................... 8

    1. Emblaze Has Failed to Rebut Microsoft's Prima Facie Case for Disqualification ................................................................................................ 8

    2. The Duty of Confidentiality Cases Disqualify Innocent Counsel by Imputation on a Similar Rationale to the Duty of Loyalty and With a Lesser Showing of Harm than in This Case ......................................................... 11

V. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Actel Corp. v. Quicklogic Corp.*,
 1996 WL 297045 (N.D. Cal. May 29, 1996) ................................................................. 14

*Baker v. Bridgestone/ Firestone Inc.*,
 893 F. Supp. 1349 (N.D. Ohio 1995) ............................................................... 2, 10, 12

*Flatt v. Superior Ct.*,
 9 Cal. 4th 275 (1994) ..................................................................................................... 12

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*,
 567 F.2d 225 (2d Cir. 1977) ................................................................................... *passim*

*Gonzalez v. Central Elec. Co-op, Inc.*,
 2009 WL 3415235 (D. Or. Oct. 15, 2009) ................................................................... 10

*Higdon v. Superior Court*,
 227 Cal. App. 3d 1667 (1991) ....................................................................................... 13

*In re California Canners & Growers*,
 74 BR 336 (Bankr. N.D. Cal. 1987) .................................................................. 1, 10, 14

*In re Complex Asbestos Litigation*,
 232 Cal. App. 3d 572 (1991) ......................................................................................... 10

*j2 Global Communications Inc. v. Captaris Inc.*,
 2012 WL 6618272 (C.D. Cal. Dec. 19, 2012) .............................................. 2, 11, 12

*Oaks Mgmt. Corp. v. Superior Ct.*,
 145 Cal. App. 4th 453 (Cal. Ct. App. 2006) ................................................................ 13

*Optyl Eyewear Fashion Int'l Corp. v. Style Co.*,
 760 F.2d 1045 (9th Cir. 1985) ...................................................................................... 13

*Pound v. DeMera DeMera Cameron*,
 135 Cal. App. 4th 70 (2005) .......................................................................................... 12

*SpeeDee Oil Change Sys., Inc.*,
 20 Cal. 4th 1135, 1145 (1999) .......................................................................... 1, 8, 10, 11

**OTHER AUTHORITIES**

Cal. Rule of Professional Conduct 3-310(C)(3) .................................................................. 3

## I. INTRODUCTION

In its Opposition ("Opp."), plaintiff Emblaze Ltd. ("Emblaze") contests none of the operative facts which form the basis of Microsoft's motion to disqualify Cohen & Gresser ("C&G") and admits nearly all of them. Emblaze concedes that its counsel in the *Apple* case, Cozen O'Connor ("Cozen"), breached its duty of loyalty to Microsoft by representing Emblaze against it in this action. Emblaze concedes that Cozen and C&G have been coordinating and cooperating throughout the Microsoft litigation and that C&G is *not* the architect of this litigation. And Emblaze concedes that theories, evidence, witnesses and arguments advanced by Cozen in the Apple case have been transplanted to this Court. Under the principle of *Fund of Funds*, C&G's "participati[on] in" Cozen's breach by enabling it "to do indirectly what [it] cannot do directly," namely, litigate against its own client, is grounds for disqualification of C&G.[1]

Emblaze's sole defense is that its counsel at C&G were unaware of the conflict, and, no matter how flagrant Cozen's ethical violations or how extensive Cozen's participation in this case against its client, C&G cannot be disqualified unless it deliberately conspired to flout this state's ethical rules. Emblaze is wrong. The Court has the inherent power to disqualify attorneys when necessary to prevent the continuing harm to Microsoft of its own counsel's work being used against it, *Fund of Funds*, 567 F.2d at 234, and to preserve the perception of the integrity of the bar and fairness of the judicial system. *SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999). It is uncontested that Microsoft's counsel played a lead role in developing and prosecuting this action against its own client for 17 months, and C&G's continuing participation in the case would perpetuate that harm, regardless of whether its attorneys previously knew about Cozen's flagrant ethical breach. Moreover, proof that C&G knew of the ethical violations (which Emblaze argues is necessary for disqualification) could likely only be found in records or conversations hidden behind the wall of Emblaze's attorney-client privilege. The legal standard Emblaze proposes would encourage parties to do exactly what Emblaze has done here—simply deny counsel's knowledge and refuse to provide factual detail or relevant documentation for *in*

---

[1] *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 234 (2d Cir. 1977); *In re California Canners & Growers*, 74 BR 336, 347 (Bankr. N.D. Cal. 1987).

