Eric L. Wesenberg, (SBN 139696)
EWesenberg@perkinscoie.com
Christopher L. Kelley (SBN 166608)
CKelley@perkinscoie.com
Kenneth J. Halpern (SBN 187663)
KHalpern@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350

Antoine M. McNamara (SBN 261980)
AMcNamara@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101
Telephone: 206.359.8000
Facsimile: 206.359.9000

Isabella E. Fu (SBN 154677)
Associate General Counsel
Microsoft Corporation
One Microsoft Way
Redmond, WA 98052
Telephone: 425.882.8080
Facsimile: 425.936.7329

*Counsel for Defendant
Microsoft Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EMBLAZE, LTD., <br><br>　　　　　Plaintiff, <br><br>　　v. <br><br>MICROSOFT CORPORATION, <br><br>　　　　　Defendant. | Case No. 3:12-cv-5422-JST <br><br>**DEFENDANT MICROSOFT CORPORATION'S MOTION FOR LEAVE TO REQUEST CLARIFICATION OR RECONSIDERATION OF A CLAIM CONSTRUCTION** |

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendant Microsoft Corporation ("Microsoft") moves this Court for an order granting Microsoft leave to file a Motion for Clarification or Reconsideration of A Claim Construction regarding the term "upload rate," which has not previously been construed, but which appears in a longer claim phrase that was construed in this Court's Claim Construction Order, "uploading the sequence to a server at an upload rate generally equal to the data rate of the stream." Dkt. 93 at 11. The motion is supported by this Notice, the Memorandum of Points and Authorities, the Declaration and Attachment filed herewith, the Proposed Orders filed herewith, and any oral argument or documentary evidence that may be presented at any hearing on this motion.

**STATEMENT OF RELIEF REQUESTED**

Microsoft respectfully requests that the Court grant it leave to file Defendant Microsoft Corporation's Motion for Clarification or Reconsideration of a Claim Construction, attached hereto as Attachment A.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Microsoft seeks leave to request clarification or reconsideration of the Court's construction of the claim phrase "uploading the sequence to a server at an upload rate generally equal to the data rate of the stream." The Court's current construction does not resolve a critical dispute between the parties regarding the meaning of the term "upload rate." Microsoft contends that the claimed "upload rate" of the sequence of files must be construed so that it can fluctuate based on the available bandwidth, and that the upload rate for any given file in the sequence is the amount of data in that file (i.e., the amount uploaded) divided by the time it takes to upload the data in that particular file (i.e., the upload duration). Emblaze, in contrast, has now taken the position that "upload rate" relates to the sequence of files being uploaded. This new conception necessarily yields a *single, static average* equal to the amount of data in the entire sequence of files divided by the duration of the sequence (including the periods of inactivity between uploads

1 — i.e., "wait times"—when no data is being uploaded).  The reasoning in the Court's Claim Construction Order —where the Court notes that the patent "describes the upload rate as fluctuating depending on the available bandwidth," Dkt. No. 93 at 11—strongly supports Microsoft's position, but the Court's construction leaves the issue unresolved because it repeats the term "upload rate" without defining it.  Unless the jury is given clear guidance as to the meaning of "upload rate" and how that rate should be computed, it will not know how to compare the "upload rate" to "the data rate of the stream" to ensure that these parameters remain "generally equal," as the asserted claims require.

This same ambiguity regarding the meaning of "upload rate" has proven problematic in the *Emblaze v. Apple* case, No. 5:11-cv-01079-PSG (N.D. Cal.), where the same patent is at issue. In that case, in the midst of trial this past June-July, Emblaze itself sought clarification of the exact construction that this Court has endorsed in this case, and asked Judge Grewal to specifically direct the jury that the "upload rate" should be computed to include "the wait time between the transmission of the individuals files in the sequence." *Emblaze v. Apple*, Dkt. 572 at 1.  Accordingly, Emblaze has conceded that "upload rate" needs construction and that its meaning is an issue for the Court, not the jury, to decide.  In this case, we should not wait until the eve of trial to resolve this important issue.  Accordingly, Microsoft asks leave to seek clarification so that the issue can be decided in a timely manner.

