Scott R. Raber (SBN 194924)
scott.raber@rimonlaw.com
RIMON P.C.
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Phone: 415.683.5472
Facsimile: 800.930.7271

Karen H. Bromberg (*admitted pro hac vice*)
kbromberg@cohengresser.com
Alexandra Wald (*admitted pro hac vice*)
awald@cohengresser.com
Francisco A. Villegas (SBN 206997)
fvillegas@cohengresser.com
Damir Cefo (*admitted pro hac vice*)
dcefo@cohengresser.com

COHEN & GRESSER LLP
800 Third Avenue, 21st Floor
New York, NY 10022
Phone: 212.957.7600
Facsimile: 212.957.4514

*Attorneys for Plaintiff Emblaze Ltd.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EMBLAZE LTD., <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION, <br><br> Defendant. | Case No. 3:12 cv 05422-JST <br><br> **EMBLAZE'S OPPOSITION TO MICROSOFT'S MOTION FOR LEAVE TO REQUEST CLARIFICATION OR RECONSIDERATION OF THE COURT'S CLAIM CONSTRUCTION ORDER** |

## I. INTRODUCTION

Emblaze respectfully writes in opposition to Microsoft Corporation's ("Microsoft") motion for leave to request clarification or reconsideration of the Court's construction of the claim phrase "uploading the sequence to a server at an upload rate generally equal to the data rate of the stream" ("Microsoft's Motion," D.E. 111). Microsoft's Motion should be denied, at least because (a) it improperly re-argues two matters ("wait time" and "uploading of individual files") that have already been briefed, argued, and fully resolved by this Court, and (b) fails to satisfy the standards under Local Rule 7-9(b).[1]

## II. "WAIT TIME" HAS ALREADY BEEN FULLY CONSIDERED.

Microsoft requests that this Court again construe the already construed Term No. 11 "uploading the *sequence* to a server at an *upload rate* generally equal to the data rate of the stream" (emphasis added), on the basis that the "wait time" should be excluded. Microsoft's position on the "wait time" issue is nothing new and has already been considered by this Court. The parties' claim constructions were already addressed by this Court, after the term selection and submission to the Court[2], lengthy briefing, a *prior* Supplemental Claim Construction brief filed by Microsoft, a tutorial, a several-hour *Markman* hearing, and a 14-page claim construction order. During those proceedings, Microsoft and Emblaze made the very same arguments that Microsoft now mischaracterizes as "new."

**Microsoft addressed the "wait time" in its claim construction papers**. For example, in its Responsive Claim Construction Brief, Microsoft argued that it "believes that 'upload rate' should be interpreted as the actual rate at which data is uploaded, *measured during the*

---

[1] Emblaze recognizes that Civ. L.R. 7-9(d) does not require a party to respond to a motion for leave for reconsideration. Should this Court grant Microsoft's Motion for Leave to File its Motion for Reconsideration, or determine that Microsoft's Motion should be treated as a motion for clarification, Emblaze respectfully asks the Court to set the time in which an appropriate opposition to the merits of the underlying motion could be filed by Emblaze.

[2] In their Joint Claim Construction and Prehearing Statement Pursuant to Patent Local Rule 4-3, the parties proposed 17 terms and identified the 10 most significant terms for claim construction. The parties did not ask for any additional terms under Rule 7-11.

Case No. 3:12-cv-5422-JST  1
EMBLAZE'S OPPOSITION TO MICROSOFT'S MOTION FOR LEAVE TO REQUEST
CLARIFICATION OR RECONSIDERATION OF THE COURT'S CLAIM
CONSTRUCTION ORDER

*period while data is being uploaded.*" Microsoft's Responsive Claim Constriction Brief, at 21:15-16 (D.E. 53, Sept. 25, 2013) (emphasis in original). Microsoft even provided a hypothetical to demonstrate this "wait time" argument:

> To understand the difference between [the parties'] position, consider a hypothetical encoder that generates an encoded data stream at a rate of 30 Kbytes/sec and slices this stream every 2 seconds. The encoder then uploads these 60 Kbyte slices to the server across an Internet link at an upload rate of 600 Kbytes/sec. This takes 0.1 second, so for the following 1.9 seconds (until the next slice is generated) **there is no data transmission; the link is idle for 95% of the slice transmission period**. . . . Emblaze wants to calculate the upload rate as a time-weighted average of the 600 Kbytes/sec rate used during the 0.1 seconds data was actually being sent and 0 Kbytes/sec for the 1.9 seconds **when there was no data transmission** . . . .

