Eric L. Wesenberg, (SBN 139696)
EWesenberg@perkinscoie.com
Christopher L. Kelley (SBN 166608)
CKelley@perkinscoie.com
Kenneth J. Halpern (SBN 187663)
KHalpern@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone:  650.838.4300
Facsimile:  650.838.4350

Antoine M. McNamara (SBN 261980)
AMcNamara@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101
Telephone:  206.359.8000
Facsimile:  206.359.9000

Isabella E. Fu (SBN 154677)
Associate General Counsel
Microsoft Corporation
One Microsoft Way
Redmond, WA 98052
Telephone:  425.882.8080
Facsimile:  425.936.7329

*Counsel for Defendant
Microsoft Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EMBLAZE, LTD., <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION, <br><br> Defendant. | Case No.  3:12-cv-5422-JST <br><br> **DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO REQUEST CLARIFICATION OR RECONSIDERATION OF A CLAIM CONSTRUCTION** |

## I. INTRODUCTION

Contrary to Emblaze's wishful narrative, the construction adopted by the Court does ***not*** resolve the dispute between the parties regarding the meaning of the claim term "upload rate." As it stands, the Court's construction does not indicate how, as between the parties competing views, that term should be evaluated, delegating to the jury the task of determining the claims' scope and meaning. Emblaze's assertion that the Court already decided this issue in its favor is clearly false — the construction repeats the claim term "upload rate," but nothing in the Court's order describes how the "upload rate" should be computed. Moreover, Emblaze's own actions show that it knows full well the issue was not decided; it acknowledged in its claim construction briefing that the issue remained open, and sought formal clarification of the identical construction in the *Apple* case ***after*** the claim construction hearing in this case.

Indeed, as explained in Microsoft's motion, the passages quoted in the Court's order and the Court's finding that "the upload rate fluctuat[es] depending on the available bandwidth" are fundamentally incompatible with Emblaze's position that the "upload rate" is a single average value computed *after* the entire sequence has been broadcast (and thus includes the "wait times" between uploads). Further, Emblaze's contention that there have been no material changes of fact since the claim construction hearing mischaracterizes the record and ignores Emblaze's own request for clarification of the very same term within the identical construction on the eve of its trial against Apple. Finally, because Microsoft's motion is properly viewed as a motion for clarification, the timing is irrelevant. As Emblaze conceded in the *Apple* case, this is an issue that must be resolved before trial — better to resolve it now, while discovery is ongoing and before expert reports have been exchanged, than to wait months and waste needless resources with the parties holding conflicting interpretations of the claim requirements.

## II. ARGUMENT

### A. The parties' dispute over the meaning of "upload rate" was not resolved.

Although the issue of the "wait time" between active uploads was raised in the original claim construction process, neither the Court's constructions nor its supporting order resolved the dispute between the parties about the meaning of the term "upload rate." At Emblaze's

1   suggestion, the Court construed the broader phrase "uploading the sequence to a server at an
2   upload rate generally equal to the data rate of the stream" to mean "transmitting the files from the
3   transmitting computer to the server at an upload rate generally equal to the data rate of the
4   stream." Claim Construction Order at 11. The claim term "upload rate" is simply repeated in the
5   Court's construction without explanation, and so the construction provides no guidance as to how
6   that term should be computed. The new information provided in the Court's construction is that
7   (1) "uploading" means "transmitting" (which is uncontested by parties), (2) the upload initiates
8   "from the transmitting computer" (also uncontested), and (3) the "upload rate" for the sequence is
9   the upload rate for "the files" that are transmitted (which supports Microsoft's position, not
10  Emblaze's).

