# REDACTED VERSION
# OF DOCUMENT SOUGHT
# TO BE SEALED

Scott R. Raber (SBN 194924)
scott.raber@rimonlaw.com
RIMON P.C.
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Phone: 415.683.5472
Facsimile: 800.930.7271

Karen H. Bromberg (*admitted pro hac vice*)
kbromberg@cohengresser.com
Alexandra Wald (*admitted pro hac vice*)
awald@cohengresser.com
Francisco A. Villegas (SBN 206997)
fvillegas@cohengresser.com
Damir Cefo (*admitted pro hac vice*)
dcefo@cohengresser.com

COHEN & GRESSER LLP
800 Third Avenue, 21st Floor
New York, NY 10022
Phone: 212.957.7600
Facsimile: 212.957.4514

*Attorneys for Plaintiff Emblaze Ltd.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EMBLAZE LTD., <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION, <br><br> Defendant. | Case No. 3:12 cv 05422-JST-EDL <br><br> **EMBLAZE'S MOTION TO COMPEL DISCOVERY** <br><br> **ORAL ARGUMENT REQUESTED** <br><br> Date: APRIL 7, 2015 <br> Time: 9:00 AM <br> Place: Courtroom E, 15th Floor <br> Judge: Hon. ELIZABETH D. LAPORTE |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 7, 2015 at 9:00 a.m. or as soon thereafter as counsel may be heard by the Court, Plaintiff Emblaze Ltd. ("Emblaze") [1] will, and hereby does, respectfully move this Court for an Order compelling Defendant Microsoft Corp. ("Microsoft") to comply with its discovery obligations.  This Motion is based on the following memorandum of points and authorities; the Declarations of Damir Cefo ("Cefo Decl."), Erik S. Hanson ("Hanson Decl."), and Francisco Villegas ("Villegas Decl.") and accompanying exhibits ("Cefo Ex. [ ]," "Hanson Ex. [ ]," and "Villegas Ex. [ ]"); the entire record in this matter; and such evidence as may be presented at the hearing on this Motion.

## RELIEF REQUESTED

Emblaze seeks an order resolving a dispute between the parties regarding Microsoft's challenge to the sufficiency of Emblaze's Patent Local Rule disclosures, as well as an order addressing Microsoft's related refusal to:  (1) employ email search terms necessary to reasonably identify responsive, discoverable materials; (2) conduct a reasonable search of electronic data sources within Microsoft's possession, custody, and control likely to contain documents relevant to Emblaze's claims in this case; and (3) produce historical employee and organizational data stored in Microsoft databases.

## STATEMENT OF ISSUES TO BE DECIDED

Whether Microsoft is entitled to resist discovery based on its position that a "method" (specifically, Microsoft's Smooth Streaming method) cannot be the subject of infringement disclosures under the Patent Local Rules, and whether Microsoft should be compelled to adequately search its email for responsive materials, drop arbitrary limitations on the sources of data it will search, and query existing databases for historical employee and organizational information.

---

[1] On or about August 10, 2014, Emblaze's name changed to B.S.D. Crown, Ltd.  "Emblaze" is used in this submission for continuity with prior filings and overall ease of reference.

1

## COMPLIANCE WITH MEET AND CONFER OBLIGATIONS

2

Emblaze has complied with its meet and confer obligations, through an extensive series

3

of telephonic meetings and email correspondence, in an attempt to resolve these issues. *See*

4

Hanson Decl., at ¶¶ 2-6.

DATED:  February 24, 2015                    **COHEN & GRESSER LLP**

5

6

/s/ Damir Cefo
_____
Damir Cefo

7

*Attorneys for Plaintiff Emblaze Ltd.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EMBLAZE'S MOTION TO COMPEL DISCOVERY

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ................................................................ 1

COMPLIANCE WITH MEET AND CONFER OBLIGATIONS ......................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

I.    INTRODUCTION AND STATEMENT OF FACTS ................................. 1

    A.    The Technology and Microsoft's Infringement ................................. 1

    B.    Emblaze's Contentions ...................................................................... 3

        1.    Emblaze's Direct Infringement Disclosures ........................... 3

        2.    Emblaze's Indirect Infringement Disclosures ........................ 5

        3.    The Parties' Dispute Concerning Emblaze's Infringement
           Contentions and the Scope of Accused Products ..................... 6

II.   ARGUMENT ........................................................................................... 7

    A.    Emblaze's Infringement Contentions Place Smooth Streaming Squarely at
        Issue for Purposes of Infringement and Damages ............................. 7

        1.    Smooth Streaming is an Accused Instrumentality .................. 7

        2.    Emblaze Properly Identified Microsoft's Direct Infringement
           Under Rule 3-1(a) .................................................................. 9

        3.    Emblaze Properly Identified Indirect Infringement Under Patent
           Local Rule 3-1(d) ................................................................. 10

    B.    The Parties' Document and Electronic Search Disputes ................... 13

        1.    Microsoft Should Be Compelled to Use Emblaze's Proposed
           Email Search Terms, Including Search Terms Reasonably
           Calculated to Identify Documents Concerning Infringement
           Involving Third Parties ......................................................... 13

        2.    Microsoft Should Be Compelled to Conduct a Reasonable Search
           of the All Data Sources Within Its Control Reasonably Likely to
           Contain Responsive Documents ............................................ 17

        3.    Microsoft should be compelled to provide organizational
           information that is readily available through database queries ............ 21

III.  CONCLUSION ...................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ameranth, Inc. v. Papa John's USA, Inc.*,
    946 F. Supp. 2d 1049 (S.D. Cal. 2013) ........................................................................... 8

*Apple Inc. v. Samsung Elecs. Co.*,
    No. 12-CV-0630-LHK (PSG), 2013 WL 4426512 (N.D. Cal. Aug. 14, 2013) ................... 24

*Creagri, Inc. v. Pinnaclife Inc., LLC*,
    No. 11-cv-06635-LHK-PSG, 2012 WL 5389775 (N.D. Cal. Nov. 2, 2012) ................... 9, 10

*DCG Sys. v. Checkpoint Techs.*,
    No. C 11-03792 PSG, 2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) ........................... 11, 12

*Largan Precision Co, Ltd. v. Genius Elec. Optical Co.*,
    No. 13-CV-02502-JD, 2014 WL 6882275 (N.D. Cal. Dec. 5, 2014) ................................. 12

*Meeks v. Parsons*,
    Case No. 1:03-cv-6700-LJO-GSA, 2009 WL 3003718 (E.D. Cal. Sept. 18, 2009) ............. 22

*Nat'l Ass'n of Radiation Survivors v. Turnage*,
    115 F.R.D. 543 (N.D. Cal. 1987) ................................................................................. 22

*Network Caching Tech., LLC v. Novell, Inc.*,
    No. C–01–2079, 2003 WL 21699799 (N.D. Cal. Mar. 21, 2003) ......................................... 9

*SAGE Electrochromics Inc. v. View Inc.*,
    No. C-12-06441 JST (DMR), 2013 WL 4777164 (N.D. Cal. Sept. 6, 2013) ........................ 9

*Vigilos LLC v. Sling Media Inc*,
    No. C-11-04117 SBA (EDL), 2012 WL 9973147 (N.D. Cal. July 12, 2012) ............... 11, 12