*camera* review. According to Emblaze, despite an egregious, continuous and harmful ethics violation, everyone should just walk away as if nothing happened. Its stonewalling should not be rewarded, nor incentivized for other litigants and firms.

This is especially true given that what Emblaze *does* say calls its story into serious doubt. It makes the incredible claim that the true "architect" of its U.S. patent case is not any of its three law firms but itself, a non-U.S. entity whose personnel lack legal training, much less expertise in U.S. patent law. It admits that C&G repeatedly consulted with Cozen about this case, but refuses to reveal the extent or nature of Cozen's work—even though it describes the work done by C&G. It claims that when Martin Pavane and his team joined a new firm, bringing with them a high-profile case on the '473 patent against Apple and a brewing suit against equally high-profile Microsoft, they failed to conduct a proper conflicts check due to an unspecified "clerical error." Yet Pavane also suddenly ceased corresponding with Microsoft — an act that, while it might have an innocent explanation (though none has been provided), is consistent with knowledge of the conflict. Finally, Emblaze contends that Cozen did not craft its constructions with Microsoft in mind because the definition of "file" and whether it includes a "descriptor" were disputed issues in the *Apple* case, when the record clearly shows that explanation to be false. Given the implausibility of these assertions, Emblaze's flat refusal to describe the extent of the admitted collaboration between its lawyers, and the undisputed fact that its case against *Apple* has been imported into this litigation, it is safe to assume that Cozen and C&G worked together closely and extensively. If so, their conflicts will be imputed to each other. *Id.* at 1155. All the public evidence points to such a relationship, and Emblaze has offered nothing to rebut that inference.

Finally, even if C&G had been unaware of Cozen's ongoing violation, courts have disqualified co-counsel without finding that they knew of the conflict or even upon an affirmative finding that co-counsel did *not* know of the breach. *See, e.g., j2 Global Communications Inc. v. Captaris Inc.*, 2012 WL 6618272, at *10 (C.D. Cal. Dec. 19, 2012); *Baker v. Bridgestone/ Firestone Inc.*, 893 F. Supp. 1349, 1368-69 (N.D. Ohio 1995). Although these are duty-of-confidentiality cases, innocent counsel in these and other instances have been disqualified for minor violations on a similar rationale to the duty-of-loyalty cases. The actual harm and inequity

CASE NO. 3:12-CV-05422 JST

1  in allowing C&G to remain in the case would be far greater here, as Emblaze and C&G would
2  continue to benefit from a case built in part by Microsoft's own counsel.  This would preserve the
3  enormous benefit that Emblaze and C&G have reaped from Cozen's unethical behavior, and
4  punish Microsoft, the breach's innocent victim.  To prevent C&G and Emblaze from carrying
5  forward the fruits, and reaping the benefits of Cozen's litigation against its own client, and in
6  light of Emblaze's admissions that C&G collaborated with Cozen and its refusal to detail the
7  extent of the collaboration, C&G should be disqualified.

### II. EMBLAZE HAS ADMITTED THE FACTUAL PREDICATES FOR THIS MOTION

Emblaze admits or fails to contest nearly every factual assertion on which this motion is based.

(i) Emblaze admits that Cozen has represented Emblaze in the *Apple* case since before this litigation commenced.  Pavane Dec. ¶ 5.

(ii) Emblaze admits that Cozen has represented Microsoft at all relevant times, including in 2011 (when Pavane joined Cozen) and in 2013, when it appeared in this case as counsel for Emblaze.  *See* Opp. at 1, 4, 6–7.  This is a violation of Cal. Rule of Professional Conduct 3-310(C)(3), prohibiting representation adverse to a current client, and a breach of the duty of loyalty Cozen owes to Microsoft.

(iii) Emblaze admits that C&G is **not** the "architect" of Emblaze's case against Microsoft, and that Pavane has played a lead role in this case, both at CPLP and at Cozen, as his appearance to argue the critical issue of claim construction confirms.  Opp. at 6–7, 20 n.18; Shani Dec. at ¶ 8–9.  (As discussed in more detail below, Emblaze implausibly claims that it, not its lawyers, is the "architect" of the case.)

(iv) Emblaze admits, based on communications between Microsoft counsel and Alexandra Wald of C&G and Pavane, that C&G and Cozen have been communicating about this case and coordinating with each other throughout the course of this litigation.  Motion, at 7.  Emblaze expressly admits that C&G consulted with Cozen during the course of this case, while Microsoft was Cozen's client.  Wald Dec. ¶ 4; Cefo Dec. ¶ 6; Villegas Dec. ¶ 6; Hanson Dec. ¶ 6.