Since the Court did not previously rule on the meaning of "upload rate" or how it should be computed, and its meaning is indisputably left open by the construction of the larger claim phrase that contains it, Microsoft believes this motion is properly considered a motion for clarification of the Court's prior construction.  In an abundance of caution, however, should the Court interpret this as a motion for reconsideration, Microsoft is alternatively seeking leave of the Court to move for reconsideration pursuant to Civil Local Rule 7-9.

**II. CLARIFICATION IS NECESSARY BECAUSE THE PARTIES HAVE A CRITICAL DISPUTE ABOUT THE MEANING OF "UPLOAD RATE" AS IT IS USED IN THE CLAIMS**

The Federal Circuit has made clear that district courts are free, and even encouraged, to revise or supplement their claim constructions as needed at any phase of the case.  "District courts

-2-　MICROSOFT'S MOTION FOR LEAVE TO REQUEST CLARIFICATION
CASE NO. 3:12-CV-5422 JST

1  may engage in a rolling claim construction, in which the court revisits and alters its interpretation
2  of the claim terms as its understanding of the technology evolves." *Jack Guttman, Inc. v.*
3  *Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002); *Conoco, Inc. v. Energy & Envtl,*
4  *Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006). Consistent with this invitation, district courts
5  properly issue orders clarifying their initial claim constructions where further construction would
6  eliminate an ambiguity or inconsistency in the existing construction or enable resolution of an
7  issue that the construction did not address. *See, e.g., Interwoven, Inc. v. Vertical Computer Sys.*,
8  2013 WL 3786633, at *4 (N.D. Cal., July 18. 2013); *Aristocrat Techs. v. Int'l Game Tech.*,
9  2009 WL 1702055, at *1–2 (N.D. Cal., June 17, 2009; *Sportvision, Inc. v. SportsMEDIA Tech.*
10 *Corp.*, 2006 WL 6212495, *1–2 (N.D. Cal., July 18, 2006).

### A. The Parties Have Competing Interpretations of "Upload Rate"

As described in more detail in Microsoft's attached Motion for Clarification and/or Reconsideration of Claim Construction (Attachment A to this motion), the parties dispute what the claim term "upload rate" covers and how it is computed. The term "upload rate" denotes a ratio of an amount of data uploaded over a certain period of time, but the meaning of the term changes dramatically depending on the interval of time over which the rate is determined.

Microsoft contends that the upload rate for each file in the sequence must be calculated based on the amount of data in the file and the *time it takes to actually upload the data in that file* (described as the "upload time" in the specification). *See* Wesenberg Decl., Ex. A ('473 patent, hereinafter, "Ex. A"), at 11:67–12:14. Accordingly, Microsoft's attached motion asks that "upload rate" be construed as follows:

| Term | Proposed Construction |
|---|---|
| "upload rate" | "for each file in the sequence, the amount of data in the file divided by the duration of active upload of that data" |

Under this definition, the upload rate for the sequence will fluctuate based on the available bandwidth — the greater the available bandwidth, the more data that can be uploaded in a given amount of time; hence, the upload rate at that point in the sequence will be higher. *Id.* at 11:65-