*Id*. at 21:16-17:4 (emphasis added); *see also* Claim Construction Hearing Tr., at 109:1-110:1 (June 11, 2014) (providing a similar hypothetical). Indeed, during the original claim construction briefing, Microsoft argued that this was a critical point: "the claim construction dispute between the parties turns on how the 'upload rate' is to be measured to determine if it is 'generally equal' to the data rate of the encoded media stream." Responsive Claim Construction Brief at 21:13-14 (D.E. 53, Sept. 25, 2013).

Even at the Claim Construction Hearing, counsel for Microsoft addressed the issue of "wait time" in a way that would exclude it from the definition of "upload rate." Claim Construction Hearing Tr., at 108:1-5 ("[I]f my slice is getting transmitted up really fast, and I still got all this what they call 'wait time,' I know I'm not taking advantage of bandwidth.").

**The Court instead adopted Emblaze's well-documented construction**. This Court clearly addressed (and did not adopt) Microsoft's position in its Claim Construction Order:

> Specifically, this [Microsoft's] construction requires that the upload rate be generally equal to the stream's data rate "at all points in time," purportedly in order to "capture the idea that the data rate of the encoded stream must track the actual upload rate that was achieved *during the actual upload transfer*." [*i.e.,* excluding any "wait time"] Resp. Br. at 23-24. **The relevant claim language is not limited to this concept.**

Claim Construction Order, at 11:18-21 (D.E. 93, Jul. 29, 2014) (emphasis added).

Instead, the Court adopted Emblaze's proposed construction, which (a) reflects Emblaze's extensively documented position about "wait times," and (b) was presented to the Court on at least three separate occasions. *First*, it was stated by Emblaze's counsel during the claim construction hearing nearly eight months ago on June 11, 2014:

> The dispute in this case over this term is whether or not the rates must be generally equal at all points in time, which is Microsoft's position. . . . One of the issues, **one of the reasons why Microsoft is trying to say that the rates must match at all points in time *is to exclude the wait time of the upload***. The term talks about the upload rate of the sequence, not of the individual files. And as such, the wait time is included in this upload. . . .
>
> Even though the data in a single file may take only a fraction of the slice allotted to upload, the encoder must wait the balance of the wait time before uploading a second file. Because the sequence as a whole is not uploaded until the upload of the last of the files, the wait time in between the files must be included [(quoting the Apple Decision, at *6)].

Claim Construction Hearing Tr., at 103:22-104:14 (emphasis added).

*Second*, prior to the Claim Construction Hearing, and pursuant to Civil L.R. 7-3(d)(2), Emblaze submitted a Statement of Recent Decision, notifying the Court of *Emblaze Ltd. v. Apple, Inc.*, Case No. 5:11-CV-01079-PSG, 2014 WL 1652226, *1 (N.D. Cal. April 24, 2014) ("Apple Decision") (D.E. 82, June 2, 2014). The Apple Decision included a lengthy analysis regarding the term "upload rate," where Judge Grewal ultimately determined that the term "***should be read to include wait time*** between the transmission of files within a sequence." Apple Decision, at *7 (emphasis added). *See also id.* at *6 (noting that patent language supports inclusion of "wait time" because "[t]he upload rate thus must be based on the transmission of the files—plural—to the server and not transmission of a single file.").

*Third*, in its claim construction briefing, Emblaze pointed out that:

> The fact that a hypothetically large bandwidth could upload a 2-second slice of video in one-tenth of a second is immaterial, as said bandwidth will still only be able to upload one 2-second slice of live video every two seconds, as it is generated.

1 Emblaze Ltd.'s Reply Claim Construction Brief, at 9:25-27.  These examples confirm that the

2 "wait time" issue has already been presented squarely to this Court, and that this Court has

3 ruled on them.

4 In light of this history, Microsoft's present attempt to characterize Emblaze's long-

5 standing and well-documented position (that the "upload rate" includes "wait times") as "a

6 new conception" (*id.* at 1:26-2:1) is peculiar.  Emblaze's position is, and has been, that "wait

7 time" is part of the "upload rate" of the sequence.

### III. "UPLOAD RATE" IS FOR THE SEQUENCE, NOT EACH FILE

Microsoft also contends that the claimed "upload rate" should be an upload rate of each individual file, and not of the sequence.  *See* Microsoft's Motion, at 3 ("*for each file in the sequence*, the amount of data *in the file* divided by the duration of *active upload* of that data") (emphasis added).  The purported basis for this "new" construction is to allow the upload rate to "fluctuate."  Microsoft even suggests that the "upload rate" for the sequence, as Emblaze advanced and the Court adopted, somehow "yields a *single, static average*" rate for the entire broadcast (Microsoft's "static average rate" issue).  Just like its "wait time" issue, this "new" issue that Microsoft advances is misplaced, and represents nothing but a repackaging of arguments it has already made.