11      To show that the Court defined "upload rate," Emblaze points to four items in the record,
12  but none of them support its contention. First, it cites Microsoft's proposal that the upload rate
13  must be generally equal to the data rate of the stream "at all points in time," and the Court's
14  finding that "the relevant claim language is not limited to *this concept*." Dkt. 112 at 2 (emphasis
15  added). Despite Emblaze's suggestive highlighting of the phrase "during the actual upload
16  transfer" (*id.*, quoting Dkt. 93 at 11, in turn quoting Dkt. 53 at 23-24) and insertion of the words
17  "*i.e.*, excluding any wait time," *see* Dkt. 112 at 2, it is clear that the "concept" to which the Court
18  was referring was that of requiring equal rates "at all points in time." In the next sentence, the
19  Court explained that "this concept" could confuse the jury because the specification "describes
20  the upload rate as fluctuating" and teaches adjusting the data rate to match. Dkt. 93 at 11. In
21  other words, the Court rejected a requirement of always-matched rates in favor of allowing rate
22  mismatches, caused by fluctuation, and corrected by adjustments to the data rate. If instead the
23  Court had meant to find, as Emblaze contends, that the "upload rate" must include wait time, it
24  would not have stated that the invention is "*not limited to* [the] concept" of excluding wait time.
25  Dkt. 93 at 11 (emphasis added). That phrasing suggests that "upload rate" can encompass both
26  including and excluding wait time—an impossibility, given that they are either mutually
27  exclusive or the term has no limiting meaning at all—or that the Court intended to leave the issue
28

1  open. In any case, the meaning of "upload rate" remains undecided, exactly as Microsoft has
2  argued.

3  Emblaze also cites, as proof that the Court decided the "wait time" issue, its submission in
4  this action of Judge Grewal's lengthy summary judgment order, which contained, among many
5  other things, an analysis of that issue. Dkt. 112 at 3. But Emblaze simply filed it without
6  analysis and did not ask this Court to take any action based on it. Dkt. 82. Even if it had, a
7  request by a party is not a decision by the Court. Finally, Emblaze identifies two places, one in
8  its brief, the other at oral argument, where it disagreed with Microsoft's view that wait time must
9  be excluded when calculating the upload rate. Dkt. 112 at 3. That merely confirms that the
10 parties presented the issue to the Court, as Microsoft has also argued; it does not establish that the
11 Court decided it.

12 In fact, Emblaze never claimed that its own proposed construction of the broader term
13 *would* resolve the "wait time" dispute between the parties. In the *Apple* case, Emblaze explicitly
14 argued that Apple would still be allowed to argue that "upload rate" referred specifically to the
15 periods of active uploads. *See Emblaze v. Apple*, Dkt. 181 at 134:3–6 ("Yes, they can make that
16 infringement argument . . . ."). And, in this case, when urging deference to Judge Grewal's
17 construction, Emblaze quoted those same statements to this Court. Dkt. 54 at 10 n.15. Thus,
18 Emblaze recognized in its Reply Claim Construction Brief ***in this action*** that its construction left
19 open the meaning to be given to "upload rate." Emblaze proposed a construction of the broader
20 term that, by its own admission, leaves the "wait time" issue unresolved and simply repeats
21 verbatim the relevant language from the claims. And as shown in the next section, Emblaze
22 sought clarification of the same issue in *Apple **after*** the claim construction hearing in this case.
23 Emblaze cannot plausibly contend that, by adopting its proposed construction, the Court resolved
24 the dispute over the meaning of "upload rate" in its favor.

25     **B.**     **Emblaze has conceded that the current construction requires clarification by seeking an additional construction of "upload rate" in the *Apple* case *after the***
26     ***claim construction hearing in this case.***

27 Emblaze argues that there has been no material change of fact since the claim construction
28 hearing, ignoring the fact that subsequent to that hearing Emblaze itself sought clarification in the

*Apple* case of the term "upload rate" in the context of the exact same claim construction. It did so on the eve of trial, after expert reports had been exchanged and summary judgment motions had been decided. Emblaze notes in opposition that Judge Grewal had previously addressed the "wait time" issue in his summary judgment order, but his findings were not reflected in his claim constructions until Emblaze asked that "upload rate" be specifically construed for the jury. *Emblaze v. Apple*, Case No. 11-cv-1079, Dkt. 570 (6/30/14 Trial. Tr.) at 385 ("Mr. Pavane: … We believe that there is some further clarification of the claim construction that is required and we have drafted two modifications to the preexisting claim construction."); Dkt. 569 at 5 ("The Court did not construe 'upload rate' as part of its prior Markman order in this case."); Dkt. 572 (dated 7/1/14) at 1 ("Emblaze respectfully requests that the Court adopt Emblaze's proposed construction for that claim term, *i.e.*, "upload rate should be construed the mean "the rate at which a sequence of files is transmitted to the server, including the wait time between the transmission of the individual files in the sequence.") In asking for that subsequent construction, Emblaze conceded that the term "upload rate" must be separately construed and that simply repeating that claim language to the jury without clarification would be inappropriate. The concession as to the insufficiency of its own proposed construction, which occurred on June 30 and July 1, 2014, after the June 11, 2014 claim construction hearing in this case, Dkt. 88, is undoubtedly a material change of fact under Civil L.R. 7-9.