**Rules**

Fed. R. Civ. P. 34 ........................................................................................................... 22

Patent L. R. 3-1 ..................................................................................................... passim

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     Introduction and Statement of Facts

The plain text of Patent Local Rule 3-1 refers to an infringing "apparatus, product, device, process, method, act or other instrumentality."  Despite this straightforward wording, Microsoft denies that Microsoft's real time Smooth Streaming method, which Emblaze identified in detail in its Preliminary Infringement Contentions ("PICs"), falls within this broad language.  Microsoft maintains that Emblaze's detailed disclosures are a nullity and takes the position that Microsoft is entitled to resist discovery about Smooth Streaming based on Emblaze's purported failure to supply infringement disclosures as required by the Patent Local Rules.  Though not having made any motion to strike, Microsoft purports to reserve its right to object to the identification of Smooth Streaming or to the taking of discovery at any time.  Emblaze respectfully requests that the Court address the parties' dispute at this time, apply the plain text of the Local Rules, and confirm that Smooth Streaming, and its implementation by Microsoft and third parties, are fully within the scope of this case and are proper topics of discovery and proof at trial.[2]

Emblaze further requests that the Court compel Microsoft to comply with its discovery obligations under Fed. R. Civ. P. 34, by conducting reasonable searches of information within its possession, custody, and control, as set forth below.

### A.     The Technology and Microsoft's Infringement

Emblaze's U.S. Patent No. 6,389,473 ("the '473 patent") is directed to a method and apparatus for efficient real-time video streaming over the internet that adapts to varying available bandwidth, where media content is divided into small segments and processed for delivery to end users.  Emblaze first showcased this technology in the 1998 live video broadcast of the White House Easter Egg Roll.  Microsoft's own streaming offering ("Smooth Streaming") did not appear for another decade.

---

[2] If and to the extent this Court determines that Emblaze's PICs require supplementation in any way, however, Emblaze respectfully requests leave to address any such gap through supplemental disclosures with guidance from this Court's ruling.

Smooth Streaming is Microsoft's streaming method, which mirrors the steps of the ʼ473 patent.[3]  Smooth Streaming is the equivalent of a Microsoft streaming standard, which is both used and promulgated to third parties by Microsoft.[4]  Microsoft specifies to third parties how Smooth Streaming must be implemented.  *See, e.g.*, Cefo Ex. B Redacted

Redacted

Redacted In Microsoft's own words, it "evangelizes" the use of Smooth Streaming to third parties through a variety of marketing and technical support avenues.  For example, Microsoft publishes a "Smooth Streaming Specification," setting out precisely how to carry out the Smooth Streaming method. Microsoft's "Smooth Streaming Transport Protocol" identifies numerous "normative" and mandatory features of Smooth Streaming in painstaking detail.[6]

---

[3] *See, e.g.*, *http://www.iis.net/downloads/microsoft/smooth-streaming* ("To create Smooth Streaming presentations, the same source content is encoded at several quality levels, typically with each level in its own complete file, using a compression tool such as Expression Encoder or a product from one of our many partners.   Content is delivered using a Smooth Streaming-enabled IIS origin server. After the IIS origin server receives a request for media, it will dynamically create cacheable virtual fragments from the video files and deliver the best content possible to each client.").

[4] Microsoft has stated in Responses to Requests to Admit that it is "not aware" of any common or mandatory features of Smooth Streaming.  In correspondence, Microsoft also has speculated that unnamed third parties might in theory be capable of carrying out some unspecified alternative implementation of Smooth Streaming, of which Microsoft likewise is unaware and can supply no details.  Cefo Ex. A.  Beyond unsupported speculation, however, Microsoft has offered no evidence of any actual instance where Smooth Streaming  varies in practice from its own prescriptive "protocol" with respect to the patented steps in dispute.

Redacted

[6] *E.g.*, Smooth Streaming Transport Protocol Introduction (specifying "normative" sections of protocol); Section 2:  The Manifest Request and Fragment Request messages MUST be represented as HTTP Request messages, as specified by the Request rule of [RFC2616], subject to the following constraints:
- The Method MUST be "GET".
- For the Manifest Request message, the RequestURI MUST adhere to the syntax of the **ManifestRequest** field, specified in section 2.2.1.
- For the Fragment Request message, the RequestURI MUST adhere to the syntax of the **FragmentRequest** field, specified in section 2.2.3.

---

As set forth in Emblaze's Complaint and Patent Local Rule disclosures, Microsoft infringes the '473 patent in two ways. First, Microsoft directly infringes the '473 patent by incorporating live Smooth Streaming functionality in its own products, such as encoding software, cloud services, and electronic equipment (*e.g.*, tablets, phones, and gaming consoles). Second, Microsoft indirectly infringes the '473 patent by encouraging third parties to implement live Smooth Streaming and by providing them with the directions, help and support, infrastructure, software, and code to do so. Those third parties include: (1) providers and/or users of live Smooth Streaming encoding software, hardware, and services who process media content and deliver it to users ("Encoders"), and (2) end-users who download live Smooth Streaming ("End User Devices").

**B.      Emblaze's Contentions**

On March 27, 2013, Emblaze provided its Patent L.R. 3-1 Disclosure of Asserted Claims and Infringement Contentions (the "Preliminary Infringement Contentions" or "PICs"), identifying Microsoft's direct and indirect infringement in separate charts.

*1.      Emblaze's Direct Infringement Disclosures*

Emblaze's PICs explained that Microsoft directly infringes the '473 patent by practicing its live Smooth Streaming method. Emblaze clearly stated its theory of infringement, which is that any processing of media into or downloading of live Smooth Streaming, constitutes direct infringement by Microsoft. Smooth Streaming is agnostic as to the specific platform used, and the steps of Smooth Streaming processing and uploading can be done on a public platform like Microsoft Azure, or a private platform. Accordingly, any Microsoft project, platform or product that processes multimedia into Smooth Streaming and uploads it to a server directly infringes.

---

- The HTTP-Version SHOULD be HTTP/1.1.

*See also id.*, Section 2.2.7 ("Live Ingest. The LiveIngest and related fields contain data *required* to request the start of a live broadcast."). http://download.microsoft.com/download/9/5/E/95EF66AF-9026-4BB0-A41D-A4F81802D92C/[MS-SSTR].pdf (emphasis added).

In its charts, Emblaze provided specific citations to Microsoft materials explaining the workings of Smooth Streaming and mapping them to the '473 patent.  As required by Section 3-1(c), in Section (c) of its PICs ("Chart of Infringed Claims"), Emblaze provided a claim chart showing, element by element, how the Smooth Streaming method infringes the asserted '473 patent claims.  Cefo Ex. C, at 3-4 and Ex. D (Claim Chart for Microsoft Smooth Streaming).  The Chart of Infringed Claims set forth the manner in which Microsoft's Smooth Streaming method of real time broadcasting over a network infringes each one of the limitations of the '473 patent, as well as where the infringing conduct can be found in Smooth Streaming:  providing and dividing the stream, encoding it, and uploading to a server such that client computers can download the Smooth Streaming content.