(v) Emblaze does not deny that Cozen has provided C&G with theories, evidence, witnesses and arguments to the substantial advantage of Emblaze and C&G. As Microsoft pointed out, Emblaze has in this case asserted the same claims of the same patent as in the *Apple* case, proposed the identical terms for construction, advanced the same constructions adopted in that case (which mostly reflect Emblaze's proposals), including as to "file," and seeks to employ the same expert witness on infringement and validity. Motion at 6–8. Moreover, Emblaze admits that it has conveyed to C&G the materials generated by Pavane and his colleagues at CPLP and is "making full use" of the "work and strategies" of Pavane's team. Opp. at 20 n.18. Emblaze counters that it is entitled to use these materials because they were created before Pavane's team represented Microsoft, but this misses the point. Even if some of the early materials pre-date Pavane's conflict, their acknowledged importance tends to confirm that his and his team's ideas are the foundation of Emblaze's case, and that when C&G was hired and this case filed, Pavane was the lawyer most knowledgeable about the '473 patent. This strengthens the inference that in the two firms' admittedly substantive communications throughout this case, Cozen was guiding C&G. Emblaze's unexplained silence on the nature of those communications—it describes C&G's work but not Cozen's, *see* Wald Dec. ¶ 9—further suggests that the communications must have consisted of guidance and instructions, as does the simple fact that this case has at all times been at an earlier stage than the *Apple* case. Further confirming Pavane's involvement and importance to Emblaze throughout this case is that he made an appearance for the purpose of arguing claim construction fourteen months after the case was filed. Opp. at 7.

(vi) Emblaze agrees that it and C&G have benefited from Cozen's actions both tactically (in being able, *inter alia*, to advance positions bearing Judge Grewal's imprimatur) and inferentially, by saving resources that would otherwise have been expended on the litigation. Opp. at 20.

### III. EMBLAZE REFUSES TO DISCLOSE THE PRECISE EXTENT OF COZEN'S PARTICIPATION IN THIS CASE OR ITS COMMUNICATIONS WITH C&G

While it admits to substantive coordination between Cozen and C&G, Emblaze is parsimonious with the most relevant information that it, exclusively, possesses—the precise

1   extent of Cozen's involvement in litigating this case.  Yet, the factual claims it does make call its

2   entire account into question.

3   Each C&G attorney admits that he or she "communicated with Cozen from time to time,

4   at Emblaze's request."  Wald Dec. ¶ 4; Cefo Dec. ¶ 6; Villegas Dec. ¶ 6; Hanson Dec. ¶ 6.  Wald

5   has admitted that at least some of the communication was substantive consultation.  Wesenberg

6   Dec. ¶¶ 5–6.  But none of the attorney declarations reveal the purpose, subjects or extent of those

7   communications.  This omission cannot have been motivated by concern for the attorney-client

8   privilege, because Emblaze discloses the tasks performed by C&G, such as "drafting and filing

9   the complaint," "analyzing prior art," and "serving infringement disclosures."  Wald Dec. ¶ 9.

10  There is no reason why it could not have described the work Cozen performed in similar detail.  It

11  simply chose not to tell the Court.  The only possible inference is that the facts would have been

12  harmful to Emblaze's position because Cozen's work was both substantive and extensive.

13  Emblaze implausibly claims that it, and not Pavane's team, was the "architect" of its own

14  case.  Opp. at 20 n.18.  And it asserts that "[a]t all times, Emblaze has been the driving force

15  behind both litigations."  *See* Shani Dec. ¶¶ 8, 9.  Thus, it implicitly makes the remarkable

16  admission that C&G, its nominal lead counsel, is ***not*** the architect of its case against Microsoft.  It

17  is unclear what precisely is meant by the "driving force" and the "architect."  These descriptions

18  do not reveal what specific actions Emblaze took independent of counsel, but plainly are intended

19  to imply that Emblaze itself developed the litigation strategy, infringement positions, and claim

20  constructions.  But when this implication is made explicit, its implausibility is evident.  As

21  unlikely as it is that a U.S. company would develop a patent infringement case without the

22  assistance of lawyers, it is even less plausible that a company whose non-lawyer employees don't

23  live in the United States and thus have (presumably) even less familiarity with U.S. law and

24  litigation procedure would do so.  Given Emblaze's concessions that it made "full use" of the

25  "work and strategies" of Martin Pavane, Opp. 20 n. 18, his undisputed leadership of Emblaze's

26  enforcement efforts against Microsoft from the very beginning, and his appearance in the case to

27  argue claim construction, the far more plausible inference is that Pavane is the architect of the

28  case.  Emblaze's claim that the non-lawyer client is the true source of work product is an effort to

launder the admitted collaboration between its two law firms through the client and cannot be credited. (Indeed, if it were true that Emblaze itself is the true architect of the case then losing C&G prior to claim construction would occasion little prejudice to Emblaze, which will of course remain in the case and can hire another lawyer to represent it in court.)