12:4, 12:13-17.  The patent teaches that the transmitting computer should monitor the amount of time that each file takes to upload and make certain adjustments responsive to that "upload time" measurement.  *See* Ex. A ('473 patent), at 11:53–12:17; 12:59–13:22.  For example, the patent describes adjusting the compression ratio (which changes the "data rate of the sequence" moving forward) to make sure that the "upload time" measurements are neither too short, *id.* at 12:15-16, nor too long, *id.* at 13:7–15.  If "upload rate" fluctuates based on the available bandwidth, as Microsoft proposes, the only way it can remain "generally equal" to the data rate of the stream is if the system actively manages either the data rate, the upload rate, or both to ensure that the broadcast neither stalls nor wastes available bandwidth for uploading the sequence.  This comports with this Court's explicit findings that the patent "describes the upload rate as fluctuating depending on the available bandwidth" and the Court's quotations from the specification describing active management of upload rate and/or the data rate.  *See* Claim Construction Order, Dkt. 93 at 11, quoting Ex. A ('473 patent) at 3:43–45 ("Preferably, uploading the sequence includes comparing the upload rate to the data rate *and adjusting the upload rate responsive to the comparison*.") (emphasis added), *and id.* at 12:13–17 ("[I]f it is determined that the upload time for file 42 . . . is substantially shorter than duration $T_1$, the duration of subsequent files may be extended, *and/or the compression ratio may be decreased, so as to take better advantage of the available bandwidth*.") (emphasis added).[1]

In contrast, Emblaze appears now to contend that the upload rate of the sequence corresponds to just a single overall average — the amount of data in the entire sequence divided by the duration of the sequence.  *See Emblaze v. Apple*, Dkt. 388 at 8:12–24.  Under Emblaze's definition, the upload rate cannot fluctuate over the course of the broadcast; indeed, the upload rate cannot even be measured until broadcast is complete.  Moreover, because Emblaze contends that the periods of inactivity between file uploads should be included in the calculation, the "upload rate" could, by definition, *never* exceed the data rate of the stream.  If the available bandwidth were to double, the actual file uploads would go twice as fast, but the "upload rate" (as

---

[1] Note that *decreasing* the compression ratio will by definition *increase* the data rate of the stream—less compression means more data per unit of time.

-4-  MICROSOFT'S MOTION FOR LEAVE TO REQUEST CLARIFICATION
CASE NO. 3:12-CV-5422 JST

construed by Emblaze) would stay exactly the same. This is a dramatically different understanding of the term "upload rate" than what is proposed by Microsoft, described in the patent, and clearly implied by this Court's Claim Construction Order.

This dispute between the parties is significant because Emblaze has never alleged that any of the accused products in this case take active steps to keep the "upload rate" and "data rate of the stream" "generally equal" over the course of the broadcast. Instead, Emblaze's position is that *any* successful real-time broadcast must *necessarily* satisfy this limitation, rendering the upload rate-matching limitation redundant with the "real time broadcasting limitation" and effectively reading it out of the claims.

### B. The Dispute Around this Ambiguity Must be Resolved by the Court, not the Jury

Emblaze has acknowledged that the Court's current construction would leave to the jury the question of whether to include wait time when calculating the upload rate. When it first proposed the identical construction to Judge Grewal in the *Apple* case, Emblaze argued that Apple would be free to argue non-infringement based on the "upload rate" not including the wait time between files. *See Emblaze v. Apple*, Dkt. 181 at 137:3-6 ("And, again, infringement argument? Yes, they can make that infringement argument that because, for example, you can upload a segment in a tenth of a second and wait another nine-tenths of a second before the next slice, they can make that argument."). Emblaze quoted these same statements in its own briefing to this Court when urging deference to Judge Grewal's construction, which the Court adopted. Dkt. 54 at 10 n.15.

A fundamental definitional dispute about claim scope may not properly be left for the jury to resolve. The Court, not the jury, bears responsibility for determining the scope and meaning of patent claims. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of the[] claims, the court, not the jury, must resolve that dispute.") (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (holding that claim construction is a matter of law)).

-5-    MICROSOFT'S MOTION FOR LEAVE TO REQUEST CLARIFICATION
CASE NO. 3:12-CV-5422 JST

construed by Emblaze) would stay exactly the same. This is a dramatically different understanding of the term "upload rate" than what is proposed by Microsoft, described in the patent, and clearly implied by this Court's Claim Construction Order.