**Upload Rate is for the sequence, not each file**.  As the claim construction record explains, the construed term is directed to the upload rate of the *sequence*, not of each individual file (Term 11 - "uploading the *sequence* . . . at an upload rate. . .").  *See*, *e.g.*, Apple Decision, at *6 ("According to Apple, 'upload rate' must constitute the ratio of data uploaded to upload time, exclusive of the wait time between file uploads.  But this construction overlooks the claims' specific reference to the upload rate of the sequence, not the upload rate of a single file within the sequence.").

Indeed, this Court explicitly rejected Microsoft's language "at all points in time," which the Court acknowledged attempted to convey that data rate "must track the actual

1 | upload rate that was achieved *during the actual upload transfer* [of the individual files]."
2 | Claim Construction Order, at 11:17-21.[3]

When the Court adopted Emblaze's proposed construction of Term 11, the Court elaborated that it did so "because it is fully in line with the specification's description of 'uploading'" and cited the '473 patent at col. 3 ll. 43-45 ("Preferably, uploading the *sequence* includes comparing the upload rate to the data rate [of the stream]. . . ."). Claim Construction Order, at 11:13-16 (D.E. 93, Jul. 29, 2014) (emphasis added). Thus, the Court has decided, and there is no dispute.

**Microsoft already tried its "fluctuation" and "average rate" argument, and failed**.

If Microsoft's basis for the motion (that the upload rate refers to *individual files* to enable "fluctuation") should sound familiar, it is because Microsoft already presented it during claim construction briefing. Microsoft argued that "the upload rate [of the individual files] 'will fluctuate' based on the vagaries of the data connection. . . ." Microsoft's Responsive Claim Construction Brief at 22:15-17 (D.E. 53, Sept. 25, 2013) (emphasis added).

Microsoft's argument against the upload rate for the *sequence* (the "average rate" issue) was also part of the briefing. *See, e.g.*, Microsoft's Responsive Claim Construction Brief, at 21:16-18 (D.E. 53, Sept. 25, 2013) ("Emblaze wants a construction that will allow it to compare *average rates over the entire time duration* of the slices, which involves a long window of inactivity relative to the period of actual data transfer.").

Neither of these points has merit because, as explained by Emblaze during the claim construction briefing, the upload rate of the sequence in a broadcast can vary:

> [Since] the specification allows the fluctuation between the rates over time, and a "given data rate" could cover a number of different data rate types that could be assigned at the transmitting computer, many of which would not result in the

---

[3] To be clear, even during claim construction briefing, Microsoft attempted to limit the "upload rate" to the upload of individual files while they are being uploaded: "Microsoft believes that 'upload rate' should be interpreted as *the actual rate at which data is uploaded, measured during the period while data is being uploaded*." Microsoft's Responsive Claim Construction Brief, at 21:15-16 (D.E. 53, Sept. 25, 2013) (emphasis in original).

same or similar amounts of data per units of time, it would be improper to
import the limitation of matching an exact correspondence between a data rate
and an upload rate "at all points in time."

Emblaze's Opening Claim Construction Brief, at 19:12-16 (D.E. 52, Sept. 12, 2013). *See also*, *e.g.*, Emblaze's Opening Claim Construction Brief, at 12:11-17 (D.E. 52, Sept. 12, 2013), citing Claim 16 ("wherein adjusting the upload rate [of the sequence] comprises changing the compression ratio [of the data stream]."). Thus, the construction of "upload rate" and the issues of wait time, fluctuations, and average rate were briefed, argued, and decided.

### IV. **MICROSOFT FAILS TO SATISFY CIVIL L.R. 7-9(b)**

This Court's Claim Construction Order already issued on July 29, 2014. As shown above, Microsoft was fully aware at that time of its (non-infringement-driven) arguments about "upload rate," both because it had briefed the same arguments it is making now and because Magistrate Judge Grewal's decision addressing this issue had been filed with this Court. Microsoft was also aware of Emblaze's positions at that time. If Microsoft believed that some ambiguity remained after the Court's construction, it could have moved for reconsideration shortly after the Court's order.