More importantly, Emblaze's concession further demonstrates why Microsoft's motion should be treated as a motion for clarification rather than as a motion for reconsideration. The meaning of the claim term "upload rate" remains ambiguous in the Court's construction of the broader phrase, and the parties agree that this ambiguity is central to the case and to a proper understanding of the patent. That ambiguity must be resolved by the Court, not by the jury. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 ("When the parties raise an actual dispute regarding the proper scope of the[] claims, the court, not the jury, must resolve that dispute."). The question is whether this ambiguity should be resolved now, when it could focus the parties' discovery efforts and narrow the scope of expert reports, or whether the parties should remain in the dark until some unnamed later date. Because Microsoft seeks leave

1  to file a motion for clarification, and because Emblaze has previously conceded that clarification
2  of this term is necessary, Emblaze's arguments regarding Civil L.R. 7-9 are inapposite.

      **C.    Emblaze has failed to articulate a coherent position regarding how the "upload rate" should be computed.**

5  Emblaze's position that this Court has already resolved this dispute it its favor and
6  adopted its understanding of "upload rate" is further undermined by the fact that Emblaze itself
7  has failed to articulate a coherent understanding of that term. In the *Apple* case and at the claim
8  construction hearing in this case, Emblaze appeared to adopt Judge Grewal's position that the
9  upload rate is a single value that cannot be computed until the entire sequence has been uploaded.
10 *See* Dkt. 95 (Claim Construction Hearing Transcript) at 104 ("Mr. Cefo: . . . . As Judge Grewal
11 pointed out: '. . . . Because the sequence as a whole is not uploaded until the upload of the last of
12 its files, the wait time in between the files must be included. The upload rate thus must be based
13 on the transmission of files — plural — to the server and not transmission of a single file.'").
14 Yet, somehow, Emblaze continues to argue that, under its interpretation, the "upload rate" can
15 fluctuate over the course of the broadcast. *See* Dkt. 112 at 5. These two positions are inherently
16 contradictory. For a parameter to *fluctuate* over the upload of the sequence, one must be able to
17 compute its value *while* the sequence is still being uploaded and it must have multiple values
18 measured at different times during the sequence. Therefore, Judge Grewal's understanding of the
19 "upload rate of the sequence" is simply incompatible with the notion of an upload rate that
20 fluctuates over time.
21 This Court has already noted that "the specification . . . describes the upload rate as
22 fluctuating depending on the available bandwidth," Dkt. 93 at 11, and cited passages from the
23 patent that make clear that the upload rate is computed based on the "upload time" of each file, *id.*
24 (citing '473 patent at 12:13–17). Therefore, this Court has already rejected the premise
25 underlying Judge Grewal's understanding of "upload rate." The upload rate of the sequence is
26 either measured for each individual file in the sequence (and thus fluctuates based on how fast or
27 slowly each file takes to upload) or it is measured once the entire sequence has been uploaded
28 (and thus does not, by definition, fluctuate over time). Emblaze cannot have it both ways, and it

1 | cannot argue that this Court has already resolved the dispute in its favor when it cannot itself even
2 | articulate an coherent position on the matter.

### III. CONCLUSION

For the foregoing reasons, Microsoft respectfully requests that the Court grant leave to seek clarification or reconsideration regarding the meaning of the claim term "upload rate."

DATED: February 23, 2015           **PERKINS COIE LLP**

                                   By:     */s/ Eric L. Wesenberg*
                                           Eric L. Wesenberg
                                           EWesenberg@perkinscoie.com

                                   Attorneys for Defendant
                                   MICROSOFT CORPORATION

**CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/EMF registrants for this case.

                                        */s/ Eric L. Wesenberg*
                                        Eric L. Wesenberg

LEGAL125128819

MICROSOFT'S REPLY IN SUPPORT OF MOTION FOR LEAVE
CASE NO. 3:12-cv-5422-JST