Emblaze's Section (c) PICs also provided charts for two exemplary illustrations of instances where Microsoft itself implements the infringing Smooth Streaming instrumentality: through its Expression Encoder 4 Pro software which is capable of processing and downloading content using Smooth Streaming, and through its Windows Azure Media Services streaming media cloud service.[7]  These charts for Expression Encoder 4 Pro and Windows Azure Media Services are materially the same as the main Smooth Streaming chart, rely on the same materials used to chart Smooth Streaming, and do not reflect any difference in the use of Smooth Streaming as between these two particular implementations (or any others).  *See* Cefo Exs. D-F (Claim Charts for Microsoft Smooth Streaming, Expression Encoder 4 Pro, and Windows Azure Media Services).

In Section (b) of its PICs, Emblaze listed a number of  Microsoft products and instrumentalities that, based on the information available to Emblaze, play a role in the practice of the infringing Smooth Streaming method:

1. Smooth Streaming Encoders: Computers equipped with Smooth Streaming encoders, including without limitation Microsoft Expression Encoder 4 Pro, Windows Azure Media Services Encoder;

---

[7] "Windows Azure Media Services" is now known as "Microsoft Azure Media Services."

2. <u>IIS Computers</u>: Computers equipped with Microsoft Internet Information Services (IIS) 7.0 (and later) and IIS Media Services 3.0 (and later)[8];

3. <u>Smooth Streaming Servers</u>: Servers equipped with IIS 7.0 (and later) and Windows Azure Media Services[9];

4. <u>Microsoft End User Devices with Silverlight 2.0</u>: Devices equipped with web browsers enabled with Silverlight 2.0 (and later) that can play live smooth streaming multimedia content from IIS Computers and/or Windows Azure Servers; and

5. <u>Microsoft Devices with SDK Implementation of Smooth Streaming</u>: Devices that use Microsoft Media Platform Player Framework (MMPPF) applications to play live smooth streaming multimedia content from IIS Computers and/or Windows Azure Servers, including devices running the Windows 8 Operating System and Windows Phone 7.0 (and later) Operating System, and the Xbox 360[10].

Cefo Ex. C, at 2-3.

### 2.      *Emblaze's Indirect Infringement Disclosures*

As required by the Patent Local Rules, Section (d) of Emblaze's PICs ("Indirect Infringement") identified the direct infringement at issue in this case, as well as the "acts of the alleged indirect infringer" – *i.e.*, Microsoft.  Patent Local Rule 3-1(d).  Emblaze's PICs identified at least two primary classes of third party products and services involved in direct infringement:

1. <u>End User Devices</u>:  Third party devices that download live Smooth Streaming ("Clients, *i.e.* end users of devices that support Microsoft's live Smooth Streaming"), Cefo Ex. C, at 4; and

---

[8] IIS Computers receive Smooth Streaming content from Smooth Streaming encoders and route it to end-user equipment.

[9] Windows Azure Servers receive Smooth Streaming content from Smooth Streaming encoders and route it to end-user equipment.

[10] MMPPF applications are designed using software development kits (SDKs) made available for download by Microsoft. *Id.*

EMBLAZE'S MOTION TO COMPEL DISCOVERY

2. <u>Encoders</u>:  Third party encoders that process content into live Smooth Streaming ("The remainder of the limitations . . . are performed by or incorporated in devices made, used, offered for sale, or sold by the following third-party Microsoft partners that contribute to infringement by encoding content for smooth streaming . . . ."), Cefo Ex. C, at 5.

### 3.    *The Parties' Dispute Concerning Emblaze's Infringement Contentions and the Scope of Accused Products*

Shortly after receiving Emblaze's PICs in March 2013, Microsoft advised Emblaze that it deemed them a nullity.  According to Microsoft,  Smooth Streaming is simply an "abstract workflow" that is ineligible to be identified under the Patent Local Rules.  Cefo Ex. G (3/29/13 letter from Wesenberg to Wald).  A series of conferences and correspondence followed. Though disagreeing with Microsoft, in an effort to resolve the parties' dispute, Emblaze offered to provide Microsoft with additional detail about its infringement position, which offer Microsoft accepted.  Thus, on April 26, 2013 (Cefo Ex. H), Emblaze provided Microsoft with several exemplary infringement charts, containing information and explanation beyond that required in Patent Local Rule 3-1.[11]  In particular, Emblaze provided additional detail about indirect infringement by Encoders and End User Devices using Smooth Streaming.  *See* Cefo Exs. I-R ("Supplemental Charts"; collectively with PICs, the "Infringement Contentions"). Emblaze clearly stated that ten Encoders that were specifically mentioned by name in its April charts were simply examples, and did not constitute an exhaustive list of all relevant Encoder companies and products.  Emblaze reiterated that "based on Microsoft's Smooth Streaming description, *any encoder* that yields Smooth Streaming compliant output works in the same manner."  Cefo Exs. I-R (Supplemental Charts) (emphasis added).

---

[11] Microsoft has confirmed that it does not dispute the timeliness of these supplemental materials.  *See* Hanson Ex. L (11/19/14 email from Hanson to McNamara) (memorializing discussion between the parties).

## II.    Argument

### A.    Emblaze's Infringement Contentions Place Smooth Streaming Squarely at Issue for Purposes of Infringement and Damages.

Despite Emblaze's best efforts to resolve the issue for nearly a year, Microsoft continues to  insist – without ever having provided a single legal citation for its position –  that Smooth Streaming is somehow ineligible to be an accused instrumentality under the Patent Local Rules.  Microsoft wrongly contends based on its self-serving interpretation of the Rules that it is free to ignore Emblaze's disclosure of Smooth Streaming, and that Emblaze has actually accused just two Microsoft products – Expression Encoder 4 Pro software and Windows Azure cloud services – of direct infringement.  Further, Microsoft contends that Emblaze's *indirect* infringement claims are limited to the third parties and products that were identified by name in Emblaze's April charts,  *See, e.g.*, Hanson Ex. I (11/7/14 email from McNamara to Hanson), at 3.

This core dispute about the scope of the case underlies the parties' more discrete disagreements over the proper universe of relevant discovery.  Because Microsoft refuses to acknowledge that Smooth Streaming is an Accused Instrumentality, Microsoft purports to have discretion to refuse discovery at any time, taking the position that any discovery Microsoft may provide is merely a concession without prejudice to Microsoft.  *See* Cefo Ex. S (10/17/13 letter from Kelley to Hanson).  But Microsoft cannot avoid its discovery obligations, nor limit the ultimate scope of this case, through bald denial of what the Rules themselves plainly say.

#### 1.    Smooth Streaming is an Accused Instrumentality

Microsoft insists that live Smooth Streaming is not a cognizable infringing instrumentality because "Smooth Streaming is not an apparatus or device or 'instrumentality.'" Cefo Ex. T (10/7/14 letter from Kelley to Cefo).  Microsoft is wrong.  The Rules simply do not support Microsoft's cramped reading.  To the contrary, Patent Local Rule 3-1 (b) itself makes plain that the Rule is not limited to an apparatus or device.  *See* Patent L.R. 3-1(b) ("Each **method or process shall be identified by name,** if known, *or* by any product, device, or

1  apparatus which, when used, allegedly results in the practice of the claimed method or process

2  . . . .") (emphasis added).