Similarly unconvincing and misleading is Emblaze's denial that its counsel at the Cozen firm proposed constructions in the *Apple* case with the primary intent to bolster its case against Microsoft. Emblaze does not contest that its attorneys at Cozen who proposed, briefed, and argued for its constructions were well aware that its case against Microsoft, unlike its case against Apple, could be lost on the meaning of the claim term "file." *See* Sullivan Dec. ¶¶ 3, 4, 6; Shani Dec. ¶¶ 19, 20. In particular, Emblaze's attorneys knew that its allegations against Microsoft depended on "file" being construed broadly to identify not simply the actual files on a computer but also specific, individual sub-fragments of data within those files. *Id.* Emblaze's proposed language that "a file includes data from a corresponding slice and a file descriptor" is a clear attempt to preemptively define "file" so as to preclude that term from being given its ordinary meaning in the subsequent action against Microsoft.

In its defense, Emblaze attempts to argue that "file" was, in fact, also a "significant term" in the Apple case, Opp. at 17, but the only evidence it puts forth reinforces that it was actually the meaning of "encode" that was at the heart of the parties' dispute. The claim term at issue was "encoding the slices in a corresponding sequence of files," and Emblaze attorney Martin Pavane specifically told Magistrate Judge Grewal at the hearing: "I don't think we have a big fight about sequence of files corresponding to sequence of slices. I don't think that's where the issue resides. The dispute here really goes to the word 'encoding,' and according to Apple's construction, 'encoding' must mean 'compressing.'" *Emblaze v. Apple*, Hrg. Trans. at 103:14–19; *see also* Apple's Claim Construction Brief at 14 ("The parties' dispute centers on whether encoding requires compression."). Emblaze points to selected passages in the record that reference Emblaze's proposed "file descriptor," Opp. at 18, but it has not, and cannot, point to a single statement in the record (for example, in either of the parties' claim construction briefing, the hearing transcript, or the Court's order) where either party or Judge Grewal addresses the

LEGAL120904594.4 - 6 - MICROSOFT'S REPLY ISO MOTION TO DISQUALIFY COHEN & GRESSER
CASE NO. 3:12-CV-05422 JST

1  meaning of this proposed term, which appears nowhere in the patent specification or the parties'
2  supporting evidence.  The single sentence of argument quoted by Emblaze, Opp. at 18, does not
3  dispute the meaning of "file" or "file descriptor" but only whether Emblaze's proposed
4  construction conflates encoding with compression, as is evident from the context Emblaze omits.
5  *See* Wald Dec., Ex. F at 15–16 (neither affirming nor contesting whether a descriptor is added to
6  a file, but arguing only that "encoding" does not refer to a step so defined because "encoding"
7  must include the act of compression).  Emblaze's contention that the meaning of "file" was a
8  "significant term" in the Apple case is belied by the entirety of the record in that case.
9        Emblaze's actions in the Apple claim construction process demonstrate the close working
10  relationship between its attorneys at Cozen and C&G.  Taken together with C&G's concessions
11  that they have coordinated with Cozen throughout this litigation and that Pavane appeared in this
12  action specifically to argue claim construction, Opp. at 6–7, it further emphasizes how C&G's
13  work for Emblaze has depended on, and is inseparable from, Cozen's flagrant ethical violations.
14        Finally, both Pavane's barebones account of the purported conflicts check performed
15  when he joined Cozen and the timeline of events raise reasonable doubts about his claim to have
16  been unaware of the Microsoft conflict.  Pavane says only that "[d]ue to a clerical error, no
17  conflict with Microsoft was identified when I joined Cozen in 2011."  Pavane Dec. ¶ 5.  This
18  explanation is so terse as to explain nothing.  It strains credulity to claim, as Mr. Pavane does, that
19  senior lawyers moving to a new firm, bringing with them contingent fee representations against
20  two high profile technology companies such as Microsoft and Apple, would not have those done
21  a thorough search as to at least those defendants.  In view of the sophistication of Cozen (a 500-
22  lawyer firm with 23 offices) and the significant nature of the Emblaze litigation that Pavane and
23  his team were bringing with them, it is remarkable that he did not ensure the conflicts check was
24  thorough and correct for the companion matter he had already been pressing against Microsoft
25  through correspondence for nearly a year and a half.  Indeed, this is the sort of issue that a lawyer
26  preparing to join a new firm might well raise in discussions with his prospective employer.  Most
27  troubling is the timeline.  Correspondence between Emblaze and Microsoft, which had
28  commenced in February 2010 and continued for a year beyond the filing of Emblaze's case

1  against Apple, ceased on June 27, 2011, four days before Pavane joined Cozen on July 1, 2011.
2  Pavane Dec. ¶8. While there might be an innocent explanation, this sequence of events raises
3  reasonable doubts about Emblaze's counsel's lack of knowledge, in light of their silence.