This dispute between the parties is significant because Emblaze has never alleged that any of the accused products in this case take active steps to keep the "upload rate" and "data rate of the stream" "generally equal" over the course of the broadcast. Instead, Emblaze's position is that *any* successful real-time broadcast must *necessarily* satisfy this limitation, rendering the upload rate-matching limitation redundant with the "real time broadcasting limitation" and effectively reading it out of the claims.

### B. The Dispute Around this Ambiguity Must be Resolved by the Court, not the Jury

Emblaze has acknowledged that the Court's current construction would leave to the jury the question of whether to include wait time when calculating the upload rate. When it first proposed the identical construction to Judge Grewal in the *Apple* case, Emblaze argued that Apple would be free to argue non-infringement based on the "upload rate" not including the wait time between files. *See Emblaze v. Apple*, Dkt. 181 at 137:3-6 ("And, again, infringement argument? Yes, they can make that infringement argument that because, for example, you can upload a segment in a tenth of a second and wait another nine-tenths of a second before the next slice, they can make that argument."). Emblaze quoted these same statements in its own briefing to this Court when urging deference to Judge Grewal's construction, which the Court adopted. Dkt. 54 at 10 n.15.

A fundamental definitional dispute about claim scope may not properly be left for the jury to resolve. The Court, not the jury, bears responsibility for determining the scope and meaning of patent claims. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of the[] claims, the court, not the jury, must resolve that dispute.") (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (holding that claim construction is a matter of law)).

1  Indeed, without clarification of the "upload rate" term, the claims would be indefinite.
2  Subsequent to claim construction briefing in this case, the Supreme Court tightened the criteria
3  for claim definiteness, holding that a person of ordinary skill in the art reading the patent must be
4  able to determine the scope of the invention with "reasonable certainty." *Nautilus, Inc. v. Biosig*
5  *Instruments, Inc*, 134 S. Ct. 2120, 2124 (2014). If the claim language is such that a jury were free
6  to make a non-infringement determination by choosing without guidance among various possible
7  interpretations of "upload rate," one of skill in the art could not determine in advance with
8  "reasonable certainty" whether particular acts or products infringed the claims.[2]

9  In the *Apple* case, Judge Grewal eventually did resolve the "wait time" dispute, albeit in a
10 manner that conflicts with this Court's reasoning in its Claim Construction Order. At the start of
11 trial in that case, Emblaze asked that "upload rate" be separately construed to mean "the rate at
12 which a sequence of files is transmitted to the server, *including the wait time* between the
13 transmission of the individual files in the sequence." *Emblaze v. Apple*, Dkt. 572 at 1 (emphasis
14 added). Judge Grewal adopted this construction and, at Emblaze's request, included it in the
15 instructions to the jury and his post-verdict order setting forth his claim construction reasoning.
16 *Emblaze v. Apple*, Dkt. 617 at 1989, 2006-07; Dkt. 653 at 7; *see* Dkt. 424 at 11-14. As described
17 in more detail in the attached Motion for Clarification or Reconsideration, Judge Grewal's
18 reasoning for his supplemental construction conflicts with this Court's finding that the "upload
19 rate . . . fluctuat[es] depending on the available bandwidth." However, the fact that both Emblaze
20 and Judge Grewal felt that such a clarification was necessary in the *Apple* case underscores that
21 this is an issue for the Court, not the jury, to decide.

22 In the present case, the dispute should be resolved now, not at the eve of trial. As the
23 construction stands, with their competing interpretations of "upload rate," the parties remain in a

---

[2] Note that Microsoft has also alleged in its invalidity contentions that the term "generally equal" renders the claims indefinite, as neither the claims nor the specification explains how close the "upload rate" must be to the "data rate of the stream" in order for the two variables to be considered "generally equal" to one another. That is a different issue than the more fundamental question raised here regarding the meaning of the term "upload rate." Microsoft continues to reserve the right to challenge the validity of the claims on these grounds (and on any other ground raised in its invalidity contentions) at the appropriate time.

1  state of uncertainty regarding what Emblaze must prove to demonstrate infringement and,
2  therefore, regarding the evidence on which to focus their discovery efforts.