If the Court determines that this motion is a motion for reconsideration pursuant to Civil Local Rule 7-9, it should be denied because it fails to satisfy the standards governing reconsideration. Under Civil Local Rule 7-9(b), reconsideration is limited to only three circumstances: (1) a material change of fact or law before entry of an interlocutory order that could not be discovered with reasonable diligence;[4] (2) the emergence of new material facts or a change of law occurring after the interlocutory order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order. Microsoft's Motion focuses on the latter two prongs, but fails to establish either. Where Microsoft argues that this Court was "silent" on the issue of wait

---

[4] Civil L.R. 7-9(b)(1) further requires, "The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order."

time, in fact this Court expressly addressed, and rejected, Microsoft's position. Where Microsoft claims that some "new" fact justifies a second bite at the apple, there is nothing new about Emblaze's position, or Microsoft's.

*First*, under Civil L.R. 7-9(b)(3), Microsoft asserts that the Court failed to consider material facts or dispositive legal arguments, based on "the Court's silence regarding the 'wait time' issue, even though the parties raised it." Microsoft's Motion, at 7:20-22. Microsoft also argues that the Court "misunderstood Microsoft's position." *Id.* at 7:22-8:1. However, this Court's claim construction order—which is hardly "silent"—makes clear that this Court not only understood, but also fully considered, the issue of "wait time." In rejecting Microsoft's "at all points in time," the Court was explicit that it understood this phrase as attempting to "capture the idea that the data of the encoded stream must track the actual upload rate that was achieved ***during the actual upload transfer***." Claim Construction Order, at 11:18-21 (emphasis added). The Court also expressly stated that Emblaze's proposed construction was fully in line with the specification. *Id.* at 11:13-16 ("Preferably, uploading the ***sequence*** includes comparing the upload rate to the data rate and adjusting the upload rate responsive to the comparison.") (emphasis added). The problem for Microsoft is not that this Court failed to address its argument, but that the argument was considered, and Microsoft's position did not carry the day.

*Second*, Microsoft also asserts, under Civil L.R. 7-9(b)(1)-(2) that new material facts have emerged since the claim construction briefing, argument, and claim construction order. Microsoft's Motion, at 8:5-6. Microsoft suggests that these new material facts spring from Judge Grewal's clarification of "upload rate" in the *Apple* case. *Id.* at 8:6-8. However, prior to the claim construction hearing, and pursuant to Civil L.R. 7-3(d)(2), Emblaze submitted a Statement of Recent Decision, notifying the Court of the Apple Decision. The Apple Decision included a lengthy analysis regarding term "upload rate," where Judge Grewal ultimately determined that "the term 'upload rate' in the context of the '473 patent should be read to include wait time between the transmission of files within a sequence." Apple Decision, at *7.

This decision, and the quotes therefrom, were also considered by this Court during the claim construction hearing. *Supra* at 3.

Though Microsoft's Motion cites to three documents as purportedly presenting new material facts, none salvages Microsoft's futile motion. The first citation ("*Emblaze v. Apple*, Dkt. 617 at 1989, 2006-07") is to the *Apple* trial transcript, and is nothing more than a jury instruction colloquy where Magistrate Judge Grewal confirmed his own understanding that: "the construction of upload rate is this: the term 'upload rate' includes wait time between the transmission of files within a sequence. Correct?" Pages 2006 and 2007 of the transcript merely restate the same jury instruction.

The second citation ("Dkt. 653 at 7 (analysis and formal revision to construction issued on October 9, 2014)") is to Magistrate Judge Grewal's Claim Construction Order. With regard to "upload rate," Magistrate Judge Grewal's Order merely states that "[i]n granting-in-part Apple's motion for summary judgment of non-infringement as to all accused streams, the court additionally construed the term 'upload rate.' The court found that '"upload rate" in the context of the '473 patent should be understood to include wait time between the transmission of files within a sequence.'" *Id.* at 6:18-7:2 (footnotes omitted)

The third citation ("Dkt. 424 at 11-14") is the Apple Decision, which cannot be "new," given that it was affirmatively filed with this Court by Emblaze before the Claim Construction Hearing and before the Court issued its Claim Construction Order.