3        Microsoft's defiance of the language of the Patent Local Rules cannot be reconciled

4  either with their plain text or the evidentiary record. Patent Local Rule 3-1 expressly provides

5  that a plaintiff may accuse a "method." Microsoft's own documents confirm that the Smooth

6  Streaming protocol is a method. For instance, Microsoft's "IIS Smooth Streaming Technical

7  Overview" document states that Smooth Streaming is Microsoft's implementation of "HTTP-

8  based adaptive streaming," which is "a hybrid delivery *method*." *See* Cefo Ex. U

9  (MSFT3054_000509-525 at 511, 515, emphasis added). Moreover, that method, according to

10  Microsoft itself, is hardly abstract; it is a "*productized version of technology* first used by

11  Microsoft to deliver . . . video of the 2008 Summer Olympics" Cefo Ex. V ("Smooth

12  Streaming Primer," MSFT3054_000606-616 at 606, emphasis added). As such, Smooth

13  Streaming qualifies as an Accused Instrumentality under any interpretation of Patent Local

14  Rule 3-1(b). *See* Cefo Ex. T (10/7/14 letter from Kelley to Cefo).

15        Nor does Microsoft's position find any support in the policy goals underlying the

16  Patent Local Rules. The Rules are intended to ensure that defendant is placed on notice of

17  plaintiff's theories. They do not require the resolution of claims, nor, for obvious reasons,

18  does their purpose depend on defendant placing a stamp of approval on plaintiff's theory. *See*

19  *Ameranth, Inc. v. Papa John's USA, Inc.*, 946 F. Supp. 2d 1049, 1057 (S.D. Cal. 2013) (PICs

20  must contain "sufficient specificity to provide defendants with notice of infringement beyond

21  that which is provided by the mere language of the patents themselves," but need not be so

22  detailed as to transform the PICs into a "forum for litigation of the substantive issues.")

23  (quoting *Network Caching Tech., LLC v. Novell, Inc.*, No. C–01–2079, 2003 WL 21699799, at

24  *4 (N.D. Cal. Mar. 21, 2003) (holding that to comply with Patent Local Rule 3–1 the plaintiff

25  is not required to produce evidence of infringement, nor to prove its contentions); *see also*

26  *SAGE Electrochromics Inc. v. View Inc.*, No. C-12-06441 JST (DMR), 2013 WL 4777164, at

27  *2 (N.D. Cal. Sept. 6, 2013) ("Patent Local Rule 3–1 does not 'require the disclosure of

28  specific evidence [or] require a plaintiff to prove its infringement case.'") (quoting *Creagri,*

Case No. 3:12 cv 05422-JST-EDL          8

EMBLAZE'S MOTION TO COMPEL DISCOVERY

*Inc. v. Pinnaclife Inc., LLC*, No. 11-cv-06635-LHK-PSG, 2012 WL 5389775, at *2 (N.D. Cal. Nov. 2, 2012)).

Here, Microsoft unquestionably knows what Emblaze's theory is.  It is beyond dispute that Emblaze identified the infringing Smooth Streaming method, or "other instrumentality" to Microsoft "by name" in its original PICs (as well as the Complaint in this action).  That is what Rule 3-1(b) requires.

The notion that Microsoft can exempt itself from participating in discovery by ignoring the express terms of the Rules is absurd on its face.  Microsoft's position is all the more so given Microsoft's own admission that Smooth Streaming is a "productized technology."

### 2.   *Emblaze Properly Identified Microsoft's Direct Infringement Under Rule 3-1(a)*

Emblaze's infringement disclosures regarding Smooth Streaming complied with all of the requirements under the Patent Local Rules.  First, in accordance with Rule 3-1(a), Emblaze's Preliminary Infringement Contentions accuse Microsoft of infringing claims 1, 21, 23, 24, 25, 36, 37, 38, 40, and 41 of the '473 patent.  Second, Emblaze identified Smooth Streaming by name pursuant to Rule 3-1(b).  Emblaze also provided a Rule 3-1(c) claim chart as Exhibit A to its PICs, showing where each limitation of the asserted claims is found within live Smooth Streaming.  *See* Cefo Ex. D.  Emblaze provided extensive citation to Microsoft documents to support its charts.

Having identified the accused method to Microsoft by name, Emblaze was not required to identify every Microsoft product that might practice it.  Because the Smooth Streaming method infringes regardless of the specific platform used or what is packaged together with it, any Microsoft project, platform or product that processes multimedia into live Smooth Streaming and uploads it to a server directly infringes the '473 patent.  *See Creagri*, 2012 WL 5389775, at *3 (Patent L.R. 3-1 does not require a claim chart for every accused product; plaintiff need only provide "enough facts to ascertain [plaintiff's] theory of infringement.").  In this instance, Smooth Streaming is not even a "representative" product, Smooth Streaming is

the infringing method. Again, Microsoft is not required to agree with Emblaze's theory, but Microsoft cannot deny being on notice of what the theory is.

### 3. *Emblaze Properly Identified Indirect Infringement Under Patent Local Rule 3-1(d)*

Microsoft also indirectly infringes the '473 patent by inducing and/or contributing to the infringement of the patent involving Encoders, who make and use encoding products and services that encode content into Smooth Streaming; users of encoders (*e.g.*, broadcasters), who transmit content that has been encoded into live Smooth Streaming format, and End-User Devices that can download live Smooth Streaming content. For these kinds of infringement disclosures, Rule 3-1(d) requires "an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement." Again, Emblaze's Infringement Contentions comply with the Rules.

### a. *Encoders*

Emblaze's Infringement Contentions properly and sufficiently disclose Microsoft's acts that induce the direct infringement of claims 1, 21, 23, 24, 25, 36, 37, 40, and 41 of the '473 patent, by makers and users of encoding software systems, platforms, and/or hardware. The Contentions plainly state that Microsoft induces third parties (including the Encoder companies) to infringe the patent by "providing them with, or requiring each of them to use, Microsoft's Live Smooth Streaming." *See* PICs section 3(d), Cefo Ex. C, at 4.

Emblaze explained in the chart itself that "based on Microsoft's Smooth Streaming description, *any encoder* that yields live Smooth Streaming compliant output works in the same manner," and thus that Emblaze's contentions identify an infringing class of products and services.[12] Microsoft erroneously contends, however, that the scope of discovery in this case is limited to encoders listed by name. Microsoft is simply wrong. Emblaze was not

---

[12] *See* Cefo Ex. I, at n.2 (Telestream Supplemental Chart); Ex. J, at n.2 (Cisco Supplemental Chart); Ex. K, at n.2 (iStreamPlanet Supplemental Chart); Ex. L, at n.2 (Dolby Supplemental Chart); Ex. M, at n.2 (Winnov Supplemental Chart); Ex. N, at n.2 (ViewCast Supplemental Chart); Ex. O, at n.2 (Harmonic Supplemental Chart); Ex. P, at n.2 (ATEME Supplemental Chart); Ex. Q, at n.2 (VBrick Supplemental Chart); Ex. R, at n.2 (Envivio Supplemental Chart) (emphasis added).

required to identify every third party by name, and should not be penalized for the fact that it did identify some third parties by name (and chart them) in an effort to resolve a discovery dispute. *See Vigilos LLC v. Sling Media Inc*, No. C-11-04117 SBA (EDL), 2012 WL 9973147, at *6 (N.D. Cal. July 12, 2012) (explaining that a plaintiff "need not identify specific third parties that directly infringed."); *see also DCG Sys. v. Checkpoint Techs.*, No. C 11-03792 PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) ("While the contentions do not identify which specific customers perform this integration, Checkpoint has identified no case requiring a disclosure under Rule 3-1(d) of the specific third party committing any underlying act of direct infringement."). Likewise, just as a patentee is not required to identify each third party direct infringer by name, a patentee is not required to name each of the specific products and services that incorporate the Accused Instrumentality, in this case Smooth Streaming. *See DCG*, 2012 WL 1309161, at *1-2 (finding indirect infringement contentions sufficient under Rule 3-1(d) where they identified generic types of devices with which third party direct infringers integrated defendant's accused product). Based on the precedents above, discovery is not limited to only the exemplary named encoders in Emblaze's individual encoder charts.