## IV.  ARGUMENT

### 1. Emblaze Has Failed to Rebut Microsoft's Prima Facie Case for Disqualification

Emblaze admits that Cozen violated its duty to Microsoft and that C&G participated in Cozen's violation—it is undisputed the two firms collaborated and coordinated their efforts for 17 months, from the inception of this case until March 2014, when Microsoft discovered the conflict shortly after Pavane appeared in this action. Emblaze's sole defense is its bare assertion that C&G did not know of Cozen's breach. Though it accuses Microsoft of suggesting a per se rule of disqualification for co-counsel, it is actually Emblaze that is proposing a per se rule of **non-**disqualification: No matter how serious conflicted counsel's breach of the duty of loyalty, and no matter how closely it collaborated with co-counsel, Emblaze contends that co-counsel cannot be disqualified if it simply declares that it was unaware of the conflict.

In fact, there is no such rule, but rather a flexible standard that allows the court to disqualify counsel where it is necessary to fully remedy the harm caused by the breach and protect public confidence in the integrity of the legal profession and the judicial process. The authority to disqualify an attorney "derives from the power inherent in every court to control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." *SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999) (quotations omitted). "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *Id.*

Here, the formal separateness between Cozen and C&G matters less than their close working relationship on this case. In *SpeeDee*, the Supreme Court of California, considering the circumstances under which disqualifying conflicts should be imputed to a firm that is "of

counsel" to another, held that "regardless of the frequency with which" "of counsel" attorney and firm "formally associated for cases, or the independence of the business aspects of their practices," imputation was appropriate because "their basic relationship was 'close, personal, continuous, and regular.'" *See Fund of Funds*, 567 F.2d at 235 ("[W]e have never believed that labels alone partner, clerk, co-counsel should control our decisions in so sensitive an area. . . . [A]n appearance of impropriety arises from this close association [between principal counsel and co-counsel]."). Seventeen months of close collaboration on this case between Cozen and C&G meet the criteria of close, personal, continuous and regular contact, since the Supreme Court has expressly held that this principle applies "regardless" of the frequency with which the two entities formally associated for cases or their independence from each other in a business sense.[2]

Emblaze tries to get around this standard (or hedge its bets should the Court be unpersuaded) by providing the scantest possible account of the collaboration between Cozen and C&G. It admits C&G "communicated" regularly with Cozen but declines to reveal how often, in what form, on what subjects, or for what purpose. Since, in contrast, Emblaze provides a detailed recitation of C&G's alleged work on the case, Wald Dec. ¶ 9, it did not choose to withhold details about Cozen's involvement out of concern for the attorney-client privilege. There is only one possible inference: The facts Emblaze is hiding are damaging to its position because Cozen has done a great deal of substantive legal work in this action. And indeed, the available evidence indicates that Cozen has played an enormous role. Martin Pavane, who originally developed the case, made a formal appearance to argue Markman (normally the role of lead counsel), and advanced the "file" claim construction in the Apple case that was crafted to target Microsoft (in 2012, when Microsoft was his client), along with Emblaze's other constructions and their rationales, which were ported into this case. Indeed, *Fund of Funds* appears involved *less*

---

[2] In California, the term "of counsel" "is generally used to describe a relationship between a law firm and another attorney who is neither a partner nor an associate (i.e., not a permanent employee), but is more than a "mere forwarder-receiver of legal business," in which the person so listed has a "close and personal relationship with the law firm" and is "available" to the firm "for consultation and advice." Calif. State Bar Standing Com. on Prof. Responsibility & Conduct, Formal Opn. No. 1986-88, 1986 WL 69068, at *2 (1986). Further, an "of counsel" is compensated on the basis of individual cases; and "does not in other respects or in other cases share the continuing obligations of the listing lawyer or law firm." *Id.*

1  collaboration between the two firms than occurred here. Although conflicted counsel (Morgan
2  Lewis) helped select the challenged co-counsel (Milgrim) in *Fund of Funds*, and both knew of the
3  conflict, their contacts relating to the case against Morgan's client consisted of review of a draft
4  complaint, provision of discovery documents, sharing of an expert, and observation of a witness
5  interview. 567 F.2d at 231-32. Here there was ongoing communication and guidance from filing
6  to *Markman*. Although *Fund of Funds* and *California Canners* both considered co-counsel's
7  knowledge as a factor, neither enunciated it as formal requirement, and neither does the *SpeeDee*
8  standard. In any case, Emblaze possesses definitive proof on that point but has withheld it.