### III. IF THE ATTACHED MOTION IS CONSIDERED A MOTION FOR RECONSIDERATION, LEAVE SHOULD NONETHELESS BE GRANTED UNDER CIVIL LOCAL RULE 7-9

As described above, although the parties raised the "wait time" issue in their briefing and at the claim construction hearing, the Court did not resolve that issue in its claim construction order. Because Microsoft is not rearguing an issue on which the Court previously ruled, Microsoft believes the attached motion should be considered a request for clarification of the Court's construction, and filed on the Court's docket as such for the reasons described above.

However, this motion for leave should be granted even if the Court were to treat the attached motion as a request for reconsideration. First, Microsoft has exercised reasonable diligence in bringing this matter to the Court's attention, especially given that little has happened in the intervening period, and the clarification sought will not prejudice Emblaze.[3] Civ. L.R. 7-9(b). It has been slightly over six months since the Court issued its Claim Construction Order on July 29, 2014, and in this time, the case has seen only the admission of new counsel for Emblaze, the issuance of a scheduling order, *see* Dkt. 105, and one deposition. There can be no claim of surprise as Emblaze itself sought clarification of the identical issue presented here and thus knew of the ambiguity. Further construction of the term "upload rate" will not plausibly cause prejudice.

Second, the Court's silence regarding the "wait time" issue, even though the parties raised it, demonstrates that material facts or dispositive legal arguments were not considered and decided. Civ. L.R. 7-9(b)(3). In addition, the Court appears to have misunderstood Microsoft's position as precluding the upload rate from "fluctuating depending on the available bandwidth." Dkt. 93 at 11. Microsoft has always taken the position that the upload rate will fluctuate with the

---

[3] In light of the Federal Circuit's invitation to district courts to engage in "rolling construction" as the parties' and the court's understanding of the technology evolves, *Jack Guttman*, 302 F.3d at 1361, and the character of claim construction as a pure issue of law exclusively for the court, it seems illogical to apply the diligence criterion for reconsideration with its full force to requests to reconsider claim construction. *See, e.g., Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1381–82 (Fed. Cir. 2003) (holding that the district court did not err in amending its claim construction during oral arguments for pretrial motions nearly two years after the original construction)

1 available bandwidth, as set forth above and in the attached motion paper. Indeed, it is Emblaze's position that contradicts this teaching in the patent specification, as it now effectively contends that the "upload rate" is a single, static average that cannot be determined until the entire sequence has been uploaded.

Finally, new material facts have emerged since the claim construction briefing, argument, and claim construction order in this case. Civ. L.R. 7-9(b)(1)-(2). Specifically, in the *Apple* case, Emblaze requested that Judge Grewal formally clarify his construction to eliminate the ambiguity regarding the meaning of "upload rate." *Emblaze v. Apple*, Dkt. 617 at 1989, 2006-07; Dkt. 653 at 7 (analysis and formal revision to construction issued on October 9, 2014); *see* Dkt. 424 at 11-14. This admission demonstrates the unresolved question inherent in the current construction and provides more than sufficient grounds for the Court to reconsider the "wait time" issue in the context of this case.

## IV. CONCLUSION

For the foregoing reasons, Microsoft respectfully requests that the Court grant leave to seek clarification or reconsideration of its Claim Construction Order, Dkt. 93, as set forth in the accompanying motion. *See* Attachment A.

DATED: February 12, 2015             **PERKINS COIE LLP**

By: ___*/s/ Eric L. Wesenberg*___
    Eric L. Wesenberg
    EWesenberg@perkinscoie.com

*Counsel for Defendant*
*Microsoft Corporation*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of this document was served upon counsel of record by electronic mail on February 12, 2015.

              */s/ Eric L. Wesenberg*
               Eric L. Wesenberg

MICROSOFT'S MOTION FOR LEAVE TO REQUEST CLARIFICATION
CASE NO. 3:12-CV-5422 JST