None of these documents can support Microsoft's allegation that new material facts have emerged since the claim construction briefing, argument, and claim construction order in this case under Civil L.R. 7-9(b)(1) or (2). Nor by the same token, can Microsoft find support in the cases on which Microsoft tries to rely to support its request, which are distinguishable from the matter at hand. For example, the discussion cited in *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.* recognized a district court's difficulties in construing terms for purposes of a preliminary injunction early in a case, before significant discovery has occurred, or when issues are complex "due to the nature of the technology or because the meaning of the claims

EMBLAZE'S OPPOSITION TO MICROSOFT'S MOTION FOR LEAVE TO REQUEST
CLARIFICATION OR RECONSIDERATION OF THE COURT'S CLAIM
CONSTRUCTION ORDER

is unclear from the intrinsic evidence." 302 F.3d 1352, 1361 (Fed. Cir. 2002). In *Conoco, Inc. v. Energy & Environmental International, L.C.*, the Federal Circuit, in quoting *Guttman*, was faced with the standards of review for a term construed by the district court *sua sponte*. 460 F.3d 1349, 1359 (Fed. Cir. 2006). Neither case supports any invitation to litigants to reargue claim construction positions previously argued and decided.

After all, Microsoft simply fails to satisfy the requirements of Civil L.R. 7-9 because its Motion amounts to nothing more than a disagreement with this Court's claim construction order. Microsoft's "rehashing" of its arguments violates Civil Local Rule 7-9(c), which prohibits repetition of argument. *See*, *e.g.*, *Adobe Sys. Inc. v. Wowza Media Sys., LLC*, No. 11-CV-02243-JST, 2014 WL 2731321, at *1 (N.D. Cal. June 10, 2014) (denying Adobe's motion for leave for reconsideration, reasoning that "[a]s for the arguments that were previously presented to the court, a party may not repeat argument it made previously, Civ. L.R. 7-9(c), and Adobe fails to show that the court 'manifest[ly] fail[ed]' to consider the arguments previously made."); *see also Ankele v. Johnson*, No. C-04-04811-JW, 2005 WL 1459553, at *2 (N.D. Cal. June 21, 2005) ("Plaintiff simply rehashes arguments made in Plaintiff's previous opposition to Defendants' original motions . . . . Plaintiff has violated the prohibition against repeating previous arguments set forth in Local Civil Rule 7-9(c)."). Further, perhaps for good reason—because the "wait time" issue was known to Microsoft and already argued—Microsoft does not even attempt to "show that in the exercise of reasonable diligence [that it] did not know such fact or law at the time of the interlocutory order," ignoring a fundamental requirement of Civil L.R. 7-9(b)(1).

Microsoft's disagreement with the Court's Claim Construction Order further fails to demonstrate any fact or argument the Court "manifest[ly] fail[ed] . . . to consider," and its reassertion of previous arguments is prohibited and sanctionable. Civil L.R. 7-9(b)(3)-(c); *see also*, *e.g.*, *Salinas v. City of San Jose*, No. 5:09-cv-04410 EJD, 2011 WL 3739555, at *3 (N.D. Cal. Aug. 23, 2011) (denying motion for leave where "[t]here [was] no indication the court 'manifestly' failed to consider anything that could prove dispositive"); *Jackson v. Walker*, No.

CIV S-06-2023 WBS GGH P, 2010 WL 1948294, at *3 (E.D. Cal. May 11, 2010) ("Disagreement with a decision or the recapitulation of rejected arguments are not adequate bases for reconsideration"); *Sconiers v. Fresno Cnty. Superior Court*, No. 1:11-cv-00113-LJO-SMS, 2011 U.S. Dist. LEXIS 122195, at *2-3 (E.D. Cal. Oct. 21, 2011) (holding motion to reconsider "has no apparent purpose other than to challenge the authority of the Court" and "warning will serve as a predicate for sanctions"), sanctions imposed at 2011 U.S. Dist. LEXIS 152225, at *1-2 (E.D. Cal. Dec. 13, 2011).

Courts may summarily deny motions that are not filed in compliance with the Local Rules. *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010) (upholding district court's denial of motion to tax costs that was not in compliance with court's local rules); *Elder-Evins v. Casey*, No. C 09-05775 SBA, 2011 WL 4079733, at *2-3 (N.D. Cal. Sept. 13, 2011) (denying motion for leave to file motion for reconsideration for failing to show any of three conditions required for reconsideration under Civil Local Rule 7-9). Microsoft's Motion should accordingly be denied.

## V. CONCLUSION

For the foregoing reasons, Emblaze respectfully requests that the Court deny Microsoft's Motion for Leave to Request Clarification or Reconsideration of a Claim Construction.

DATED: February 17, 2015                                    **COHEN & GRESSER LLP**

/s/ Damir Cefo
Damir Cefo (*admitted pro hac vice*)

*Attorneys for Plaintiff Emblaze Ltd.*