### b. End User Devices

In addition to Encoders, Emblaze's PICs clearly identify infringement in which the limitations of the asserted claims are accounted for by "Clients, *i.e.* end users, through devices listed in section (b) [of the PICs]." PICs section 3(d), Cefo Ex. A, at 4. The PICs state that Microsoft induces these End User third parties to infringe by "providing each of them with, or requiring each of them to use, Microsoft's Live Smooth Streaming." *Id. See* Patent L.R. 3-1 (requiring a description of acts that infringe). Emblaze also described Microsoft's acts of inducement – providing software development kits to enable creation of applications that enable end user devices to download and play Smooth Streaming content. *Id.* at 18-21.

As discussed above, Emblaze was neither required to identify individual third party direct infringers by name, nor required to identify the third party instrumentalities used with the Accused Instrumentality, *i.e.*, Smooth Streaming. *See, e.g., Largan Precision Co, Ltd. v.*

EMBLAZE'S MOTION TO COMPEL DISCOVERY

1    *Genius Elec. Optical Co.*, No. 13-CV-02502-JD, 2014 WL 6882275, at *8 (N.D. Cal. Dec. 5,

2    2014); *Vigilos LLC*, 2012 WL 9973147, at *6; *see also DCG*, 2012 WL 1309161, at *2.

3    Nevertheless, Emblaze provided Microsoft with information beyond what is required by the

4    Patent Local Rules, describing in detail, for example, how exemplary devices meet the

5    limitations of Claim 26 of the '473 patent (which is directed to a client computer that can

6    decode real time data). *See, e.g.*, Cefo Ex. R, at 18-19 (Envivio Supplemental Chart).

7    Emblaze's contentions explain that such downloading devices include devices "equipped with

8    web browsers enabled with Silverlight 2.0 (and later)[13] that can play live smooth streaming

9    multimedia content; and [d]evices that use customized applications to play live smooth

10   streaming multimedia content, including devices running the Windows 8 Operating System,

11   devices running the Windows Phone 7.0 (and later) Operating System, and the Xbox 360."

12   *See, e.g.*, Cefo Ex. R (Envivio Supplemental Chart). Emblaze also strove to disclose the broad

13   categories of platforms and devices for which applications may be designed to play Smooth

14   Streaming content, including without limitation Windows 8, certain internet browsers for

15   Windows and Mac OS, Windows Phone, Xbox 360, and Android devices.[14] *Id.*

16

17   [13] Emblaze provided Microsoft with additional information about the operating systems and

18   web browsers on which Microsoft Silverlight 2.0 (and later) is supported, namely "Microsoft
     Windows 7 (or later) running Microsoft Internet Explorer 8 (or later), Mozilla Firefox 3 (or

19   later), or Google Chrome; Microsoft Windows Server 2008 R2 running Microsoft Internet
     Explorer 8 (or later) or Google Chrome; Microsoft Windows Vista running Microsoft Internet

20   Explorer 7 (or later), Mozilla Firefox 3 (or later), or Google Chrome; Microsoft Windows
     Server 2008 running Internet Explorer 7 (or later), Mozilla Firefox 3 (or later), or Google

21   Chrome; Microsoft Windows XP running Microsoft Internet Explorer 6 SP1 (or later), Mozilla
     Firefox 3 (or later), or Google Chrome; Microsoft Windows 2000 running Internet Explorer 6

22   SP1 (or later); and Mac OS 10.4 Intel (or later) running Mozilla Firefox 3 (or later). Microsoft

23   Silverlight 5.0 is also supported by Microsoft Windows Server 2008 R2 running Mozilla
     Firefox 3 (or later)." *Id.*

24   [14] The website at http://www.microsoft.com/en-us/mediaplatform/overview.aspx lists several
     broad categories of platforms and devices for which applications may be designed to play

25   Smooth Streaming content. These include:

26   • Windows 8, using the Smooth Streaming Client SDK for Windows 8 Metro-style
     applications and Microsoft Media Platform: Player Framework for Windows 8 Metro-style

27   applications (As set forth in Emblaze's Patent Disclosures, smooth streaming multimedia
     content may also be played by applications by Microsoft Surface Pro tablet computers running

28   Windows 8 Pro);

1    As with Encoders, it is nothing short of perverse for Microsoft to attempt to penalize

2    Emblaze by curtailing its discovery, in exchange for providing Microsoft with *more*

3    information than the rules require in an effort to resolve a discovery dispute.

4    **B.    The Parties' Document and Electronic Search Disputes**

5              *1.    Microsoft Should Be Compelled to Use Emblaze's*
6                     *Proposed Email Search Terms, Including Search*
                      *Terms Reasonably Calculated to Identify Documents*
7                     *Concerning Infringement Involving Third Parties*

8    This case is governed by the parties' Stipulated Order Re: Discovery of Electronically

9    Stored Information, dated May 13, 2013 ("E-discovery Protocol"), which provides (among

10   other things) procedures for the parties to propose and (if possible) agree on search terms for

11   email discovery requests.  E-discovery Protocol, ¶ 8, Cefo Ex. W, at 4-5.  The E-discovery

12   Protocol provides that it may be modified upon application to the Court if the parties are

13   unable to agree.  The parties have conferred and exchanged emails about the dispute since

14   October, and most recently in February 2015, but have been unable to resolve their

15   differences.  *See* Hanson Exs. A-S.  Accordingly, Emblaze respectfully requests this Court's

16   assistance to resolve the  parties' current stalemate over electronic discovery.

17

18

19   _____

20   • Internet Browsers (for Microsoft Windows and Mac OS), using the Smooth Streaming Client
     for Silverlight and Microsoft Media Platform: Player Framework for Silverlight;

21   • Windows Phone, using the Smooth Streaming Client SDK for Windows Phone and
     Microsoft Media Platform: Player Framework for Windows Phone (Sample phones running
22   the Windows Phone system that are advertised by Microsoft include the Nokia Lumia 920; the
     Nokia Lumia 822; the Nokia Lumia 820; the Nokia Lumia 810; the Nokia Lumia 521; the
23   Windows Phone 8X by HTC; and the Samsung ATIV Odyssey. See
     http://www.windowsphone/en-us/phones);
24   • The Xbox 360, using the Smooth Streaming Client for Xbox LIVE ADK and Microsoft
     Media Platform: Player Framework for Xbox LIVE ADK;
25   • Apple iOS Devices, using the Smooth Streaming SDK for iOS Devices with PlayReady;
26   • Android Devices, using SDKs for the Android platform shipped by Microsoft partners not
     specifically identified through this webpage; and
27   • Devices like connected TVs, Set Top Boxes, Blu-Ray players, Over-The-Top TV Boxes and
     other mobile devices, using the Smooth Streaming Client Porting Kit and Microsoft PlayReady
28   Device Porting Kit.