9    Emblaze's refusal to provide key details of its counsel's activities illustrates why courts
10  have adopted burden-shifting to incentivize the party opposing disqualification to disgorge its
11  documentary evidence for *in camera* review. *E.g., Gonzalez v. Central Elec. Co-op, Inc.*, 2009
12  WL 3415235, at *1–*2 (D. Or. Oct. 15, 2009); *see In re Complex Asbestos Litigation*, 232 Cal.
13  App. 3d 572, 593–94 (1991) (noting differing views on whether disqualification should be
14  automatic when confidential information leakage possible, and adopting rebuttable presumption
15  of vicarious disqualification of firm through non-lawyer hires absent screening). Emblaze has not
16  challenged the applicability of this procedure, nor the proposition that a movant that has made a
17  prima facie case is entitled to presumptive disqualification. Nonetheless, it declined the invitation
18  to produce ***any*** documents for *in camera* review, but also did not object that it would suffer any
19  prejudice from doing so. Accordingly, it did not meet its burden. The rebutting party must
20  present "admissible evidence that, if believed, would support a finding that the challenged
21  attorney has not in fact been tainted." *Baker*, 893 F. Supp. at 1363. Even if believed, Emblaze's
22  attorneys' affidavits do not reveal the extent to which C&G was directed by Cozen or participated
23  in Cozen's breach. Despite this stonewalling, Emblaze effectively asks that the court presume
24  C&G's participation in and knowledge of Cozen's breach to be the ***minimum*** amount consistent
25  with the public facts. Such a finding would effectively adopt the per se rule Emblaze proposes—
26  that even extensive substantive collaboration between two firms for the entire pendency of a case
27  cannot overcome the formal separation between them for purposes of imputing one's breach of
28  the duty of loyalty to the other.

LEGAL120904594.4     - 10 -     MICROSOFT'S REPLY ISO MOTION TO DISQUALIFY COHEN & GRESSER CASE NO. 3:12-CV-05422 JST

1    In light of Emblaze's admission that its nominal lead counsel is not the architect of its
2    case, its implausible claim that the non-lawyer client has performed that role, and its unexplained
3    refusal to provide the information it alone possesses on Cozen's activities, its narrative is not
4    credible. If internal correspondence revealed that in fact C&G *did* know of Cozen's conflict, or
5    that Cozen knew of its own conflict (as it now claims it did not), or that Cozen referred C&G to
6    Emblaze (which Emblaze denies), the per se rule Emblaze proposes would shield these highly
7    relevant facts forever. As additional facts that would support vicarious disqualification might
8    well exist and Emblaze has withheld more detailed information, any doubts should be resolved
9    against it. Even on the record presently before the Court, it can be inferred that Cozen and
10   C&G's contacts were "close, personal, continuous, and regular," and accordingly disqualification
11   should be imputed from Cozen to C&G. *SpeeDee*, 20 Cal. 4th at 1155.

### 2. The Duty of Confidentiality Cases Disqualify Innocent Counsel by Imputation on a Similar Rationale to the Duty of Loyalty and With a Lesser Showing of Harm than in This Case

14   Emblaze devotes a considerable portion of its brief to distinguishing the cases Microsoft
15   cited on the ground that they involve breaches of the duty of confidentiality, arguing that imputed
16   breaches of the duty of loyalty require knowledge in all cases. Yet the considerations underlying
17   the duty of loyalty are not as different from those underlying the duty of confidentiality as
18   Emblaze contends, and courts have often disqualified counsel for *de minimis* breaches of the latter
19   duty without a finding of knowledge. Although the original concern animating the duty of
20   confidentiality is the protection of confidential client information, courts have come to recognize
21   that upholding the appearance of the bar's integrity justifies strict enforcement even where there
22   is no evidence or real danger that confidential information was transmitted. The Central District
23   noted in a duty-of-confidentiality case that "[m]otions to disqualify … are primarily about
24   'preserv[ing] public trust in the scrupulous administration of justice and the integrity of the bar.'"
25   *j2 Global*, 2012 WL 6618272 at *11, *quoting SpeeDee*, 20 Cal. 4th at 1145. This is very similar
26   to the rationale for enforcement of the duty of loyalty, namely, the threat to "the level of
27   confidence and trust in counsel that is one of the foundations of the professional relationship,"
28   and the "very practical effects on client morale and trust presented by the spectacle of an attorney

simultaneously representing adverse parties." *Flatt v. Superior Ct.*, 9 Cal. 4th 275, 285, 290 (1994).