Case No. 3:12 cv 05422-JST-EDL              13

EMBLAZE'S MOTION TO COMPEL DISCOVERY

Emblaze served Microsoft with email discovery requests on September 15, 2014. [15] Cefo Ex. X (with additional corrected request served September 19, Cefo Ex. Y). Those requests covered technical, financial, and marketing aspects of Smooth Streaming, including communications with, and documents about, third parties – materials highly relevant to Emblaze's indirect infringement claims. [16]

Microsoft rejected Emblaze's proposed searches based on the names of third party Encoders and their customers, coupled with limiters to ensure that the resulting searches would not be unduly burdensome, (e.g., and (("live" or "linear") and "stream*")). Hanson Exs. F-G and J-K (10/31/14 email from Hanson to McNamara and attachment, and 11/11/14 email from McNamara to Hanson and attachment). Microsoft refuses to search for third party names – using any search formulation – on the erroneous basis that Encoders are not relevant to the

---

[15] <u>Request for Production No. 7:</u>  All Electronic Communications concerning discussion with Third Parties, including without limitation content delivery networks or content providers, about actual or proposed customization or alteration of MPEG-DASH, Smooth Streaming, or any other adaptive live streaming technology derived therefrom, including customization or alteration of any hardware or software used to carry out such live streaming.
<u>Request for Production No. 8:</u>  All Electronic Communications concerning Microsoft's communications with Third Parties, including without limitation content delivery networks and content providers, about processing live media content into a Smooth Streaming or MPEG-DASH format, or any other adaptive live streaming format developed in whole or in part by Microsoft, hosting the live media content once processed, and/or delivering it to end user clients, including without limitation communications about any preferred or required technical requirements for such processing, hosting, and/or delivery using Smooth Streaming, MPEG-DASH, or any other adaptive live streaming technology developed in whole or in part by Microsoft.
<u>Request for Production No. 9:</u>  All Electronic Communications concerning Microsoft's communications with Third Parties, including without limitation content delivery networks and content providers, about creating or modifying media players (e.g., those included in the Smooth Streaming Client SDK and Microsoft Media Platform: Player Framework for Silverlight, Windows Phone, and Windows 8+, and the Smooth Streaming Client for Xbox LIVE ADK and Microsoft Media Platform: Player Framework for Xbox LIVE ADK) to play live media content that has been processed into a Smooth Streaming or MPEG-DASH format, or any other adaptive live streaming format developed in whole or in part by Microsoft.
[16] Emblaze's requests encompass email discovery pertaining to: (1) third party implementation of Smooth Streaming; (2) Microsoft's words and actions to induce and contribute infringement; and (3) the relationships amongst third parties, and those between third parties and Microsoft.

case because of the Emblaze's purportedly inadequate PICs.  *See* Hanson Ex. E (10/30/14 email from McNamara to Hanson); Hanson Ex. I (11/7/14 email from McNamara to Hanson).

Emblaze has ample reason to believe that Microsoft possesses highly relevant email communications that will not be located unless Microsoft agrees to reasonable search terms. Given that much of the infringement in this case is indirect, communications with third parties are highly relevant.  Among other things, such communications bear on the issue of inducement by Microsoft and the extent and nature of usage by third parties.  In fact, Microsoft itself has represented in the past to Emblaze that documents Emblaze seeks are more likely to be found in emails, when attempting to justify its sparse production of non-email documents related to third parties.  Cefo Ex. Z (1/31/14 letter from McNamara to Hanson).  Having represented to Emblaze that the materials it expected to find in documents are more likely to be found in emails, Microsoft should not now be allowed to prevent Emblaze from obtaining those emails through arbitrary limits on search terms.

The following are just some examples of relevant material that Emblaze has specific reason to believe is likely to be located using Emblaze's search terms:

- Microsoft documents reflect its discussions with a number of broadcasters, cable operators, and satellite television providers (*see* Cefo Ex. AA, (MSFT3054_112527-44 at 112535); list parties that have used Smooth Streaming to broadcast media on the Xbox (*see* Cefo Ex. AB (MSFT3054_003879-902 at 3890) and Ex. AC (MSFT3054_0083950-91 at 83963); and refer to several other customer deployments of Smooth Streaming (*see* Cefo Ex. AC (MSFT3054_0083950-91 at 83959).

- Redacted

- Redacted

- Public sources confirm Microsoft's extensive involvement with third parties connected to Smooth Streaming, such as iStreamPlanet, whose propriety cloud-based encoder, Aventus, was used in live streaming the 2014 Olympics in Sochi.  *See* Cefo Ex. AI (EMBLZ00026281-83 at 26282).  iStreamPlanet has acknowledged that it has "long worked with Microsoft, both as a user of Microsoft software and as a streaming provider helping Microsoft deliver multiple large broadcast events."  *See* Cefo Ex. AJ (EMBLZ00026318-22).

iStreamPlanet's collaborations with Microsoft also included the 2010 Vancouver Olympics. *See* Cefo Ex. AK (EMBLZ00026300-01).

Given its documented relationships with these third parties, Microsoft could be expected to possess (and to produce) extensive documentation in these categories. Yet Emblaze has located few, if any documents associated with these third parties in Microsoft's production to date. For example, Microsoft has not produced a single agreement with iStreamPlanet, and refuses to conduct email searches tailored to locate communications relating to iStreamPlanet and other relevant third parties. Rather, Microsoft has wasted the parties' time quibbling over PICs.

Even to the extent that Microsoft has indicated it would agree to search terms proposed by Emblaze targeting relevant technology, products, and services, it has attached conditions that Emblaze may be unable to accept. Emblaze sent Microsoft its most recent search proposal (excluding terms relating to third parties, on which the parties were deadlocked) on February 13, 2015, and requested a response. Hanson Exs. Q-R (2/13/15 email from Jackson to McNamara); Hanson Ex. S (2/19/15 email from Jackson to McNamara). After being advised of Emblaze's intent to make this filing, Microsoft responded today (February 24), apparently agreeing to at least some of the proposed terms, but only on condition that Emblaze forego the right to request any further searches in the future. Given the need to advance discovery, Emblaze has concluded it must raise the current impasse now and will advise the Court if subsequent discussions moot all or part of the dispute.

Emblaze's proposed terms are based on key terms from the relevant technology and the names of relevant products and services that Emblaze has identified from public sources and through discovery. The searches include limiting terms and are carefully constructed to target emails relevant to the claims.[17] Microsoft has no reasonable basis for objecting to them. In response to previous Emblaze proposals, Microsoft has objected to the volume of results

---

[17] For example, Emblaze has proposed the search ("live" /10 ("Smooth Streaming" or (("adaptive" or "adaptively") /5 ("stream?" or "streamed" or "streaming")))) /20 ("IIS" or "Azure") as a narrowed version of an earlier proposal containing the same terms, to which Microsoft particularly objected. Yet Microsoft has given no indication that it would accept even the narrowed version of the search.