In *j2 Global*, the Central District disqualified co-counsel that it found had no knowledge of the conflict. The confidential information imputed to the disqualified firm consisted of co-counsel's work seven years earlier on cases asserting three of the patents in suit against different defendants, where all three of the patents in suit had since undergone reexamination. 2012 WL 6618272 at *11. In *Baker v. Bridgestone/Firestone Inc.*, 893 F. Supp. 1349 (N.D. Ohio 1995), the evidence of actual "taint" was minimal. The Court found the challenged co-counsel had not "engaged knowingly in conduct violative of the letter or the spirit of the code." *Id.* at 1368. He had no recollection of a single conversation in which an attorney described experts he planned to call as witnesses, and had only picked up "drops" that "ha[d] no doubt long evaporated," likely about other witnesses, from another attorney who was himself disqualified by imputation. *Id.* at 1368–69. Despite the fact that challenged counsel was his clients' "attorney of choice" and the person most familiar with their damages case, he was nonetheless disqualified. *Id.* at 1369 (noting, however, that the clients had other counsel, which mitigated the harm). Perhaps the most extreme example is *Pound v. DeMera DeMera Cameron*, 135 Cal. App. 4th 70 (2005), in which a one-hour telephone call three years earlier created a presumption that an attorney had acquired confidential information, requiring disqualification of co-counsel who later associated him on the other side of the case, even though the court found no evidence that confidential information was shared.

Here, the extent of C&G's actual participation in Cozen's 17 months of active adversity to Microsoft is far greater in degree than the technical confidentiality breaches in the cases just discussed, and the evidence of intent is more damning. Each of those cases involved "innocent" co-counsel, in contrast to Emblaze's counsel, whose evasive and implausible declarations and refusal to inform the Court what precisely occurred cast doubt on their credibility. "[A]ny client" in Microsoft's position "would be entitled to wonder whether the law's sense of casuistry had gone seriously wrong" upon discovering that its own counsel had been litigating a major patent case against it for a year and a half. *Flatt*, 9 Cal. 4th at 290.

Emblaze relies heavily on the assertion that there is here only an appearance of impropriety, corresponding to Canon 9 of the former ABA Model Code of Professional Responsibility, which it argues California has rejected as an independent basis for disqualification. Opp. at 15. Although Microsoft did not cite Canon 9 nor rely on it as such, the cases Emblaze cites do not support its proposition. One of them expressly recognizes that "Canon 9 alone can be a sufficient ground for disqualification" in extreme circumstances—which are in fact met in this case: "when the alleged impropriety is clear, affects the public view of the judicial system or the integrity of the court, and is serious enough to outweigh the parties' interests in counsel of their own choice." *Optyl Eyewear Fashion Int'l Corp. v. Style Co.*, 760 F.2d 1045, 1049 (9th Cir. 1985). More importantly, both cases lacked an underlying breach on another ground, but only the unproven possibility of a violation. *Id.* (no showing counsel for opposing party would need to be called as witness); *Oaks Mgmt. Corp. v. Superior Ct.*, 145 Cal. App. 4th 453, 470–71 (Cal. Ct. App. 2006) (no breach because no actual exposure to confidential information and movant had produced more pertinent information of the same type in discovery). By contrast, here there is an undisputed breach of the duty of loyalty, as in *Fund of Funds*—the question is whether imputation of the conflict is warranted. Notably, in *Higdon v. Superior Court,* 227 Cal. App. 3d 1667, 1680 (1991), the Court of Appeal instructed the trial court to disqualify an entire law firm unless it was found to have instituted screening procedures before hiring a judge who had formerly worked on the case. No confidential information was at risk and no conflict was alleged; disqualification would be based solely on the need to "alleviate" "the parties' and the public's perception of impropriety." *Id.* at 1680.

Weighed against the longstanding collaboration between Microsoft's counsel and C&G, the harm to Emblaze is slight. Emblaze's argument that it would be unfair to disqualify C&G because it would impose extra expense on Emblaze, turns the equities on their head. Opp. at 21. The expense of bringing new counsel up to speed is precisely the expense Emblaze would have incurred if it had been unable to have Microsoft's counsel prepare and guide C&G, from it which

surely reaped substantial savings.³ Having to hire new counsel would simply reverse the advantage Emblaze gained from Cozen's breach of its duty to Microsoft. Certainly Microsoft, the innocent victim of Cozen's breach, should not bear the cost. Moreover, if Emblaze's remarkable assertion that it is the true architect of the case is true, then disqualifying C&G would inflict negligible prejudice to Emblaze, especially in light of Cozen's undisputedly essential contributions. The case still has not reached claim construction (while briefing is complete and need not be redrafted). And contrary to Emblaze's misplaced accusation that Microsoft is seeking delay, it is Emblaze that has previously requested a long-term stay of this case,⁴ a request Microsoft declined. Finally, if there were some measurable harm to Emblaze, it could seek a remedy against Cozen, which failed to uncover a disqualifying conflict for 17 months.