EMBLAZE'S MOTION TO COMPEL DISCOVERY

1   produced by particular searches,[18] but it has acknowledged that it performed no sampling to

2   determine the rate of accurate and false hits.  Microsoft's failure to accept Emblaze's terms (or

3   its attempt to extract concessions for doing so) is unjustified.

4      Emblaze asks that Court compel Microsoft to employ Emblaze's proposed terms.  (A

5   comparison of Emblaze's full proposal to Microsoft's set of proposed terms (excluding those

6   to which it agreed only conditionally) is included as Exhibit T to the Hanson Declaration.)

7                    **2.    *Microsoft Should Be Compelled to Conduct a
        Reasonable Search of the All Data Sources Within Its
8       Control Reasonably Likely to Contain Responsive
        Documents***
9

10     In addition to severely constraining search terms, Microsoft has imposed arbitrary and

11  unjustified limits on the sources searched for *both* E-discovery and other data.  As noted

12  above, Microsoft has not even begun to search for emails.  As to other documents, Microsoft

13  has searched the files of just *ten* individual custodians, who were selected without any

14  consultation with Emblaze.  In making its initial production, and for months thereafter,

15  Microsoft never informed Emblaze that it had placed a ten-custodian limit on its search.  To

16  the contrary, in the parties' September 2014 Joint Case Management Statement, Microsoft

17  brushed off Emblaze's concerns about the scantiness of Microsoft's production of third party

18  documents, stating simply that Microsoft had "performed a reasonable search and produced all

19  the responsive documents that were located."  Joint Case Management Statement (D.E. 100 at

20  9:3-16 (Sep. 16, 2014)).

21     It was only when Emblaze independently attempted to verify Microsoft's statements

22  and questioned why Microsoft did not seem to have produced anything from the files of at

23  least twenty highly employees whom public sources reflect would have highly relevant

24  knowledge that Microsoft admitted its production represented the results of searching just ten

25  custodians' documents.  Cefo Exs. BD (9/9/2014 letter from Villegas to Kelley) and BC

26  (9/30/2014 letter from McNamara to Villegas).  Though Microsoft also said it had searched

27  ――――――――――――――――

28  [18] Microsoft has suggested that even searches identifying fewer than 35,000 emails are too
    broad.  Hanson Ex. R (2/13/15 email from Jackson to McNamara, recounting discussions)

shared drives, but it has not specifically identified them, disclosed which employees or groups

of employees they serve, or indicated what additional sources may contain responsive

materials but were not searched.  Hanson Ex. I (11/7/14 email from McNamara to Hanson).

In attempting to justify its limited search of non-email documents, Microsoft has cited

the E-discovery Protocol as purported support.  But the E-discovery Protocol, in pertinent part,

applies only to email discovery, not to Rule 34 discovery from non-email sources.  *See* E-

discovery Protocol, ¶ 8(b), Cefo Ex. W at 4.  Microsoft has also suggested that its collection of

materials from unidentified shared drives obviates the need to search individual sources.

Hanson Ex. I (11/7/14 email from McNamara to Hanson).  But the existence of data sources

such as shared drives does not diminish Microsoft's duty to search the electronic devices of

individuals under its control for responsive materials.  *See* E-discovery Protocol, ¶ 5 (under

"Search"), Cefo Ex W. at 3.

Based on ample evidence in the public record, the individuals whose computers

Microsoft unilaterally chose *not* to search are key employees, all of whom appear based on

public sources and Microsoft documents to have clear and apparently close connections to

Smooth Streaming.  These employees include, for example:

- John Bocharov, a program manager on Microsoft's IIS team.  Mr. Bocharov who

  Redacted

  Redacted (Cefo Ex. AL

  (MSFT3054_004969-87) and Ex. AM (MSFT3054_006346-55));

- Nicolas Drouin, a Microsoft Program Manager for Windows Azure Media

  Services.  Mr. Drouin has authored numerous relevant blog posts about uploading,

  encoding, packaging and streaming through Windows Azure[19] (*see* Cefo Ex. AN

  (EMBLZ00026323-26) and Ex. AO (EMBLZ00026327-35);

---

[19] Microsoft ultimately produced a small number of documents obtained from Drouin, shortly
before Emblaze took his deposition.

- Scott Guthrie, Corporate Vice President of Windows Azure.  Mr. Guthrie authored early presentations such as ███Redacted███ and has announced and demonstrated Microsoft's streaming technology at large events (*see*  Cefo Ex. AP (MSFT3054_017126-47) and Ex. AQ (MSFT3054_012708-09));

- Cenk Dingiloglu, a Microsoft Senior Program Manager for Windows Azure Media Services.  Mr. Dingiloglu authored relevant blog posts about live streaming through Windows Azure (*see* Cefo Ex. AR (EMBLZ00026482-96)).

Each of these individuals is likely to have corresponded via email both with fellow employees and third parties about Smooth Streaming's functioning and uses, as well as about projections and business purposes that are relevant to patent damages.  Yet Microsoft simply omitted to search their files, and continues to refuse to do so.  And the list above is by no means comprehensive.  Indeed, Microsoft did not even search the files of a number of inventors listed on Microsoft's own patents that purport to cover Smooth Streaming.  *See* Cefo Ex. AS.  Because Microsoft has not provided historical organizational data and it proselytizes so extensively concerning Smooth Streaming, Emblaze cannot even be sure that these are the *most* important custodians Microsoft has neglected.  *See* Part II.B.3., *infra*.  Nevertheless, Microsoft's failure to search the materials of these employees plainly shows that its document collection efforts have been insufficient to comply with Rule 34.

Emblaze's concern over the limited universe of custodians stems in large part from the fact that Microsoft's production also does not include numerous documents and categories of documents that it would be expected to include if Microsoft had conducted a reasonable search.  For example, Emblaze served its First Set of Requests for Production on July 29, 2013, calling for, *inter alia,* non-email documents about, and exchanged with, third parties regarding Smooth Streaming (Request Nos. 10-13).  Cefo Ex. AT.  Emblaze expected that Microsoft's production would be substantial, given Microsoft's extensive promotion of Smooth Streaming, and touting of relationships with, *e.g.*, third party encoder "partners." *See* Cefo Ex. V at MSFT3054_000606-16 at 607-8 ("Smooth Streaming Primer" noting the "many options" for creating compatible content, including third-party encoders made by Microsoft

partners). Microsoft's initial production, however, was minimal. *See* Cefo Ex. AU (10/30/13 email from Villegas to Kelley, "we have received under twenty (20) documents for each category . . . pertaining to Emblaze's indirect infringement claims"). Even after Emblaze identified specific third parties to Microsoft by name, Microsoft continued to deny the existence of the requested materials. Cefo Ex. AV (12/19/13 email from Kelley to Hanson) ("[W]e have conducted a search for this material from custodians . . . most likely to have participated in any such communications, but we have not learned of any communications . . . of the sort that you describe.").