Emblaze argues that disqualification should not punish but serve "a deterrent policy," Opp. at 21, yet imposing no penalty will achieve no deterrence. Quite the contrary. It will punish Microsoft and reward the wrongdoers in this scenario. Microsoft has been harmed by its counsel's betrayal, which has resulted in its unknowing support of a firm working against its interests. C&G, by contrast, has obtained the work product of Microsoft's lawyers for free, mitigated its contingent-fee exposure to this case by sharing costs with Cozen, and obtained claim constructions that strengthen its posture against Microsoft—claim constructions fashioned in advance by the Emblaze *Apple* team, approved by the Judge Grewal (in the case of "file," without

---

³ Emblaze's argument that the forfeiture of work product is at issue here is a red herring. Opp. at 21. Microsoft has not asked that work product be destroyed but only that C&G be disqualified based on its participation in Cozen's breach, consistent with the standard in *Fund of Funds* and *California Canners*. Moreover, Emblaze's argument based on *Actel Corp. v. Quicklogic Corp.*, C 94-20050 JW, 1996 WL 297045, at *12 (N.D. Cal. May 29, 1996) is inapposite because there the question of whether to bar work product turned on whether the work product involved tainted information. In this case, any work done by Cozen and exploited by Emblaze or C&G is "tainted" by virtue of having been done by Microsoft's counsel. *See Fund of Funds*, 567 F.2d at 234 ("that the firm of Morgan Lewis would have been disqualified from suing Andersen because it was Andersen's counsel, is of little comfort to Andersen which now finds itself embroiled in litigation resulting from Morgan Lewis's extensive investigation of the natural resource assets scheme").

⁴ On July 1, 2013, Emblaze's counsel, Ms. Wald, asked Mr. Wesenberg if Microsoft would agree to a stipulated stay to last until a jury verdict was rendered in the Apple case (at the time, the *Apple* trial was scheduled to begin on March 24, 2014), or of any shorter duration to which Microsoft would consent. Emblaze repeated this stay request to Microsoft's in-house counsel, Ms. Fu, on two occasions later in July.

LEGAL120904594.4 - 14 - MICROSOFT'S REPLY ISO MOTION TO DISQUALIFY COHEN & GRESSER
CASE NO. 3:12-CV-05422 JST

being fully litigated). If C&G is not disqualified, Emblaze will suffer no penalty for an admitted and continuing ethical breach. (If disqualified, and innocent, C&G will have a remedy against Cozen.) Cozen has consulted with C&G to the mutual advantage of both firms, and also suffers no penalty despite its clear breach of the duty of loyalty. Finally, Emblaze has benefited by coordinating its strategies in the respective cases, mitigating the burden of each case through the efficiencies of collaboration, and saving money by avoiding (at least) duplicative hard cost expenditures. It too will walk away without accountability if this motion is denied.

The salient inference from this harm/benefit analysis is that absent disqualification, the most innocent party, Microsoft, suffers the greatest harm and is left without recourse, while the most clearly culpable wrongdoers benefit with no adverse consequences. C&G and Emblaze, both direct and substantial beneficiaries of this wrong, assert that the proper solution is for the status quo to continue. This cannot be fair, just or proper. If a law firm can litigate against its own client for a year and a half and then, once found out, withdraw with no adverse consequences based on co-counsel's mere assertion of ignorance, it will send a dangerous signal to clients about the state of legal ethics and will perversely encourage lawyers to minimize disclosures of potential conflicts to co-counsel and their own clients. This cannot be the proper outcome. C&G should be disqualified.

## V. CONCLUSION

For the foregoing reasons and based on its opening brief in support of this motion and all the supporting papers on file, Microsoft respectfully requests that Cohen & Gresser be disqualified from further representation of Emblaze in this action.

DATED: May 14, 2014              **PERKINS COIE LLP**

By:  */s/ Eric L. Wesenberg*
     Eric L. Wesenberg
     EWesenberg@perkinscoie.com

Attorneys for Defendant
MICROSOFT CORPORATION

LEGAL120904594.4 — - 15 -  MICROSOFT'S REPLY ISO MOTION TO DISQUALIFY COHEN & GRESSER
CASE NO. 3:12-CV-05422 JST

# CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/EMF registrants for this case.

*/s/ Eric L. Wesenberg*
Eric L. Wesenberg