Many of the obvious deficiencies in Microsoft's production of documents relating to third parties are described above in Part II.B.1. In addition to failing to produce communications about business agreements, Microsoft has failed to produce numerous written agreements with various third parties that should be in its custody or control, yet inexplicably were not located through its searches. Redacted

Redacted

Redacted Similarly, although publicly available materials show its connections with iStreamPlanet (see Part II.B.1), Microsoft has not produced a single agreement relating to their multiple collaborations. Redacted

Redacted

EMBLAZE'S MOTION TO COMPEL DISCOVERY

1   [Redacted]   *See* Villegas Decl. ¶ 7.  Yet

2   Microsoft has produced none of its agreements with iStreamPlanet.  [Redacted]

3   [Redacted]

4

5   [Redacted]   *See* Cefo Ex. AZ.  Given the time

6   frame at issue in this case, there is no question that the agreements at issue should still be in

7   Microsoft's possession, custody, and control.

8          In sum, Microsoft was not entitled to unilaterally limit its discovery obligations for

9   non-email materials to self-selected shared drives and computers of ten custodians.  A "large

10  or complex organization," such as Microsoft, "that has received a lengthy or complex

11  document request should be able to demonstrate a procedure for systematic compliance with

12  the document request."  *Meeks v. Parsons*, Case No. 1:03-cv-6700-LJO-GSA, 2009 WL

13  3003718, at *4 (E.D. Cal. Sept. 18, 2009), citing *Nat'l Ass'n of Radiation Survivors v.*

14  *Turnage,* 115 F.R.D. 543, 552 (N.D. Cal. 1987).  In such cases, "[a reasonable] inquiry would

15  [require], at a minimum, a reasonable procedure to distribute discovery requests to ***all***

16  employees and agents potentially possessing responsive information, and to account for the

17  collection and subsequent production of the information to plaintiffs."  *Meeks*, 2009 WL

18  3003718, at *4 (emphasis added), citing *Radiation Survivors*, 115 F.R.D. at 556.

19         Of course, Emblaze does not expect Microsoft to search every device of every

20  employee.  But Fed. R. Civ. P. 34 requires Microsoft to conduct a diligent search, and

21  Microsoft has not done so.  Accordingly, Emblaze seeks an order compelling Microsoft to

22  provide the organizational data discussed in Part II.B.3 and to search a reasonable number of

23  custodians identified by Emblaze based on such information.

24                     ***3.      Microsoft should be compelled to provide***
                              ***organizational information that is readily available***
25                            ***through database queries***

26         Emblaze's Request Number 54 asks for production of "[d]ocuments sufficient to

27  identify the personnel, organizational structure of Microsoft and teams involved with the

28  creation, development, management, launch, marketing and sales of the Smooth Streaming

Case No. 3:12 cv 05422-JST-EDL            21

Format and/or Accused Products or Services." *See* Cefo. Ex. BA.[20] Emblaze seeks these

materials to provide Emblaze with an understanding of the relevant lines of reporting and

communication within Microsoft and identify witnesses and document custodians relevant to

Emblaze's damages and infringement theories. Because Smooth Streaming has been in

development or offered for at least eight years, Emblaze needs not only information about

Microsoft's current structure, but also data about the employees involved at the time the

infringing method was first developed and offered.

As Microsoft is undoubtedly aware, without historical information on Microsoft's

organization, Emblaze is at a substantial and unfair disadvantage – forced to try to piece

together sources of relevant information in a vast and fast-changing organization with nothing

but snapshots of the current structure to guide it.[21] Though initially agreeing to produce

responsive documents "sufficient to show" the requested information, Microsoft has not done

---

[20] Microsoft responded on September 30, 2013:

Microsoft objects to the Request on the basis that it is overbroad, unduly burdensome and unlikely to lead to the identification of admissible evidence. Microsoft objects to the defined term "Accused Products and Services" because it is overly broad and includes matters and customers not relevant to an allegation of infringement in this case. Microsoft further objects to this Request to the extent it seeks confidential or proprietary information of Microsoft, including trade secrets, research, and development, or commercial information entitled to be kept confidential.

Subject to the foregoing general and specific objections, Microsoft responds as follows: Microsoft has produced or will produce documents sufficient to identify the organization of product teams relevant to the accused products for which Emblaze has presented a theory of infringement in claim charts that comply with the local patent rules, to the extent such documents exist within Microsoft's possession, custody, and control and can be located after a reasonable search.

Cefo Ex. BB (Microsoft's Responses to Emblaze's Second Set of Requests for Documents).
[21] According to Microsoft's 2013 Annual Report, in 2013 Microsoft employed 99,000 people on a full time basis, with 58,000 in the U.S. alone – 37,000 in product research and development, 26,000 in sales and marketing, 21,000 in product support and consulting, 6000 in manufacturing and distribution, and 9,000 in administration. *See* http://www.microsoft.com/investor/reports/ar13/financial-review/business-description/employees/index.html. Though most of these categories are highly relevant to infringement and damages, it is simply not feasible for Emblaze to guess the possible significance of a universe of 58,000 people or more, or even some fraction of that number.

---

1   so, and has instead relied on the mantra that Microsoft "does not generate or maintain

2   historical company-wide organizational charts."  *See* Cefo Ex. BC (9/30/14 letter of

3   McNamara to Villegas), at 2.[22]  Even though Microsoft admits that it maintains an HR

4   database of employees, Microsoft has refused to perform searches of that database that would

5   produce useful organizational data.  *See* Hanson Ex. N (12/4/14 email from Hanson to

6   McNamara).  Weeks of discussion have yielded nothing more than an offer to play a guessing

7   game:  if Emblaze identifies one of Microsoft's own employees to it by name, Microsoft will

8   tell Emblaze what the employee's title was, and to whom he or she reported.  Even in that

9   scenario, however, Microsoft will not tell Emblaze the names of any persons who reported to

10  the employee.  Hanson Ex. M (11/21/14 email from McNamara to Hanson).  Needless to say,

11  for this to be useful, Emblaze would already have to possess the very information it hopes to

12  obtain from Microsoft – the historical roles and relationships of employees that would indicate

13  their connection, if any, to the subject matter of the case.

14      Microsoft's refusal to search databases and provide a report containing the information

15  Emblaze requested – in any form – is without merit.  "Courts regularly require parties to

16  produce reports from dynamic databases."  *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-

17  0630-LHK (PSG), 2013 WL 4426512, at *2-3 (N.D. Cal. Aug. 14, 2013) (noting that requiring

18  a party to query an existing dynamic database is not the same as requiring the creation of a

19  new document).  Emblaze is not asking Microsoft to compile a new historical organizational

20  chart from scratch.  Emblaze asks only that Microsoft provide reports from an already-existing

21  database, or at least discuss whether it can do so.[23]

---

[22] Microsoft recently produced historical organizational charts created by a third party, but these charts are largely illegible and capture only high level managers and executives.  They do not satisfy Microsoft's discovery obligations.

[23] The responsive data need not be in chart form or indeed any particular format. Emblaze is simply asking for information sufficient to show the organizational structure and the positions held during the years 2006 to 2013 for the departments responsible for the creation, development, management, launch, marketing and sales of Smooth Streaming and/or Accused Products or Services, including Windows Azure Media Services, and Expression Encoder 4 Pro.

1

**III.      Conclusion**

2

     For the foregoing reasons, Emblaze's motion to compel discovery should be granted.

3

DATED:  February 24, 2015            **COHEN & GRESSER LLP**

4

                /s/ Damir Cefo
                Damir Cefo

5

                *Attorneys for Plaintiff Emblaze Ltd.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:12 cv 05422-JST-EDL     24
EMBLAZE'S MOTION TO COMPEL DISCOVERY